# HARWOOD FEFFER LLP
488 MADISON AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE: (212) 935-7400
TELECOPIER: (212) 753-3630

October 31, 2013

**Via Electronic Filing/ECF**

Honorable Leonard D. Wexler
United States District Judge
Eastern District of New York
Long Island Federal Courthouse
944 Federal Plaza
Central Islip, New York 11722

      Re:    *Harte v. Ocwen Financial Corp., et al.*, C.A. No. 2:13-cv-5410-LDW-AKT

Dear Judge Wexler:

      We represent plaintiff Deborah Harte ("Plaintiff") in the above-referenced action on behalf of herself and a proposed class of similarly situated homeowners nationwide against defendants Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS") (collectively, "Ocwen" or the "Company"). Pursuant to Your Honor's Individual Practices, Section 2.B, Plaintiff submits this letter in opposition to defendant OFC's contemplated motions to dismiss. Plaintiff submits a separate letter in response to defendant OLS's contemplated motion to dismiss.

      OFC's argument is two-fold. First, it argues that OFC, as defendant OLS's parent, cannot be held liable for its subsidiary's action taken under the corporate veil. Second, OFC argues that there is an intermediary corporation, Ocwen Mortgage Servicing, Inc. ("OMS"), a U.S. Virgin Island corporation, whose corporate veil may not be pierced. Each argument should be rejected.

**Facts**

      OFC is a holding company that wholly owns OLS. ¶ 7-8.[1] In 2010, 2011, and 2012, over 99% of OFC's revenues were from loan servicing. ¶ 10; OCF's 2012 Form 10-K, filed March 1, 2013 (the "2012 10-K"), at 9.[2] OLS is the only licensed mortgage servicer mentioned in OFC's Form 10-K. ¶ 8; 2012 10-K, at 3. Essentially all of OFC's income is derived from OLS's mortgage servicing activities.

---

[1]    Citations to "¶ __" refer to paragraphs in Plaintiff's Class Action Complaint, filed on August 14, 2013.

[2]    The Court may take judicial notice of the contents of SEC filings, public websites, and documents filed in prior lawsuits. *See, e.g., Landow v. Wachovia Secs., LLC*, No. 12-CV-3277 (SJF)(AKT), 2013 U.S. Dist. LEXIS 116149, at *27 (E.D.N.Y. Aug. 12, 2013); *Coach, Inc. v. O'Brien*, No. 10 Civ. 6071 (JPO)(JLC), 2012 U.S. Dist. LEXIS 52565, at *50 (S.D.N.Y. Apr. 13, 2012).

Harwood Feffer LLP

Honorable Leonard D. Wexler
October 31, 2013
Page 2

The correspondence that solicited Plaintiff's modification application stated that HAMP, the Home Affordable Modification Program of the U.S. Departments of Treasury and Housing and Urban Development, was offered by "Ocwen." ¶ 21. According to the federal government, it was OFC – not OLS – that executed the formal HAMP participation agreement.[3] The federal HAMP website directs borrowers interested in modifying their mortgages to call OFC at the identical 1-800 number that OLS uses when communicating with Plaintiff and other borrowers. ¶¶ 12, 24, 25. The government also directs borrowers to contact OFC at a mailing address that is associated with both OFC and OLS, 1661 Worthington Rd., Ste. 100, West Palm Beach, FL 33409. According to OFC's most recent definitive proxy statement, on Form DEF 14A, filed April 3, 2013 (the "Proxy"), OFC's Executive Chairman, President and Chief Executive Officer, General Counsel and Secretary, and Chief Financial Officer, are all executive officers of OLS, Proxy at 20, each of whom received half or more of their 2012 salary from OLS. *Id.* at 33. OFC's website www.ocwen.com, and OLS's website, www.ocwencustomers.com, both bear the same logo, the same slogan, and are both copyrighted by OFC. OFC's website – without redirecting to OLS's website – offers information for mortgage customers, testimonials, residential mortgage servicing, commercial mortgage servicing (www.ocwen.com), and contains a link for mortgage customers to log-in that states "[w]elcome to Ocwen Loan Servicing." (http://www.ocwen.com/mortgage-customers.)

