HARWOOD FEFFER LLP
488 MADISON AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE: (212) 935-7400
TELECOPIER: (212) 753-3630

October 31, 2013

**Via Electronic Filing/ECF**

Honorable Leonard D. Wexler
United States District Judge
Eastern District of New York
Long Island Federal Courthouse
944 Federal Plaza
Central Islip, New York 11722

      Re:    *Harte v. Ocwen Financial Corp., et al.*, C.A. No. 2:13-cv-5410-LDW-AKT

Dear Judge Wexler:

      We represent plaintiff Deborah Harte ("Plaintiff") in the above-referenced action on behalf of herself and a proposed class of similarly situated homeowners nationwide against defendants Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS") (collectively, "Ocwen" or the "Company"). Pursuant to Your Honor's Individual Practices, Section 2.B, Plaintiff submits this letter in opposition to defendant OLS's contemplated motions to dismiss. Plaintiff believes that OLS's contemplated motion will be unsuccessful, but also that a pre-trial conference is prudent to move the case along towards discovery.

**Facts**

      Ocwen services the mortgage on Plaintiff's residence. ¶ 19.[1] In October 2011, after receiving information from Ocwen soliciting her to seek a loan modification, Plaintiff applied to modify her mortgage. ¶ 20. Plaintiff submitted numerous documents required by the modification application. ¶¶ 21-23. Ocwen assigned a "Relationship Manager" to monitor Plaintiff's account during the modification application process who directed her *not* to make payments on her loan while her application was being processed. ¶¶ 24-25. Meanwhile, Ocwen repeatedly claimed to have not received the documents, and Plaintiff continued to submit and re-submit the required documentation. ¶¶ 26-29. Plaintiff called Ocwen to state she was concerned that she had not been making payments during the application processed and was told, again, *not* to make payments. ¶ 30. Ocwen then assigned Plaintiff a second Relationship Manager, with whom Plaintiff spoke and who did not alert her that payments were due. ¶ 32.

      By letter dated April 24, 2012, Ocwen notified Plaintiff that she was not eligible for a modification under HAMP (the Home Affordable Modification Program of the U.S. Departments of Treasury and Housing and Urban Development) (¶ 40), but stated that she had

---

[1]    Citations to "¶__" refer to paragraphs in Plaintiff's Class Action Complaint, filed on August 14, 2013.

HARWOOD FEFFER LLP

Honorable Leonard D. Wexler
October 31, 2013
Page 2

"30 calendar days ... to contact Ocwen to discuss the reason for non-approval ... or to discuss alternative loss mitigation options that may be available...." *Id.* Twenty-two days later, on May 16, 2012, Ocwen began a foreclosure proceeding, ¶ 43, even before Plaintiff had been notified that she was in default. Finally, on July 11, 2012, Ocwen sent Plaintiff a Notice of Default, which stated that Plaintiff was 345 days in default and could cure the default by payment of $32,116.04 by October 9, 2012. ¶ 50. Plaintiff filed for bankruptcy on December 18, 2012. ¶¶ 49, 54.

Plaintiff is not alone. The Complaint sets forth numerous instances – reported cases, "blogs," and regulatory investigations – complaining of the same or similar conduct by Ocwen against consumers. ¶¶ 55-68.

## I. The Complaint Sufficiently Alleges A Breach Of Contract Claim

The Complaint alleges that Ocwen breached its mortgage agreement by commencing a foreclosure action prior to providing Plaintiff notice that she was in default. ¶ 80. "Giving the requisite notice of default is a condition precedent to acceleration, which is a requirement for seeking the equitable remedy of foreclosure." *Bank of N.Y. Mellon v. Deane*, 970 N.Y.S.2d 427, 438 (N.Y. S. Ct. Kings County 2013); *accord HSBC Mtge. Corp. (USA) v. Gerber*, 100 A.D.3d 966, 966-67 (2d Dep't 2012). In addition, Ocwen was statutorily required to provide such notice. *See* N.Y. REAL PROPERTY ACTIONS AND PROCEEDINGS LAW § 1304 (notice of default must be provided at least 90 days prior to initiating foreclosure).

