UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                          :

DEBORAH C. HARTE on behalf of herself    :
and all others similarly situated,                :

                                          :

                        Plaintiff,       : Civil Action No. 2:13-cv-5410-LDW-AKT
        v.                             :

                                          :

OCWEN FINANCIAL CORP. and OCWEN    :
LOAN SERVICING, LLC,                 :

                                          :

                       Defendants.     :
-------------------------------------------------------------X

## CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Robert I. Harwood
James G. Flynn
Benjamin I. Sachs-Michaels
HARWOOD FEFFER LLP
488 Madison Ave., 8th Floor
New York, New York 10022
Tel.: (212) 935-7400
Fax:  (212) 753-3630

*Attorneys for Plaintiff*
*and The Proposed Class*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

    A.    The Application For A HAMP Modification ........................................... 3

    B.    OLS's Response To Plaintiff's Application ............................................ 4

    C.    The Acceleration Provision Of The Mortgage And The Foreclosure ..................... 6

ARGUMENT ............................................................................................................. 7

Legal Standards For A Motion To Dismiss ............................................................ 7

I.    OLS Breached Its Contracts With Plaintiff ..................................................... 8

    A.    OLS Breached The Acceleration Provision Of The Mortgage
        By Failing To Provide A Timely Notice Of Default ............................... 8

    B.    OLS Has Breached The Implied Covenant Of Good Faith
        And Fair Dealing To Consider Plaintiff's Application For
        A Loan Modification ............................................................................ 10

II.    The Complaint Sufficiently Alleges Promissory Estoppel Against OLS ......................... 13

    A.    OLS Made Clear And Unambiguous Promises To Plaintiff ................................. 13

    B.    Plaintiff's Reliance On OLS's Evaluation Was Reasonable
        And Foreseeable ................................................................................ 14

    C.    Plaintiff Relied to Her Detriment on OLS's Representations ............................. 16

III.    The Complaint Plausibly Alleges OLS's Negligent Misrepresentations
    To Plaintiff ............................................................................................ 17

    A.    OLS's Conduct Established A Special Relationship With Plaintiff ...................... 18

    B.    OLS Provided Incorrect Information ................................................... 20

    C.    For A Borrower In Distress, Reliance Was Reasonable ...................... 20

i

IV.   The Complaint Alleges Claims Under New York's GBL ..................................................21

    A.   OLS's Conduct Was "Consumer-Oriented" ..........................................................21

    B.   OLS's Practices Were Deceptive ...........................................................................23

    C.   OLS's Deceptive Practice Injured Plaintiff And The Proposed Class.....................24

CONCLUSION..........................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*@Wireless Enters. v. AI Consulting, LLC,*
  No. 05-CV-6176 CJS (P),
  2006 U.S. Dist. LEXIS 79874 (W.D.N.Y. Oct. 30, 2006) ...................................................... 21

*720 Lex Acquisition LLC v. Guess?Retail, Inc.,*
  No. 09 Civ. 7199 (DAB),
  2011 U.S. Dist. LEXIS 123180 (S.D.N.Y. Oct. 20, 2011) ...................................................... 16

*Abraham v. Am. Home Mortg. Servicing,*
  947 F. Supp. 2d 222 (E.D.N.Y. May 23, 2013) ........................................................................ 19

*Aceves v. U.S. Bank N.A.,*
  192 Cal. App. 4th 218(2d Dist.),................................................................................................ 14

*Acuna v. Chase Home Fin., LLC,*
  No. 3:10-CV-905,
  2011 U.S. Dist. LEXIS 52971 (E.D. Va. May 16, 2011) ....................................................... 11

*Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n,*
  No. 13-CV-3288 (ADS),
  2013 U.S. Dist. LEXIS 160225 (E.D.N.Y. Nov. 8, 2013)......................................................... 7

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012)........................................................................................................ 8

*Ansanelli v. JPMorgan Chase Bank, N.A.,*
  No. C10-03892 (WHA),
  2011 U.S. Dist. LEXIS 32350 (N.D. Cal. Mar. 28, 2011)................................................. 19, 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................................... 7, 8

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.,*
  No. 06 Civ. 3085 (GBD),
  2010 U.S. Dist. LEXIS 65870 (S.D.N.Y. June 25, 2010),
  *aff'd,* 438 Fed. App'x 20 (2d Cir. 2011) ................................................................................ 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 7

*Bourdelais v. JPMorgan Chase Bank, N.A.*,
   No. 3:10CV670,
   2012 U.S. Dist. LEXIS 158508 (E.D. Va. Nov. 5, 2012) .......................................... 11

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   No. 09 Civ. 9783 (RWS),
   2013 U.S. Dist. LEXIS 79894 (S.D.N.Y. June 4, 2013) .......................................... 19

*Braddock v. Braddock*,
   60 A.D.3d 84 (1st Dep't 2009) ............................................................................... 13

*Brenner v. Brenner*,
   No. CV10-4857 (DRH),
   2012 U.S. Dist. LEXIS 117252 (E.D.N.Y. Aug. 20, 2012) ...................................... 17

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005) .................................................................................. 11

*Corazzini v. Litton Loan Servicing LLP*,
   No. 1:09-CV-0199 (LEK),
   2010 U.S. Dist. LEXIS 27398 (N.D.N.Y Mar. 23, 2010) ........................................ 23

*Costigan v. CitiMortgage, Inc.*,
   No. 10 Civ. 8776 (SAS),
   2011 U.S. Dist. LEXIS 84860 (S.D.N.Y. Aug. 1, 2011) .......................................... 17

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995) ............................................................................................ 10

*Dolan v. Fairbanks Capital Corp.*,
   930 F. Supp. 2d 396 (E.D.N.Y. 2013) .................................................................... 22

*Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.*,
   25 Misc. 3d 1203(A) (N.Y. S. Ct. 2009) ................................................................. 10

*Fitzgerald v. Chase Home Fin'l, LLC*,
   No. 10-cv-4148, Slip op. & Order (S.D.N.Y. Feb. 10, 2012) .............................. 23, 24

*FLB, LLC v. 5Linx,*
    821 F. Supp. 2d 548 (W.D.N.Y. 2011) ................................................................ 23

*Fleet Bank v. Pine Knoll Corp.,*
    290 A.D.2d 792 (N.Y. App. Div. 3d Dep't 2002) ....................................... 16, 18, 20

*Freudenberg v. E\*Trade Fin. Corp.,*
    712 F. Supp. 2d 171 (S.D.N.Y. 2010).................................................................. 7

*Gaidon v. Guardian Life Ins. Co. of Am.,*
    96 N.Y.2d 201 (2001) ...................................................................................... 23

*Garcia v. GMAC Mortg., LLC,*
    No. H-12-2242,
    2013 U.S. Dist. LEXIS 7634 (S.D. Tex. Jan. 18, 2013) ........................................ 17

*Goshen v. Mut. Life Ins. Co.,*
    98 N.Y.2d 314 (2002) ...................................................................................... 21

*Grimes v. Fremont Gen. Corp.,*
    933 F. Supp. 2d 584 (S.D.N.Y. 2013).................................................................. 19

*Harsco Corp. v. Segui,*
    91 F.3d 337 (2d Cir. 1996)................................................................................ 8

*Hayrioglu v. Granite Capital Funding, LLC,*
    794 F. Supp. 2d 405 (E.D.N.Y. 2011) ................................................................ 23

*Home Loan Inv. Bank, F.S.B. v. Goodness and Mercy, Inc.,*
    No. 10-CV-4677 (ADS),
    2011 U.S. Dist. LEXIS 48213 (E.D.N.Y. Apr. 30, 2011) ....................................... 12

IMG Int'l Mktg. Group, Inc. v SDS William St., LLC,
    32 Misc. 3d 1233(A) (N.Y. S. Ct. 2011) .............................................................. 14

*In re Bank of Am. HAMP Contract Litig.,*
    No. 10-md-02193-RWZ,
    2011 U.S. Dist. LEXIS 72079 (D. Mass. July 6, 2011)........................................... 11

*Johnson v. Nextel Communc'ns, Inc.,*
    660 F.3d 131 (2d Cir. 2011)................................................................................ 8