### I. **OFC Directly Controls Its Subsidiary, OLS**

OFC is a proper defendant in this action and is liable for its own direct acts. A parent may "become an actor in a given transaction, or in part of a business, or in a whole business, and, when it has, will be legally responsible." *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929); *Tokyo Boeki (U.S.A.), Inc. v. SS Navarino*, 324 F. Supp. 361, 366 (S.D.N.Y. 1971) (when subsidiary was "in practical effect, the same entity [as parent] for some purposes and its agent for other purposes"). It has long been held that where customers of a subsidiary are led to believe they are dealing with the parent and there is no distinction between the subsidiary and the parent, the corporate separation is "pure fiction, without reality in form or substance." *American Chain Co. v. Stewart-Warner Speedometer Corp.*, 56 F.2d 614, 616 (2d Cir. 1929).

By its acts detailed above, OLS held itself out to be OFC, or at least to be acting on OFC's behalf. *Cf. De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (whether Sears should be liable for acts of Allstate insurance employees with respect to a specific program run by Allstate). Agency liability is present when the "conduct of the principal … reasonably interpreted, causes [a] third person to believe that the principal consents" to acts on its behalf by an agent purporting to act for it. *See Manchester Equip. Co. v. Am. Way & Moving Co.*, 60 F. Supp. 2d 3, 7-8 (E.D.N.Y. 1999) (Wexler, J.). "[J]ust as one corporation can hire another to act

---

[3] http://www.makinghomeaffordable.gov/get-assistance/contact-mortgage/Pages/default.aspx (accessed October 30, 2013).

HARWOOD FEFFER LLP

Honorable Leonard D. Wexler
October 31, 2013
Page 3

as its agent, a parent can commission its subsidiary to do the same. If such an agency arrangement is alleged .... The parent-principal should not be allowed to escape liability simply because it owns stock in the subsidiary-agent." *See Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 413 (S.D.N.Y. 1996). Here, OLS's acts, "both in form and substance" were those of OFC. *Id.* at 413 (question of fact whether agency liability was alleged).

Plaintiff does not concede that Delaware veil piercing law governs. However, under both Delaware and New York law: the corporate veil may be pierced when the "subsidiary 'has become a mere instrumentality' of the parent . . . ." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S. Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) (applying New York law); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (applying Delaware law). Where the veil piercing law of another state is "virtually identical" to that of New York, courts in this Circuit analogize to New York law. *Bogosian v. All Am. Concessions*, No. 06-cv-1633 (RRM)(RML), 2011 U.S. Dist. LEXIS 109082, at \*\*15-17 (E.D.N.Y. Sept. 26, 2011). The facts of this case demonstrate sufficient dominion and control, and lack of separation between OFC over OLS that piercing the corporate veil is warranted. *See Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC*, 402 Fed. Appx. 623, 624 (2d Cir. 2010).

II.     **OCF's U.S. Virgin Island Subsidiary Does Not Shield OCF From Liability Here**

Defendants also claim that an intermediate subsidiary, OMS, a U.S. Virgin Island corporation, protects OFC from corporate liability. According to the 2012 10-K, OMS was not formed until February 27, 2012, and did not become fully effective until October 1, 2012. 2012 10-K, at 4. Neither the 2012 10-K nor Ocwen's various websites disclose, however, that OMS is the direct parent of OLS. As such, Plaintiff was unaware at all times that OMS existed or had any relation to her mortgage and, even now, OMS's purpose is unclear. In this action, OFC cannot hide behind OMS, a corporation which did not exist until February 2012, and did not assume any role as to OLS's mortgage servicing business until October 2012 – long after OLS declared a notice of default on Plaintiff. ¶ 54.

We look forward to addressing these issues with the Court.

Respectfully submitted,

*/s/ James G. Flynn*
James G. Flynn

JGF:jrg

cc:     All counsel of record via e-mail