Defendants argue that Plaintiff cannot assert a claim for breach of contract because she stopped making payments. Plaintiff was instructed, however, on at least two occasions by Ocwen representatives *not* to make payments while she was seeking modification (¶¶ 25, 30), and Ocwen repeatedly "lost" documents over a six-month span. ¶¶ 29, 33-42, 45, 48. Ocwen delayed sending the Notice of Default until *after* it had rejected Plaintiff's modification application and the 30-day window had lapsed. After waiving Plaintiff's payment requirement for months, justice does not permit Ocwen to abruptly compel Plaintiff to comply with the strict payment terms of the mortgage agreement without first providing sufficient notice and a reasonable time for Plaintiff to alter her conduct. *Laguardia Assocs. v. Holiday Hospitality Franchising, Inc.*, 92 F. Supp. 2d 119, 130 (E.D.N.Y. 2000). "'He who prevents a thing from being done may not avail himself of the non-performance which he has, himself, occasioned, for the law says to him, in effect; "This is your own act, and, therefore, you are not damnified." The principle is fundamental and unquestioned.'" *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 185 (1982) (allegations of oral modification to mortgage payment schedule created question of fact).

Whether these multiple statements constitute an oral modification, a waiver, or estoppel is a question of fact. *Nassau Trust Co.*, 56 N.Y.2d at 179; *Pellicane v. Norstar Bank*, 213 A.D.2d 610, 611 (2d Dep't 1995) (whether oral statements modified terms of mortgage loan was question of fact). "[W]hen a party's conduct induces another's significant and substantial reliance on the agreement to modify, albeit oral, that party may be estopped from disputing the

Harwood Feffer LLP

Honorable Leonard D. Wexler
October 31, 2013
Page 3

modification notwithstanding the [Statute of Frauds]." *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 341 (1977).

## II.     The Promissory Estoppel Claim Will Overcome A Motion To Dismiss

Plaintiff's promissory estoppel claim is also sufficient to survive motion to dismiss. *See Picini v. Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 275 (E.D.N.Y 2012) (denying motion to dismiss promissory estoppel claim arising out of servicer's conduct during attempted loan modification).  Due, among other things, to the disparity in sophistication and understanding of foreclosure process between servicer and homeowner, reliance on verbal statements can be reasonable, even when they contradict a written document. *Wells Fargo Bank Minn., N.A. v. Ray*, 23 Misc. 3d 931, 937 (N.Y. S. Ct. Kings County 2009) (disputed foreclosure in which Ocwen was alleged to have made incorrect verbal representations on which homeowner relied); *accord Nassau Trust*, 56 N.Y.2d at 183-85.

## III.    The Complaint States A Negligent Misrepresentation Claim

Defendant OLS argues that no claim for negligent misrepresentation may stand without a "special" relationship.  Yet, as the Complaint alleges, it was an Ocwen representative who specifically instructed Plaintiff *not* to pay. ¶¶ 24-25, 30. *See Picini*, 854 F. Supp. 2d at 276-77 (denying motion to dismiss negligent misrepresentation claims based on statements made during attempt to modify home mortgage, citing facts such as inherent imbalance of power and assignment of specialists to aid in loan modification process).

## IV.    The Complaint States A Claim Under New York's General Business Law

Recent cases with similar allegations have overcome motion to dismiss on the claims under New York's General Business Law ("GBL"). *See, e.g., Pandit v. Saxon Mortg. Servs.*, No. 11-CV-3935 (JS)(GRB), 2012 U.S. Dist. LEXIS 133292, at **15-16 (E.D.N.Y. Sept. 17, 2012) (denying motion to dismiss GBL claim in class action alleging that mortgage servicer mislead homeowners over the phone and ignored completed modification applications).  Nor, as OLS insists, is this simply a private dispute outside of the GBL: the Complaint includes multiple other claims that elevate this claim to a public, consumer-oriented case. ¶¶ 55-68.

We look forward to addressing these issues with the Court.

Respectfully submitted,

*James G. Flynn*
James G. Flynn

JGF:jrg

cc:     All counsel of record via e-mail