*Kapsis v. Am. Home Mortg. Servicing Inc.*,
   923 F. Supp. 2d 430 (E.D.N.Y. 2013) ............................................................................ *passim*

*Karlin v. IVF Am., Inc.*,
   93 N.Y.2d 282 (1999) ........................................................................................................ 22

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)............................................................................................... 15

*Khan v. Citimortgage*,
   No. CVF13-1378 (LJO),
   2013 U.S. Dist. LEXIS 141338 (E.D. Cal. Sept. 30, 2013)............................................. 12, 15

*Kimmell v. Schaefer*,
   89 N.Y.2d 257 (1996) ........................................................................................................ 18

*McLean-Laprade v. HSBC*,
   2013 U.S. Dist. LEXIS 106122 (N.D.N.Y July 30, 2013)................................................. 23

*Mendez v. Bank of Am. Home Loans Servicing, LP*,
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) ............................................................................ *passim*

*Miller v. BAC Home Loans Servicing, L.P.*,
   726 F.3d 717 (5th Cir. Tex. 2013) .................................................................................... 17

*Milton v. U.S. Bank Nat'l Ass'n*,
   508 Fed. App'x 326 (5th Cir. 2013) ................................................................................. 12, 20

*Morgenweck v. Vision Capital Advisors, LLC*,
   410 Fed. App'x 400 (2d Cir. 2011) ................................................................................... 17

*Moses v. Citicorp Mortg.*,
   982 F. Supp. 897 (E.D.N.Y. 1997) ................................................................................... 22

*MTA Bus Non-Union Emples. Rank & File Comm. v. Metro. Transp. Auth.*,
   899 F. Supp. 2d 256 (S.D.N.Y. 2012)............................................................................... 20

*New York v. Feldman*,
   210 F. Supp. 2d 294 (S.D.N.Y. 2002)............................................................................... 21

*Onewest Bank, FSB v. Davies*,
   38 Misc. 3d 1230(A) (N.Y. S. Ct. 2013) .......................................................................... 12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
   85 N.Y.2d 20 (1995) ................................................................................... 21, 23, 24

*Pandit v. Saxon Mortg. Servs.,*
   No. 11-CV-3935 (JS),
   2012 U.S. Dist. LEXIS 133292 (E.D.N.Y. Sept. 17, 2012)............................... 22, 23

*Pereira v. Ocwen Loan Serv., LLC.,*
   No. 11-cv-2672 (SJF),
   2012 U.S. Dist. LEXIS 56044 (E.D.N.Y. Mar. 12, 2012) .................................. 8, 25

*Picini v. Chase Home Fin. LLC,*
   854 F. Supp. 2d 266 (E.D.N.Y. 2012) ............................................................ *passim*

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.,*
   No. 08 Civ. 10578 (RJS),
   2010 U.S. Dist. LEXIS 27609 (S.D.N.Y. Mar. 12, 2010) ..................................... 17

*Posy v. HSBC Bank USA,*
   No. 13-3671 (LDW),
   2013 U.S. Dist. LEXIS 181888 (E.D.N.Y. Dec. 30, 2013) ..................................... 7

*Reit v Yelp!, Inc.,*
   29 Misc. 3d 713 (N.Y. S. Ct. 2010) ...................................................................... 21

*Riordan v. Nationwide Mut. Fire Ins. Co.,*
   977 F.2d 47 (2d Cir. 1992)................................................................................... 22

*RLI Ins. Co. v. King Sha Group,*
   *Inc.*, 598 F. Supp. 2d 438 (S.D.N.Y. 2009) ........................................................... 9

*Rose v. Spa Realty Assocs.,*
   42 N.Y.2d 338 (1977) .......................................................................................... 16

*Shaw v. Wells Fargo Bank, N.A.,*
   No. 4:12-CV-01422,
   2013 U.S. Dist. LEXIS 129084 (S.D. Tex. Sept. 10, 2013) ............................... 12, 13

*Sholiay v. Fannie Mae,*
   No. CIV 2:13-00958,
   2013 U.S. Dist. LEXIS 146446 (E.D. Cal. Oct. 9, 2013) .................................. 19-20

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
  84 F.3d 629 (2d Cir. 1996) ........................................................................... 21

*Smith v. Ameriquest Mtge. Co.*,
  60 A.D.3d 1037 (N.Y. S. Ct. App. Div. 2d Dep't 2009) ........................................ 18

*Sokolski v. Trans Union Corp.*,
  178 F.R.D. 393 (E.D.N.Y. 1998) ..................................................................... 25

*Stutman v. Chemical Bank*,
  95 N.Y.2d 24 (2000) ............................................................................... 21, 23

*Washington v. Kellwood Co.*,
  No. 05 Civ. 10034 (DAB),
  2009 U.S. Dist. LEXIS 32565 (S.D.N.Y. Mar. 24, 2009) ................................. 11, 21

*Wells Fargo Bank Minn., N.A. v. Ray*,
  23 Misc. 3d 931, (N.Y. S. Ct. 2009) .................................................................. 16

*Winkler v. Friedman*,
  No. 12-CV-3893,
  2013 U.S. Dist. LEXIS 88853 (E.D.N.Y. June 25, 2013) ..................................... 13

*Yellow Book Sales & Distrib. Co. v. Hillside Van Lines, Inc.*,
  98 A.D.3d 663 (N.Y. S. Ct. App. Div. 2d Dep't 2012) ........................................ 23

*Yucyco, Ltd. v. Republic of Slovenia*,
  984 F. Supp. 209 (S.D.N.Y. 1997) ..................................................................... 9

## Statutes & Regulations

Fed R. Civ. P. 8 .......................................................................................... 7

N.Y. GBL § 349(a) ......................................................................... 21, 22, 23, 24

## PRELIMINARY STATEMENT

Plaintiff Deborah Harte fell behind on her mortgage payments, and she made the mistake of believing that her loan servicer, defendant Ocwen Loan Serving, LLC ("OLS") would help her. Responding to literature sent by OLS, Plaintiff submitted an application and related documents to OLS for a loan modification under the federal Home Affordable Modification Program ("HAMP"). OLS responded by designating its own "Relationship Managers" to her account, who promptly and unequivocally told her not to make mortgage payments. Then OLS continued to act as if Plaintiff never sent it any documents, and demanded, again and again, re-submission of already submitted documents. All the while OLS was preparing papers for foreclosure, yet representing that it was still considering the application. After months' delay, OLS arranged for a foreclosure action to be filed. Plaintiff was forced to seek refuge in bankruptcy.

Plaintiff was not alone. The Complaint details remarkably similar behavior by OLS and its parent, Ocwen Financial Corp. ("OFC"), in litigation and regulatory proceedings brought by the federal government and state agencies. The Complaint alleges claims for breach of contract, including a breach of the covenant of good faith and fair dealing, promissory estoppel, negligent misrepresentation, and consumer deception under New York's General Business Law ("GBL").

In moving to dismiss, OLS makes numerous arguments, each without merit:

*First*, OLS claims that Plaintiff cannot bring a breach of contract claim arising out the Note or Mortgage because OLS was merely a loan servicer, not the holder of the Note, and Plaintiff lacks privity with OLS over the Note. As a threshold issue, OLS does not dispute that the Mortgage was breached by commencing a foreclosure proceeding nearly two months before service of a notice of default as required by the acceleration provision found in Paragraph 22 of the Mortgage. However, courts in New York have applied the "functional equivalent of privity"

where the defendant's dealings with the plaintiff are so close, as here, to constitute the equivalent of a direct contractual relationship.  (*See* Point I-A, below.)

*Second*, OLS claims that Plaintiff cannot bring an action for breach of the covenant of good faith and fair dealing based on its bungled processing of Plaintiff's loan modification application because the application itself warns the reader that OLS is neither waiving its rights to foreclose nor agreeing to delay any legal activity pending the application process.   As demonstrated below, however, *the application* itself is an agreement that OLS will – at a minimum – *consider* her request for a loan modification – which OLS clearly never did.  Moreover, it was OLS that referred Plaintiff to its own "Relationship Managers" who told Plaintiff to withhold payment pending the process, and who sent her at least 10 letters expressly stating that OLS would *not* seek foreclosure during the application process.   These conflicting messages raise an issue of fact not susceptible of resolution at this stage.  (*See* Point I-B, below.)

*Third*, in response to the promissory estoppel claim, OLS claims that no clear and unambiguous promise was made to Plaintiff, but rather the application expressly stated that OLS was waiving none of its rights, that Plaintiff could not have reasonably relied on oral representations given the express disclaimer on the application, and that her injury was the product of her own default.  As demonstrated below, however, OLS's representations – both in the form of oral instruction from OLS's own designated Relationship Managers not to make mortgage payments and in repeated and express representations in correspondence to Plaintiff that OLS would not commence any foreclosure activity while the application was pending – were clear and unambiguous.  At a minimum, these facts raise issues that cannot be resolved on the pleadings.  Further, given her distressed predicament, Plaintiff's reliance on OLS's own oral and written statements was both reasonable and foreseeable.  Plaintiff relied on these claims to

2

her detriment in the form of increased fees and impaired credit, and prejudiced her ability to seek alternative re-financing of her mortgage.  (*See* Point II, below.)

*Fourth*, OLS claims that the negligent misrepresentation claim must fail for lack of a "special relationship" with Plaintiff.  As demonstrated below, however, OLS's own actions gave rise to a relationship beyond the traditional lender-borrower situation, unfairly delaying her application and putting her in an increasingly precarious financial situation.  Plaintiff's reliance on OLS's representations precluded her from seeking alternatives.  (*See* Point III, below.)

*Finally*, OLS asserts that no claim under New York's GBL can stand because her dispute is merely private and, by defaulting, she caused her own harm.  As demonstrated below, however, numerous courts have held that the deceptive practices by mortgage servicers constitutes "consumer-oriented" activity covered by the GBL, resulting in injury to consumers like Plaintiff and the proposed Class.  (*See* Point IV, below.)

## STATEMENT OF FACTS

### A.   <u>The Application For A HAMP Modification</u>

In 2005, Plaintiff obtained a mortgage for her home in Brooklyn, New York from Fannie Mae.  ¶ 18.[1]  Sometime thereafter, OLS obtained the rights to service Plaintiff's Note and Mortgage.  ¶ 19.  Plaintiff re-financed her mortgage in 2008.  ¶ 18.

After falling a few months behind on her mortgage payments in 2011, OLS sent literature to Plaintiff offering assistance, including assistance in seeking a modification of her loan under HAMP as well as its own proprietary modification program.  ¶¶ 21, 22.  Plaintiff obtained an application from OLS and, on December 28, 2011, submitted a completed application to OLS

---

[1]     References to "¶____" are to enumerated paragraphs of the Complaint.

along with documents requested in the application (the "Application"). ¶ 23. (OLS has annexed Plaintiff's completed Application as Exhibit C to the Forbes Declaration.)

On the face of her Application, Plaintiff did qualify for a loan modification under HAMP guidelines: her monthly mortgage payments ($2,000), exceeded the HAMP threshold of 31% of the sum of her income – which in Plaintiff's case was her gross monthly income ($4,000), plus monthly child support ($1,000), plus monthly rental income ($1,025, but discounted at 75% as HAMP requires) ($769.50) – totaling $5,769.50. (Forbes Decl. Aff., Ex. C, at 5-6.)

The Application represents that Ocwen will "make every effort to review and process your request as quickly as possible," but not delay foreclosure activity during its review:

> *Ocwen will make every effort to review and process your request as quickly as possible.* Ensuring that you provide ALL requested information at the same time in a single package is the best thing you can do to ensure the most rapid response time. The review process will take up to 30 days after the receipt of the completed package. *During this time, Ocwen will not delay or stop any collections or legal activity on your loan. Ocwen will contact you to let you know the outcome of our review. Id.* at 12 (emphasis added.)

Page 11 of OLS's Application form contains a page entitled "Borrower Acknowledgment and Agreement" containing 14 enumerated "acknowledgements," including that "time is of the essence" and that "Ocwen will use [the Application] to evaluate [Plaintiff's] eligibility for availability relief options and foreclosure alternatives." *Id.* at 11.

**B.    OLS's Response To Plaintiff's Application**

By letter dated December 30, 2011, OLS acknowledged receipt of Plaintiff's modification packet, and assigned a "Relationship Manager" for Plaintiff to contact. ¶ 24. Shortly thereafter, Plaintiff contacted the Relationship Manager who instructed her _not_ to make mortgage payments pending the application process. ¶ 25. Subsequently, OLS sent at least 10

"follow-up" letters requesting additional documentation, each expressly state – and contrary to the Application – that:

> While we consider your request, *we will not initiate a new foreclosure action* and we will not move ahead with the foreclosure sale on an active foreclosure as long as we have received all required documents and you have met the eligibility requirements. ¶ 33 (emphasis added).[2]

Between the time Plaintiff submitted her Application and July 2012, when OLS finally served the contractually required notice of default, OLS claimed at least eight times that Plaintiff had failed to submit requested documents. OLS warned Plaintiff that she risked denial of her Application if she failed to respond promptly. And she did respond, time and again. ¶¶ 27-28, 34-35, 37-38. Yet, by letter dated April 24, 2012, OLS informed Plaintiff that she was ineligible for a HAMP modification because "[t]here are missing or incomplete documents in the application." ¶ 40. OLS never stated that it actually considered the merits of the Application or her financial eligibility despite the fact that, on its face, the Application merited a HAMP modification.

Meanwhile, and unbeknownst to Plaintiff, OLS was taking steps to prepare foreclosure even while it was purportedly "considering" her Application. In a document dated February 13, 2012, OLS executed an "allonge" as "Attorney in Fact" for Aegis Mortgage Corporation ("Aegis") for the purpose of transferring the Note from Aegis to U.S. Bank National Association, as Trustee for the Registered Holders of the Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5 (the "Trust"). (Forbes Decl., Ex. A, last page.)

The timing of this "transfer" in February 2012 is unusual because Aegis, which had filed for Chapter 11 bankruptcy on August 13, 2007 in the United States Bankruptcy Court for the

---

[2] Besides the April 3, 2012 letter which was referenced in Paragraph 33 of the Complaint, OLS sent letters contained the *identical* representation on *nine* separate occasions in 2012: letters dated January 3rd; January 10th; January 16th; February 12th; April 10th; April 19th; May 24th; June 1st; and July 8th.

District of Delaware, Case No. 07-11119 (Bankr. D. Del.), was liquidated nearly 16 months *earlier* by order on October 20, 2010. [*See id.*, Dkt. 5544.] Thus, the "transfer" of Plaintiff's Note, already delayed by over a year, took place barely a month after Plaintiff applied for a loan modification, and at a time when OLS was supposedly still considering the loan modification. In addition, OLS transmitted the executed allonge to the Trust during this time frame, as within a few months the Trust filed its foreclosure action against Plaintiff.

## C.   The Acceleration Provision Of The Mortgage And The Foreclosure

The Mortgage contains an acceleration provision in the case of a default that requires the Lender give 30 days' notice before filing a foreclosure action. (Forbes Decl. Ex. B.) Paragraph 22 of the Mortgage states, in pertinent part, that: "Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met: .... (b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states: …. (3) The date by which I must correct the default. *That date will be at least 30 days from the date on which the notice is given.*" *Id.* at p.13 of 16 (emphasis added).

On May 16, 2012, the Trust filed a foreclosure action against Plaintiff in Kings County, New York. ¶ 43. OLS did not, however, send the 30-day Notice of Default until almost two months *later*, by letter dated July 9, 2012. ¶ 50.

Yet – even after the foreclosure action was filed on May 16, 2012 – OLS continued to purport to be considering Plaintiff's modification application. *See* ¶ 44 (on May 20, 2012, Plaintiff spoke with the relationship manager about her application and sent Ocwen supporting documents the next day); ¶¶ 45-46 (separate correspondence from OLS on May 24, 2012 and June 1, 2012 thanking Plaintiff for submitting her loan application and requesting additional

documents); ¶ 48 (by letter dated July 8, 2012, OLS requested documents in connection with application); and ¶ 51 (two letters dated August 1, 2012 requesting documents).

No modification was ever offered. The attendant delays connected with OLS's botched processing of Plaintiff's Application, however, precluded her from other refinancing alternatives. On December 18, 2012, Plaintiff filed a Chapter 13 Petition for Bankruptcy Protection in the U.S. Bankruptcy Court for the Eastern District of New York. ¶ 54.

## ARGUMENT

### Legal Standards For A Motion To Dismiss

Motions to dismiss are generally viewed with disfavor. *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 178-79 (S.D.N.Y. 2010). "On a motion to dismiss under FRCP 12(b)(6), the court must assume that all allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party." *Posy v. HSBC Bank USA*, No. 13-3671 (LDW), 2013 U.S. Dist. LEXIS 181888, at \*6 (E.D.N.Y. Dec. 30, 2013) (Wexler, J.) (citation omitted). Fed R. Civ. P. 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that the pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When, as here, "'there are well-pleaded factual allegations, a court should assume their veracity and [then] determine whether they plausibly give rise to an entitlement to relief.'" *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n*, No. 13-CV-3288 (ADS), 2013 U.S. Dist. LEXIS 160225, at \*8-10 (E.D.N.Y. Nov. 8, 2013) (Wexler, J.) (citing *Iqbal*, 556 U.S. at 679). "[A] well-pleaded complaint may

proceed even if it [strikes a savvy judge that actual proof of those facts is improbable, and] 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

To plausibly give rise to an entitlement to relief, a complaint need only allege "enough factual matter (taken as true)" to "raise a reasonable expectation that discovery will reveal evidence" of liability. *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must "show[] that the pleader is entitled to relief," meaning only that "[i]t must allege facts that would be sufficient to permit a reasonable inference that the defendant has engaged in culpable conduct . . . ." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

## II.    OLS Breached Its Contracts With Plaintiff

### A.    OLS Breached The Acceleration Provision Of The Mortgage By Failing To Provide A Timely Notice Of Default

To state a claim for breach of contract, plaintiff must show (1) the existence of a contract; (2) claimant's performance under the contract; (3) defendant's breach; and (4) resulting damages. *Johnson v. Nextel Communc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011); *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Here, the acceleration provision was manifestly breached. The Mortgage required a 30-day notice of default. Notice was not given until July 9, 2012 nearly two months *after* foreclosure commenced on May 16, 2012. ¶¶ 50, 43.

OLS blames Plaintiff for her own injury, insisting that any harm was caused by her own default. OLS's pattern of delay, however, injured Plaintiff beyond her non-payment. *See, e.g., Pereira v. Ocwen Loan Serv., LLC.*, No. 11-cv-2672 (SJF), 2012 U.S. Dist. LEXIS 56044, at *12 (E.D.N.Y. Mar. 12, 2012) (denying motion to dismiss breach-of-contract claim where "[p]laintiffs' credit is impaired resulting in an inability to borrow funds, or only to do so at a

higher, probative rate"); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 453 (E.D.N.Y. 2013) (at pleading stage, defendant could not "'say conclusively that [plaintiff] could not have sought or considered other financial alternatives if he did not rely'" regarding steps to avoid foreclosure); *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 655 (E.D.N.Y. 2012) (harm due to late fees, interest, and other default-related servicing fees). Indeed, it was OLS that required Plaintiff to acknowledge that "time is of the essence." (Forbes Decl. Ex. C.)

OLS asserts that Plaintiff lacks privity to sue OLS for breach of the mortgage. It is true that a party "may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity." *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997). However, courts applying New York law have recognized that under certain circumstances privity of contract may be found where "the relationship between [the principal and the agent] was so close as to be the functional equivalent of privity." *RLI Ins. Co. v. King Sha Group, Inc.*, 598 F. Supp. 2d 438, 443-44 (S.D.N.Y. 2009) (privity found where, *inter alia*, payments made directly) (citations omitted).

Here, there is ample basis for asserting that OLS and the Lender were in privity. Plaintiff dealt directly with OLS, and not the Lender. Plaintiff made payments directly to OLS. Indeed, without notice to Plaintiff, but during the application process, OLS transferred the Note as Aegis's Attorney-in-Fact to the Trust by an allonge dated February 13, 2012. (Forbes Decl. Ex. A, last page.) Finally, OLS, speaking in its own name and not by reference to the Lender, asserted in its letters to Plaintiff that "*we* will not initiate a new foreclosure" action. ¶ 33

(emphasis added).  These factors support, at the pleading stage, a contract claim against OLS in privity with the Lender.[3]

### B.     OLS Has Breached The Implied Covenant Of Good Faith And Fair Dealing To Consider Plaintiff's Application For A Loan Modification

The Complaint not only states a contract claim against OLS, but it also a claim that OLS breached the implied covenant of good faith and fair dealing in connection with the application process.  "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance."  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (citation omitted).  New York courts repeatedly affirm that: "a party may be in breach of an implied duty of good faith and fair dealing, *even if it is not in breach of its express contractual obligations*, when it exercises a contractual right as part of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain."  *Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.*, 25 Misc. 3d 1203(A), 1203(A) (N.Y. S. Ct. 2009) (emphasis added).  This includes, "any promises which a reasonable person in the position of the promisee would be justified in understanding were included," such as "a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Dalton*, 87 N.Y.2d at 389 (citations and quotations omitted).

The Complaint amply alleges how OLS breached its duty of good faith and fair dealing with Plaintiff and the proposed class.  OLS sought and received Plaintiff's documentation in support of her HAMP modification application.  ¶¶ 21, 23–42.  OLS had sufficient awareness of the receipt of Plaintiff's documents to execute an allonge in order to lay the groundwork for a

---

[3]     OLS asserts that Paragraph 9 of the Acknowledgments in the Application expressly states that OLS was not waiving foreclosure.  Paragraph 9, however, expressly refers not to the loan application process, but to situation involving a trial payment plan ("I/we agree that *when Ocwen accepts and post a payment during the term of any prepayment or trial period plan* …").  (Forbes Decl., Ex. C, at 11; emphasis added.)

foreclosure action.   In order to foreclose on Plaintiff, OLS claimed to have not received her documents, even though it had, as demonstrated by its acknowledgment of receipt of some documents but not of others that had been sent in the same fax transmission.   ¶¶ 23-42.   OLS representatives also provided misinformation to Plaintiff about the status of her modification, what steps she should take to obtain a modification, and the modification process generally.   ¶¶ 25, 30, 32.[4]   Further demonstrating Ocwen's lack of good faith dealing, foreclosure proceedings were commenced against Plaintiff while OLS was ostensibly still considering her HAMP modification application.   ¶¶ 43-47.   Id.   Then – even after Ocwen had commenced a foreclosure proceeding, but before OLS sent a notice of default of Plaintiff had been notified of same – OLS's relationship managers never disclosed the pendency of the pending foreclosure action, but continued to act as if they were helping her obtain a HAMP modification.[5]   ¶¶ 43-54.

Other courts have found similar conduct by loan servicers sufficient to state a claim for breach of the implied covenant of good faith and fair dealing.   *See In re Bank of Am. HAMP Contract Litig.*, No. 10-md-02193-RWZ, 2011 U.S. Dist. LEXIS 72079, at *17 (D. Mass. July 6, 2011) (motion to dismiss denied where bank "willfully failed to modify qualifying loans, declined to properly train and supervise its agents, encouraged and/or allowed employees to make inaccurate representations . . . 'in bad faith and for its own economic benefit'").[6]

---

[4]        *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 192 (2d Cir. 2005), is inapposite (defendants' failure to offer plaintiff contract with more favorable price terms not done in bad faith).

[5]        *Cf. Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 U.S. Dist. LEXIS 32565, at *18 (S.D.N.Y. Mar. 24, 2009) (dismissal warranted where defendants alleged not to use their best efforts to generate profits).   *Id.*   In contrast, the Complaint alleges that Ocwen acted to foreclose on plaintiff while pretending to assist her in obtaining a loan modification.

[6]        *See also Acuna v. Chase Home Fin., LLC*, No. 3:10-CV-905, 2011 U.S. Dist. LEXIS 52971, at **16-17 (E.D. Va. May 16, 2011) (denying motion to dismiss where servicer told homeowner to withhold mortgage payments because "his modification request would receive priority if he defaulted on the loan); *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10CV670, 2012 U.S. Dist. LEXIS 158508, at *14 (E.D. Va. Nov. 5, 2012) (good faith and fair dealing claims upheld where mortgage servicer "induced [borrower] to breach her Note and Deed of Trust" because she "allegedly informed that she would have to default to be eligible for a modification").

OLS also claims that, because the agreement to forebear from foreclosure concerns a "right" related to "real property," oral assurances to forebear foreclosure or other legal activity during the pendency of the application process alone are insufficient.  Even though, as OLS points out, the Application expressly states that it will _not_ foreclose during the application process, OLS represented otherwise on multiple occasions: first, by the promise implied in the Relationship Manager's instructions not to continue payment, ¶ 25; and second, by the repeated _written_ representations that OLS would not commence foreclosure proceedings during the pendency of the application process.  _See, e.g._, ¶ 33.  The Application was in writing and expressly indicates that OLS has undertaken to _at least review_ the Application.[7]

What OLS misses, however, is that OLS agreed – in writing – to _consider_ the loan application, and OLS never expressed to Plaintiff that it ever considered the merits of that application.  OLS's repeated and duplicate requests for documents breached that agreement, causing Plaintiff to delay the exercise of her options.  Moreover, OLS represented numerous times in writing – at least 10 times to Plaintiff – that it would not foreclose during the application process.  And Plaintiff – who continued to receive OLS's requests for additional documentation through August 2012 – had every reason to believe the application process was ongoing.[8]

---

[7]     OLS argues, in error, that the claim for breach of the implied covenant of good faith and fair dealing is duplicative of the contract claim.  Defendants breached the covenant by taking actions that, while perhaps not actual breaches of the contract, prevented Plaintiff from obtaining a modification.  _See Mendez_, 840 F. Supp. 2d at 652-53 (breach of covenant of good faith and fair dealing occurs where defendant has committed some act that, while not necessarily constituting actual breach, was in bad faith and done to deprive plaintiff of benefit of contract).

[8]     In _Onewest Bank, FSB v. Davies_, 38 Misc. 3d 1230(A) (N.Y. S. Ct. 2013), unlike here, the borrowers did not claim that the lender/loan servicer failed to consider their application; rather the opinion indicates that the lender had actually considered "the personal and economic circumstances of the [borrowers]." _Id._  In _Home Loan Inv. Bank, F.S.B. v. Goodness and Mercy, Inc._, No. 10-CV-4677 (ADS), 2011 U.S. Dist. LEXIS 48213 (E.D.N.Y. Apr. 30, 2011), there was no evidence that the lender orally waived its right to enforce the loan documents.

   The out-of-state authorities cited by OLS are inapposite, either because the lender actually considered the merits of the modification application or because the borrower did not even seek modification.  In _Milton v. U.S. Bank Nat'l Ass'n_, 508 Fed. App'x 326 (5th Cir. 2013), unlike here, the lender specified the reason for rejecting the borrower's request "because the subject loan 'failed the net present value or NPV test as established by the government rules.'"  _Id._ at 328.  _See also Khan v. Citimortgage_, No. CVF13-1378 (LJO), 2013 U.S. Dist. LEXIS

## II.   The Complaint Sufficiently Alleges Promissory Estoppel Against OLS

The Complaint alleges how Plaintiff relied to her detriment on OLS's representations, thus stating a claim for promissory estoppel under New York law.  The elements of the claim are: "'[1] a clear and unambiguous promise, [2] reasonable and foreseeable reliance by the party to whom the promise is made, and [3] an injury sustained in reliance on that promise.'" *Braddock v. Braddock*, 60 A.D.3d 84, 95 (1st Dep't 2009) (citing *Williams v. Eason*, 49 A.D.3d 866, 868 (2d Dep't 2008)).  "[A] detailed showing of the elements of promissory estoppel need not be shown to survive a pre-answer motion to dismiss."  *Mendez*, 840 F. Supp. 2d 639 at 654 (denying motion to dismiss promissory estoppel claim in putative class action alleging predatory loan servicing practices under HAMP).[9]   As demonstrated below, the Complaint contains plausible allegations fulfilling each element of a promissory estoppel claim.

### A.   OLS Made Clear And Unambiguous Promises To Plaintiff

The Complaint alleges the following clear and unambiguous promises:

(a)   Ocwen would review Plaintiff's loan modification application when she submitted all required documents in order to determine if she qualified for HAMP, ¶ 21; *see also* Forbes Decl., Ex. C, at 12.

(b)   Ocwen would assist Plaintiff in attempting to modify her mortgage loan, and offer Plaintiff a HAMP modification if she qualified for one, ¶ 21;

---

141338, at **9-11 (E.D. Cal. Sept. 30, 2013) (alleged oral request to delay foreclosure proceeding amounted to oral promise to modify written agreement barred by the statute of frauds); *Perino v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 135896, at **2-3, at *24 (E.D. Mich. Sept. 23, 2013) (homeowners alleged but did not prove that they were granted a loan modification, but subsequently defaulted before the modification was put in place).  In *Shaw v. Wells Fargo Bank, N.A.*, No. 4:12-CV-01422, 2013 U.S. Dist. LEXIS 129084, at *13 (S.D. Tex. Sept. 10, 2013), the borrower did not even apply for a loan modification, but claimed merely that he was told that he would be given time to request one.

[9]     *Cf. Shaw*, 2013 U.S. Dist. LEXIS 129084, at *15 (applying Texas law to dismiss promissory estoppel claims where borrower "has pleaded no facts supporting the essential elements of a promissory estoppel claim" and only alleged "'an oral contract exists between [p]laintiff and [d]efendant'") *Cf. Winkler v. Friedman*, No. 12-CV-3893, 2013 U.S. Dist. LEXIS 88853, at **32-33 (E.D.N.Y. June 25, 2013) ("amalgam of writings" in negotiation between employer and salesperson contained no unambiguous promise).

(c)     Plaintiff should not make payments on her mortgage while her modification application was being considered because the amount due was unknown, ¶ 25; and

(d)     Ocwen would "not initiate a new foreclosure action" while it considered Plaintiff's modification application.  ¶¶ 22, 24, 25, 33.

## B.     Plaintiff's Reliance On OLS's Evaluation Was Reasonable And Foreseeable

Plaintiff's reliance on OLS's promises was reasonable and foreseeable.[10]  It is reasonable and foreseeable that a borrower would rely on both written and oral representations from her loan servicer.  *See Kapsis*, 923 F. Supp. 2d at 430 (reliance reasonable and foreseeable where defendants offered to send plaintiff forbearance agreement); *Mendez*, 840 F. Supp. 2d at 654 (borrower relied on bank's representations regarding a loan modification).[11]

Not only does the nature of the relationship between Ocwen and Plaintiff support reasonable and foreseeable reliance, so also does the content of the promises.  No reasonable borrower facing difficulty making mortgage payments would disregard the directives given by her loan servicer, particularly while simultaneously being assured that the servicer intended to work with the borrower to reach a resolution.

Although Plaintiff had considerable equity in her home (as evidenced by the fact that the home's market value exceeded the principal amount of the loan) (Forbes Decl., Ex. C), Plaintiff chose to forego seeking alternatives, including selling her home, in order to seek a modification in reliance on Ocwen's promise that it would review her eligibility for a HAMP modification (which it did not) and offer her a HAMP modification if she qualified (which she should have). OLS's  relationship managers told Plaintiff to withhold payment on her loan, and in reliance on

---

[10]     *IMG Int'l Mktg. Group, Inc. v SDS William St., LLC*, 32 Misc. 3d 1233(A) (N.Y. S. Ct. 2011) (alleged promise not clear and unambiguous and so did not create reasonable and foreseeable reliance).

[11]     *See also Aceves v. U.S. Bank N.A.*, 192 Cal. App. 4th 218, 227 (2d Dist.), *modified*, 2011 Cal. App. LEXIS 158 (2d Dist. 2011) ("We conclude Aceves reasonably relied on U.S. Bank's promise; U.S. Bank reasonably expected her to so rely; and it was foreseeable she would do so.  U.S. Bank promised to work with Aceves to reinstate and *modify* the loan.").

their direction she did so.  Because she knew she was not making payments, at all times during the modification process Plaintiff relied on OLS's promise not to initiate foreclosure on her home while her modification application was pending.[12]   In particular, OLS correspondence repeatedly stated that "*while we consider your request, we will not initiate a new foreclosure action … as long as we have received all required documents and you have met the eligibility requirements.*  ¶¶ 33; 84.  Indeed, even after the foreclosure was filed on May 16, 2012, OLS continued to act as if it was considering Plaintiff's Application.  ¶¶ 44-46; 48, 51.  By relying on these representations, Plaintiff was harmed when she learned after the fact, and without notice, that her home was being foreclosed on, even though she could have sold it at a profit.  Plaintiff's reliance on these promises caused her delay and injury due to the assessment of fees, foreborne opportunities to potentially sell her home, and being forced to declare bankruptcy.

New York courts have repeatedly held that such allegations state a claim for promissory estoppel.  *See, e.g.*, *Picini v. Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 275 (E.D.N.Y. 2012), (defendants "engaged in 'deny and delay tactics'" that prevented plaintiffs from securing loan modification);[13] *Kapsis*, 923 F. Supp. 2d at 435-36 (borrower relied on oral representation to sign forbearance agreement; defendant servicer, "at the pleading stage, 'cannot say conclusively that

---

[12]      Although OLS argues that the modification Application stated that Ocwen would not halt, delay, or stop any collections or foreclosure activity, the Complaint alleges that the Company did represent – in writing – that it would delay foreclosure activity while her application was being considered.  This presents a question of fact not susceptible for resolution at this stage.  In *Onewest Bank, FSB v. Davies*, *supra*, by contrast, no contrary writing was alleged.

[13]      *Cf. Khan*, 2013 U.S. Dist. LEXIS 141338, at *14 (applying California law and stating that borrower's reliance on statements that foreclosure sale would be cancelled was not justifiable).  In *Khan*, a factor in the court's decision was that the borrower had "actual knowledge" of the upcoming foreclosure sale and did not "take the action she deemed necessary to avoid the foreclosure sale."  *Id.* at *13.  *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (injury element of promissory estoppel claim is not fulfilled when the injury had already been incurred prior to the making of the promise).  By contrast, here, OLS secretly filed for foreclosure without issuing a notice of default: Plaintiff was unaware that a foreclosure action had been filed against her.  ¶¶ 43-47.  The facts alleged here are much closer to the recent cases in this District allowing promissory estoppel claims to proceed when they regard promises made by loan servicers to help a borrower avoid a not-yet-commenced foreclosure.  *See Picini*, 854 F. Supp. 2d at 275; *Kapsis*, 923 F. Supp. 2d at 453.

15

[plaintiff] could not have sought or considered other financial alternatives if he did not rely' on [the servicer's] alleged promise.").

### C.   Plaintiff Relied To Her Detriment On OLS's Representations

Plaintiff was injured by detrimentally relying on OLS's promises that it would consider the merits of her application, coupled with the direct instruction from her representatives *not* to pay her mortgage pending the purported review.  This forced Plaintiff to pay higher fees and penalties and severely curtailed her ability to seek alternative solutions.

OLS claims that the promissory estoppel claim is also barred by the statute of frauds.  If the statute of frauds is implicated, the injured party can demonstrate that it would be unconscionable to invoke the statute of frauds to bar the promissory estoppel claim.  "Once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification."  *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 344 (1977).  *See also Fleet Bank v. Pine Knoll Corp.*, 290 A.D.2d 792, 797 (N.Y. App. Div. 3d Dep't 2002) (unconscionable injury where lender failed to fulfill alleged oral representations causing borrower to suffer serious financial consequences).[14]  The Complaint alleges unconscionability by describing how Ocwen – a large corporation with a sophisticated understanding of mortgage lending, loan servicing, applicable law, and Plaintiff's financial situation – misled and delayed an unrepresented consumer in order to force her into foreclosure, driving her to bankruptcy.[15]

---

[14]   OLS cites inapposite cases involving sophisticated commercial participants. *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, No. 06 Civ. 3085 (GBD), 2010 U.S. Dist. LEXIS 65870, at **2-4 (S.D.N.Y. June 25, 2010), *aff'd*, 438 Fed. App'x 20 (2d Cir. 2011) (dispute between two corporations); *720 Lex Acquisition LLC v. Guess?Retail, Inc.*, No. 09 Civ. 7199 (DAB), 2011 U.S. Dist. LEXIS 123180, at **10-11 (S.D.N.Y. Oct. 20, 2011) (dispute between two sophisticated business entities represented by counsel).

[15]   In *Wells Fargo Bank Minn., N.A. v. Ray*, a homeowner challenged a foreclosure action where "she was told by a representative of Ocwen that the foreclosure sale would be cancelled before the auction took place and that a forbearance agreement would be entered into and would be sent to her."  23 Misc. 3d 931, 933 (N.Y. S. Ct. 2009).

16

Finally, OLS claims that the promissory estoppel claim must be dismissed as duplicative of the contract claim.   Where, as here, however, OLS disputes the existence of a valid, enforceable contract, "[p]laintiffs are entitled to proceed on *both* contractual and quasi-contractual theories." *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578 (RJS), 2010 U.S. Dist. LEXIS 27609, at *26 (S.D.N.Y. Mar. 12, 2010) (emphasis added). *See also Brenner v. Brenner*, No. CV10-4857 (DRH), 2012 U.S. Dist. LEXIS 117252, at **19-20 (E.D.N.Y. Aug. 20, 2012) ("Because defendant has denied that the parties entered into a 'valid enforceable contract'… plaintiffs are 'entitled to plead the alternative theory of promissory estoppel in the event it is later determined there is no enforceable contract.'").[16]

## III.   The Complaint Plausibly Alleges OLS's Negligent Misrepresentations To Plaintiff

The Complaint sufficiently alleges that OLS negligently misrepresented the status and other material information regarding plaintiff's Application.   The elements of a negligent misrepresentation claim under New York law are: "'(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Picini*, 854 F. Supp. 2d at 276 (citations omitted).   Each of the elements is satisfied here.

---

The court set aside the foreclosure sale because "*if ever there was a case for equity, this is it.*"  *Id.* at 937 (emphasis added).

[16]      *Morgenweck v. Vision Capital Advisors, LLC*, 410 Fed. App'x 400, 402 (2d Cir. 2011), did not deal with a real estate contract, but rather the statute of frauds issues in an employment contract contemplating annual payment. OLS's citation of federal Texas cases is not persuasive.  *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. Tex. 2013) (dismissal of promissory estoppel claims affirmed because "the entirety of the Millers' allegations… concern oral promises" and "promissory estoppel only overcomes Texas's statute of frauds where the alleged oral agreement… is accompanied by [a] promise to sign a written agreement"); *Garcia v. GMAC Mortg., LLC*, No. H-12-2242, 2013 U.S. Dist. LEXIS 7634, at *18 (S.D. Tex. Jan. 18, 2013) (same).

OLS's reliance on *Costigan v. CitiMortgage, Inc.*, No. 10 Civ. 8776 (SAS), 2011 U.S. Dist. LEXIS 84860, at **23-24 (S.D.N.Y. Aug. 1, 2011), is misplaced: the *Costigan* court held that a valid contract, had been in effect and that "Citi fulfilled all of its obligations under the TPP."   As a result, the promissory estoppel claim was precluded by an express contract governing the identical issue.   Moreover, Plaintiff respectfully submits that *Costigan* conflicts with more recent decisions in this District.  *See, e.g., Kapsis, supra; Picini, supra; Mendez, supra.*

A.   **OLS's Conduct Established A Special Relationship With Plaintiff**

Whether a special relationship existed, or was sufficiently alleged that the existence of one is a question of fact about "the nature and caliber of the relationship" that cannot be resolved on a motion to dismiss, as the New York Court of Appeals has held:

> Whether *the nature and caliber of the relationship* between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact. In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996) (emphasis added).

Although, as OLS correctly asserts, a *typical* borrower-lender relationship will not support a negligent misrepresentation claim, *Picini*, 854 F. Supp. 2d at 277, the facts are different here. As *Picini* noted in denying a motion to dismiss, the general rule does not always apply "[i]n the mortgage modification context," due to the mortgage servicer's "sophisticated understanding of servicing mortgage loans and of available loss mitigation options," the assignation of a relationship manager to "help guide [borrowers] through the loan modification process," and "a series of Defendants' representatives -- under the guise of resolving Plaintiffs' situation -- provided them with conflicting information." *Id.* at 277. *Accord Smith v. Ameriquest Mtge. Co.*, 60 A.D.3d 1037, 1040 (N.Y. S. Ct. App. Div. 2d Dep't 2009) (in mortgage refinancing transaction, defendants "failed to establish, as a matter of law, that they had no duty to exercise reasonable care when providing information to the plaintiff regarding the loan transaction"); *Fleet Bank*, 290 A.D.2d at 795-96 (declining to dismiss negligent misrepresentation claim where small business owner-borrowers relied on bank relationship managers to provide financial solutions and accurate information).

18

The key factor in determining if a special relationship exists in the loan modification context is whether defendant "went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them" which "is precisely 'beyond the domain of a usual money lender.'"  *Ansanelli v. JPMorgan Chase Bank, N.A.*, No. C10-03892 (WHA), 2011 U.S. Dist. LEXIS 32350, at **21-22 (N.D. Cal. Mar. 28, 2011).

Here, the Complaint details facts which, taken as true, describe a special relationship:

- Knowing Plaintiff was in arrears, OLS solicited Plaintiff to apply for a loan modification. ¶ 20.

- OLS stated that Plaintiff could be eligible for not only a HAMP modification, but also for Ocwen's "own modification program" (the details of which were not described).  ¶ 21.

- OLS requested Plaintiff send it numerous documents which it would assess, using an undisclosed formula, to determine if Plaintiff could qualify for a loan modification.  ¶ 23.

- OLS assigned Plaintiff two different "relationship managers" who scheduled phone consultations with Plaintiff purportedly to shepherd Plaintiff through the modification process and "assist [Plaintiff] in finding an alternative to foreclosure."  ¶ 24, 25, 30-32. In turn, these relationship managers provided Plaintiff with information that later proved to be untrue: (a) that her documentation in support of her application was being considered; and (b) that she should not submit any payments while her loan was being considered for modification. *Id.*

These allegations demonstrate that Ocwen went beyond the traditional role of lender or loan servicer by: offering Plaintiff an opportunity for loan modification; engaging with her about it on multiple occasions; holding out its employees as having a sophisticated understanding of loss mitigation options on which Plaintiff could rely; and generally holding itself out as working to resolve the difficulties with Plaintiff's loan in her best interests. [17]

---

[17]      Defendants' reliance on *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 608 (S.D.N.Y. 2013), is misplaced.  *Grimes* dealt with a traditional lender-borrower relationship and did not arise in loan modification context discussed in *Picini* or *Ansanelli*.  Likewise, defendants' citation of *Abraham v. Am. Home Mortg. Servicing*, 947 F. Supp. 2d 222, at *39 (E.D.N.Y. May 23, 2013) (behind-the-scenes involvement, no interactions with and made no representations to plaintiffs). *Cf. BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783 (RWS), 2013 U.S. Dist. LEXIS 79894, at **53-54 (S.D.N.Y. June 4, 2013) (special relationship with defendants specifically barred by contract in which plaintiffs "expressly disclaimed any such relationship"); *Sholiay v. Fannie*

**B.    OLS Provided Incorrect Information**

The Complaint alleges numerous misrepresentations made by OLS.  OLS stated that it would determine if Plaintiff qualified for a HAMP modification, ¶ 21 (but it did not).  Ocwen's relationship managers directed Plaintiff to discontinue payments on her mortgage until her modification was processed because the amount due was unknown, ¶¶ 24-25, 30-32, and persisted in this representation, even when Plaintiff repeatedly sought confirmation.  ¶ 30.  OLS's letters stated repeatedly that OLS would initiate no new foreclosure action while reviewing Plaintiff's request, ¶ 33, but it was preparing for a foreclosure at the very time it was claiming that Plaintiff was not complying with document requests. ¶ 43.

Finally, OLS argues that there can be no negligent misrepresentation claim for "future" promises.  Yet, the misrepresentations made here – "do not pay," "we are considering your application," "send us your documents," "while your application is pending"– do not pertain to future conduct, but rather were misrepresentations about OLS's current policies, current course of conduct, and current efforts.[18]

**C.    For A Borrower In Distress, Reliance Was Reasonable**

A borrower's reliance on the statements of a mortgage servicer in connection with the loan modification process is reasonable, even when the servicer's misrepresentations contradict other documents.  *Fleet Bank*, 290 A.D.2d at 796 (reliance on relationship manager for accurate information was reasonable); *see also Picini*, 854 F. Supp. 2d at 277; *Ansanelli*, 2011 U.S. Dist. LEXIS 32350, at *20.  Although Plaintiff was in a position to start managing her bills again, she

---

*Mae*, No. CIV 2:13-00958, 2013 U.S. Dist. LEXIS 146446, at *20 (E.D. Cal. Oct. 9, 2013) (negligent misrepresentation claims subsumed by contract claim).

[18]       Accordingly, the authorities cited by OLS are inapposite.  *MTA Bus Non-Union Emples. Rank & File Comm. v. Metro. Transp. Auth.*, 899 F. Supp. 2d 256, 267 (S.D.N.Y. 2012) ("future events"); *Milton v. U.S. Bank Nat'l Ass'n*, 508 Fed. App'x 326, 329 (5th Cir. 2013) (applying Texas law).

was nevertheless a borrower in distress.  OLS solicited her to apply for a mortgage modification under the guise of helping save her home, and purported to guide her through the opaque process.  In such a situation, a reasonable borrower has no choice but to rely on the directions and statements of the loan servicer.  To do otherwise would risk inability to obtain a modification.

## IV.    The Complaint Alleges Claims Under New York's GBL

New York's GBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  A claim under GBL § 349 requires three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (citations omitted).  *See also Kapsis*, 923 F. Supp. 2d at 449.[19]

### A.    OLS's Conduct Was "Consumer-Oriented"

"'Consumer-oriented'" is defined as "conduct that 'potentially affects similarly situated consumers.'"  *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996).[20]  This requirement is "construed liberally."  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).  Although private contract disputes generally do not fall within the purview of § 349, if the complaint demonstrates that "the acts or practices have a broader impact

---

[19]     The Complaint likewise states a claim under § 350 because that section, "while specific to false advertising, is otherwise identical to section 349."  *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1 (2002).  OLS's modification solicitations were "misleading to a reasonable consumer."  *See Reit v Yelp!, Inc.*, 29 Misc. 3d 713, 718 (N.Y. S. Ct. 2010) (citing *Goshen*, 98 N.Y.2d at 324).

[20]     *Accord Washington v. Kellwood Co.*, No. 15 Civ. 10034 (DAB), 2009 U.S. Dist. LEXIS 32565, at **24-25 (S.D.N.Y. Mar. 24, 2009) (no specific allegations of an impact on consumers at large); *@Wireless Enters. v. AI Consulting, LLC*, No. 05-CV-6176 CJS (P), 2006 U.S. Dist. LEXIS 79874, at **36-37 (W.D.N.Y. Oct. 30, 2006) (no allegation that deceptive trade practices were directed toward the public at large).

21

on consumers at large," the pleading burden is satisfied. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

OLS creates the erroneous impression that residential mortgages are mere "private" contracts. GBL § 349 applies, however, to "virtually all economic activity." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999). "By its own terms . . . GBL § 349 applies to the acts or practices of *every* business operating in New York." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992) (emphasis added). Indeed, numerous decisions in this District have held that residential mortgage servicers engage in consumer-oriented activity under GBL § 349. *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 419-20 (E.D.N.Y. 2013) (mortgage servicer misapplied payments and wrongfully foreclosed on plaintiff's home); *Kapsis*, 923 F. Supp. 2d at 449-50 (mortgage servicer failed to timely respond to communications from debtors, and, *inter alia*, issued false and misleading monthly statements).[21]

Here, the Complaint alleges that Ocwen's deceptive business practices impact consumers at large. Plaintiff contacted Ocwen – but only after being first solicited by Ocwen to modify her loan. ¶ 20. The Complaint alleges that Ocwen routinely engages in the practice of "dual tracking" – purporting to process a solicited loan modification application while also moving borrowers toward foreclosure, and routinely fails to make timely decisions on modification applications. ¶¶ 14-15. In a section entitled "Ocwen's Pattern of Similar Conduct," the Complaint provides concrete examples of Ocwen's predatory servicing practices impacting other consumers, including: (a) regulatory actions against Ocwen for the similar conduct (¶ 68(a)-(e));

---

[21]     *See also Pandit v. Saxon Mortg. Servs.*, No. 11-CV-3935 (JS), 2012 U.S. Dist. LEXIS 133292, at **14-15 (E.D.N.Y. Sept. 17, 2012) (mortgage servicer committed array of HAMP-related misconduct including asking homeowners to "resubmit financial information on pretextual grounds" and "mislead[ing] homeowners over the phone"); *Moses v. Citicorp Mortg.*, 982 F. Supp. 897, 903 (E.D.N.Y. 1997) (mortgage originator concealed actual interest rates that borrowers were approved for but instead told they were approved for higher rates).

(b) other litigation alleging similar conduct by Ocwen (¶¶ 55-57); and (c) citations from online message boards that Ocwen widely engages in the same conduct as Plaintiff. ¶¶ 58-67.

This level of detail more than suffices to satisfy the "consumer-oriented" element. *See Kapsis*, 923 F. Supp. 2d at 450 (allegation that putative class "'comprised of tens-of-thousands of individuals'" whose residential mortgages were serviced by defendant survived motion to dismiss); *Pandit*, 2012 U.S. Dist. LEXIS 133292, at **15-16 (defendant "routinely" asked homeowners to resubmit financial information on pretextual grounds and misled homeowners over telephone); *Fitzgerald v. Chase Home Fin'l, LLC*, No. 10-cv-4148, Slip op. & Order at 17-18 (S.D.N.Y. Feb. 10, 2012) (that defendant's representatives allegedly repeated same or similar misleading statements "strongly" suggested that conduct was undertaken pursuant to policy or script "and thus . . . other consumers were treated the same way Plaintiffs were").[22]

## B.   OLS's Practices Were Deceptive

Under GBL § 349, the alleged deceptive acts, whether misrepresentations or omissions, are governed by an objective standard: whether they are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). A deceptive practice need not reach the level of common-law fraud to be actionable under GBL § 349. *Stutman*, 95 N.Y.2d at 29. In fact, the New York Court of Appeals has held that GBL § 349 "encompasses a far greater

---

[22]      Defendants' cases on "consumer-oriented" conduct are inapposite. For example, in *Hayrioglu v. Granite Capital Funding, LLC*, the pleadings did not allege "*any* facts showing [defendants] actively and broadly solicited consumers." 794 F. Supp. 2d 405, 410, 412 (E.D.N.Y. 2011) (emphasis added). Likewise, the complaint in *Corazzini v. Litton Loan Servicing LLP*, No. 1:09-CV-0199 (LEK), 2010 U.S. Dist. LEXIS 27398, at **20-21 (N.D.N.Y Mar. 23, 2010), failed to allege any consumer-directed activity: "*There is no basis* in her pleadings that might plausibly indicate that the alleged wrongful conduct by Defendants against her applies to consumers generally." *Id.* at **20-21 (emphasis added.)

       *See also FLB, LLC v. 5Linx*, 821 F. Supp. 2d 548, 560 (W.D.N.Y. 2011) (dispute between franchisee and franchisor over sale of competitor's products "private dispute[ ]"); *McLean-Laprade v. HSBC*, 2013 U.S. Dist. LEXIS 106122, at **16-17 (N.D.N.Y July 30, 2013) (statute of limitations barred GBL § 349 claims; incorrect defendant named); *Yellow Book Sales & Distrib. Co. v. Hillside Van Lines, Inc.*, 98 A.D.3d 663, 665 (N.Y. S. Ct. App. Div. 2d Dep't 2012) (business-to-business contract dispute over advertising services).

range of claims that were never legally cognizable before its enactment." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209 (2001). Nor is intent an element of a claim under GBL § 349. *See Oswego Laborers'*, 85 N.Y.2d at 26 ("[I]t is not necessary under the statute [GBL § 349] that a plaintiff establish the defendant's intent to defraud or mislead . . . .").

Here, the Complaint alleges numerous materially deceptive acts:

- OLS claimed it would evaluate Plaintiff's eligibility not only for HAMP, but also for its proprietary loan modification program. ¶ 21. Yet, even though Plaintiff submitted all requested documentation and would likely qualify for HAMP, defendant never assessed whether Plaintiff was eligible for HAMP or any proprietary modification program. ¶ 40.

- OLS's representatives told Plaintiff to withhold her mortgage payments while her modification was being reviewed and assured her she would not be penalized – even though OLS's policy was to penalize and commence foreclosure on delinquent borrowers, regardless of whether they had pending modification applications. ¶¶ 24-25, 30-32.

- OLS represented numerous times in writing that, so long as it considered Plaintiff's modification request, it would not commence a new foreclosure action "as long as we have received all required documents and you have met the eligibility requirements. ¶ 33. OLS received all required documents and Plaintiff met the eligibility requirements, yet OLS nonetheless commenced a foreclosure proceeding. ¶ 43.

- OLS stated on April 24, 2012 that Plaintiff had 30 calendar days to contact to discuss additional modification or loss mitigation issues – yet commenced a foreclosure proceeding 20 days later. ¶¶ 40, 43. Even then, OLS had not served the requisite 30-day notice.

Any reasonable borrower would have been deceived by these conflicting and untrue statements from their loan servicer, regardless of what the text of a mortgage agreement said. In similar situations, these allegations have been judged to fulfill the deception element of a § 349 claim. *See, e.g., Kapsis*, 923 F. Supp. 2d at 449-50; *Fitzgerald,* Slip op. at 16.

### C.    OLS's Deceptive Practice Injured Plaintiff And The Proposed Class

Finally, the Complaint alleges that plaintiff and the other class members were harmed by OLS's actions. Plaintiff had to seek recourse through bankruptcy. ¶¶ 53-54. Others suffered an inability to fund alternative loss mitigation strategies to avoid foreclosure or perform efficient

breach to cut losses, mortgage defaults, foreclosures, increased default balances, inability to obtain loan modifications, forced home sale, degradation of credit score, and other damages and economic loss. ¶ 103.  This constitutes cognizable harm under the GBL.  *See Pereira*, 2012 U.S. Dist. LEXIS 56044, at *12; *Kapsis*, 923 F. Supp. 2d at 453; *Mendez*, 840 F. Supp. 2d at 655.[23]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny OLS's Motion to Dismiss the Complaint in its entirety.

Dated:   January 24, 2014
             New York, New York

**HARWOOD FEFFER LLP**

 s/ Robert I. Harwood
Robert I. Harwood
James G. Flynn
Benjamin I. Sachs-Michaels
488 Madison Ave., 8th Floor
New York, New York 10022
Telephone:  (212) 935-7400
Facsimile:  (212) 753-3630

*Attorneys for Plaintiff and the Proposed Class*

---

[23]     For the reasons set forth herein, OLS's motion to dismiss should be denied in its entirety.  If the Court grants any portion of Defendant's motion, then Plaintiff respectfully requests leave to re-plead those claims. *See Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (Wexler, J.) ("Generally amendments are favored, as they tend 'to facilitate a proper decision on the merits.'") (citation omitted).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
DEBORAH C. HARTE on behalf of herself
and all others similarly situated,

                Plaintiff,

      -against-                           Case No. 13-CV-5410-LDW-AKT

OCWEN FINANCIAL CORP. and
OCWEN LOAN SERVICING, LLC,

                Defendant.
-------------------------------------------------------- X

## CERTIFICATE OF SERVICE

     I, Glenn Mariano, hereby certify that I am over the age of 18 years, am employed by the law firm of Harwood Feffer LLP and that on January 24, 2014, the foregoing **CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** was served via E-mail in accordance with the Federal Rules of Civil Procedure, upon the following:

David S. Versfelt
K&L GATES LLP
599 Lexington Avenue, 34th Floor
New York, NY 10022

-and-

R. Bruce Allensworth
Brian M. Forbes
Robert W. Sparkes, III
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111

_____
Glenn Mariano