UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
                         :

DEBORAH C. HARTE on behalf of  : 13-CV-05410 (MKB)
herself and all others         :
similarly situated,            :
                         :

        Plaintiff,     : United States Courthouse
                         : Brooklyn, New York
                         :

   -against-                   :
                         : Thursday, January 29, 2015
                         : 10:00 a.m.
                         :

OCWEN FINANCIAL CORP. And       :
OCWEN LOAN SERVICING, LLC,       :
                         :

        Defendant.


- - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
BEFORE THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S :

For the Plaintiff:    HARWOOD FEFFER, LLP
                     488 Madison Avenue
                     New York, New York 10022
                 BY: JAMES G. FLYNN, ESQ.
                     BENJAMIN I. SACHS-MICHAELS, ESQ.

For the Defendant:    K & L GATES LLP
                     State Street Financial Center
                     One Lincoln Street
                     Boston, Massachusetts 02111-2950
                 BY: BRIAN M. FORBES, ESQ.

Court Reporter:  Stacy A. Mace, CRR
                 Official Court Reporter
                 E-mail:  Smacerpr@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.


SAM      OCR      CRR

Proceedings                    2

1          (In open court.)

2          THE COURT:  Good morning, please be seated.

3          THE CLERK:  This is civil cause for pre motion

4    conference in docket number 13-CV-5410 Harte versus Ocwen

5    Financial Corp., et al.

6          Counsel, please state your name for the record.

7          MR. FLYNN:  Good morning, your Honor.

8          THE COURT:  Good morning.

9          MR. FLYNN:  My name is James G. Flynn of the firm of

10   Harwood Feffer.

11         THE COURT:  Mr. Flynn, I see you don't want to stay

12   seated.

13         MR. FLYNN:  Oh, it's a bad habit not to stand when a

14   court is in order.

15         THE COURT:  I understand.  You can feel free to

16   stand if you want, but you don't have to, you can stay seated

17   for the presentation.

18         MR. SACHS-MICHAELS:  Good morning, your Honor.

19         THE COURT:  Good morning.

20         MR. SACHS-MICHAELS:  Ben Sachs-Michaels, from

21   Harwood Feffer also.

22         THE COURT:  Okay, good morning, Mr. Sachs-Michaels.

23         MR. FORBES:  And good morning, your Honor.  Brian

24   Forbes from the law firm of K&L Gates on behalf of Ocwen Loan

25   Servicing and Ocwen Financial Corp.

1          THE COURT:  Okay, good morning, Mr. Forbes.

2          Okay, we're here because Ocwen Financial and Ocwen

3    Loan Servicing has moved again.  I've already ruled on the

4    initial Complaint.  We now have a Second Amended Complaint and

5    you've set forth a number of bases for seeking to dismiss the

6    claims as to both Ocwen Financial and Ocwen Loan Servicing.

7    So I just want to discuss them briefly.

8          So in terms of -- well, let me just find my notes.

9          With regard to Ocwen Financial, you're alleging that

10   there are not enough facts in the Complaint to establish

11   either direct liability or indirect liability through a veil

12   piercing theory or agency.

13          Right, that's your basis for moving to dismiss?

14          And while there are some allegations of direct

15   liability, that's -- it's hard to tell whether there is or

16   not, but as to the veil piercing -- piercing -- my braces

17   sometimes give me a challenge with some of these words -- or

18   agency theory, which are relatively similar, why haven't they

19   alleged enough where looking at the various factors that

20   courts consider in determining whether or not you can pierce

21   the corporate veil, they've certainly alleged a number of

22   these factors?

23          So -- and at this point it's a Motion to Dismiss, so

24   I have to accept their allegations as true.

25          They've certainly alleged that the corporate offices

Proceedings                                                    4

1    have the same corporate officers, they have the same

2    addresses; a number of the ten factors that New York courts

3    look at.  Why isn't it enough?

4              MR. FORBES:  Thank you, your Honor.

5              While they have added some additional allegations

6    and while there may be some overlap, that -- some overlap is

7    certainly not enough.  And I think as The Court had pointed

8    out in its September Order, there are still elements to the

9    analysis that are missing.  In particular, the key element is

10   to whether or not the corporate form, the use of Ocwen

11   Servicing has been used to cause some type of unfairness,

12   injustice or fraud, specifically on the Plaintiff, herself.

13             THE COURT:  Well, they've alleged that, haven't

14   they?

15             I mean they have certainly made allegations based on

16   the letter from New York State to Ocwen, and it's unclear

17   whether it's as to one entity, both entities, or some other

18   entity, but that Ocwen has, in fact, engaged in this

19   wrongdoing.  And the wrongdoing alleged in that letter, with

20   regard to sending notices, is something that the Plaintiff is

21   alleging in this case.

22             So why isn't that enough, in terms of satisfying

23   that prong?

24             MR. FORBES:  Your Honor, I think that the letter

25   that the Plaintiffs have referred to in the Second Amended

Proceedings                                    5

1   Complaint related to issues of -- it relates to issues of

2   backdating correspondence with New York consumers.

3          There are no allegations in this Complaint that

4   Ms. Harte received some type of backdated correspondence.

5          THE COURT:  But not just -- not specifically as to

6   backdating, but what I understand the Plaintiff to be saying

7   is, look, this bank is not dealing in good faith.  That, in

8   fact, they had me try to modify my loan, but had no intent to

9   do so.  She -- I checked a number of times, the bank requested

10  information from the Plaintiff, and information most of the

11  time that she had already sent.  It was something like eight

12  or nine different times.  They kept on asking for the same

13  information, she kept on sending it; and still at the end of

14  the day when they initially denied it, the application --

15  modification application, it was for documents that she had

16  already provided.

17         So where there are allegations that the bank is

18  in -- and both entities, the inference can certainly be drawn,

19  because there's no separation as to the two, were engaged in

20  wrongdoing with individuals who had mortgages with the bank.

21         Why isn't that enough here to support Plaintiff's

22  allegations and to make out, at least, all Plaintiff has to do

23  at this point is allege that there's wrongdoing?  She -- she

24  certainly has alleged that Ocwen Financial is responsible for

25  Ocwen Loan Services.  And if the other -- if the other

Proceedings                                6

1   allegations are met, why shouldn't I let this go forward?

2        At least, you can come back in Summary Judgment if

3   she can't make the claim, but isn't there enough here,

4   counselor?

5        MR. FORBES:  Your Honor, respectfully, we don't

6   think that there is.

7        While there may be allegations vis-a-vis the contact

8   between Ocwen Loan Servicing and Ms. Harte, we still don't

9   think that there is a direct relationship between Ocwen

10  Financial Corporation and Ms. Harte.

11       THE COURT:  Right, and I'm not asking -- and I'm not

12  dealing with the direct relationship issue.

13       Now we're dealing with the indirect connection

14  between Ocwen Financial who, I assume, is your parent company,

15  and Ocwen Loan Servicing.

16       So if we look at the factors, I don't know about the

17  absence of the formalities or inadequate capitalization, but

18  with regard to Factor Number 4, Overlapping ownership

19  officers, directors and personnel; Factor Number 5, Common

20  office space, address, phone numbers of corporate entity; and

21  Number 6, is arguable the amount of business discretion

22  displayed by the alleged dominated corporation.  And Plaintiff

23  is alleging that Ocwen Financial, having done all of these

24  things, including getting the regular authority permission and

25  a number of other things, that there's enough allegation here

Proceedings                                    7

1   to satisfy that factor.  Whether they're treated as

2   independent profit centers, Plaintiff argues, no, that, in

3   fact, the money from OLS goes to OFC.

4           So when I look at it, it seems to me that Plaintiff

5   has, at least, alleged enough to meet the requirements to

6   state a claim against Ocwen Financial here.

7           I understand that you believe that Plaintiff

8   ultimately can't prove this, but the only thing I'm concerned

9   with at this stage is just whether or not Plaintiff has

10  alleged enough.

11          What am I misconstruing here, counselor?

12          MR. FORBES:  Again, your Honor, I think that the

13  Plaintiffs are primarily -- while they have added allegations

14  about similar officers between the parties and overlapping

15  personnel, again, we think that that's only, you know, one

16  factor and that's -- that's not enough.

17          I think what's critical here and what's missing is

18  that link between Ocwen Financial and -- and Ms. Harte.

19          THE COURT:  Which of the ten factors?

20          MR. FORBES:  Your Honor, the --

21          THE COURT:  That's for the domination?

22          MR. FORBES:  Yeah, it relates to the domination --

23          THE COURT:  Right.

24          MR. FORBES:  -- of -- and control over the company,

25  and that there -- there is no connection between the two

Proceedings                                    8

1   that -- I'm sorry, your Honor --

2            THE COURT:  That's okay.

3            I mean I can read the factors, if you want me to, so

4   that you have in mind what the court are looking at.

5            MR. FORBES:  Again, it relates to the unfairness and

6   use of the corporate form to commit some type of fraud or sham

7   as it relates to Ms. Harte.  We think that that -- that's the

8   critical factor that's -- that's missing.

9            And on the --

10           THE COURT:  Well, she's certainly alleging it.

11  She's alleging that somehow because Ocwen Financial supervises

12  and controls, dominates Ocwen Servicing, that, in fact,

13  there's no way this could have been done without.  So she's

14  making the allegation, counsel.

15           It's just an allegation.  I don't know if the proof

16  is going to show that, but I certainly think that there's

17  enough there for Plaintiff -- that Plaintiff has, at least,

18  alleged enough factual issues that would preclude me at this

19  point as a matter of law from dismissing this claim against

20  Ocwen Financial, at least as to the veil piercing issue.

21           MR. FORBES:  You are --

22           THE COURT:  I'm not going to prevent you from making

23  your motion, counsel.

24           MR. FORBES:  Thank you, your Honor.

25           And, at least, to the agency as well, we think that

Proceedings                                                    9

1   they haven't satisfied that requirement.

2           THE COURT:  I don't know, the agency is pretty

3   straightforward too, but there are similar allegations that

4   the Plaintiff has to make to satisfy one versus the other.  I

5   really focused on the veil piercing theory as to whether or

6   not Plaintiff can satisfy that.  And just looking at these

7   factors to show domination, and then taking the Complaint and

8   reading it as a whole, it appears that Plaintiff has alleged

9   enough to get by.

10          So I have a question with regard to some of the

11  arguments that Ocwen is making.

12          So you're really saying that, look, as to the

13  contract claim, Plaintiff can't show any privity whatsoever,

14  right?

15          MR. FORBES:  Yes, your Honor.

16          On -- so that the Plaintiffs have now -- and as The

17  Court will recall in the September Order the breach of

18  contract claims were dismissed.

19          THE COURT:  Right.

20          MR. FORBES:  And it wasn't clear exactly which

21  breach of contract claims, but The Court went through a very

22  detailed analysis of the allegations and, essentially,

23  dismissed the breach of contract claims.

24          The Court did identify a potential theory that could

25  support a breach of contract claim.

SAM        OCR        CRR

Proceedings                                              10

1          THE COURT:  Right.

2          MR. FORBES:  The privity --

3          THE COURT:  With regard to the underlying mortgage

4    and note?

5          MR. FORBES:  Exactly, with regards to the underlying

6    mortgage.

7          I think our point as to Count 1, which is the breach

8    of contract of the underlying mortgage, again, our position

9    is, as a matter of law, Ocwen is not a party.  And, you know,

10   we, respectfully, disagree and, as The Court knows, and cited

11   to a number of cases, there's a split on that.

12         Putting aside the legal issue, it's still not clear

13   that the Plaintiffs have satisfactorily pled a privity of

14   contract.  The only allegations, really, are that Ocwen is the

15   loan -- is the loan servicer.

16         THE COURT:  Who owns the loan, if all you are is the

17   loan servicer?

18         MR. FORBES:  Typically, a loan servicer is not the

19   owner of the loan.

20         THE COURT:  I get that.

21         MR. FORBES:  It services it for some other investor.

22         THE COURT:  But aren't you servicing for Ocwen

23   Financial or is it someone else?

24         MR. FORBES:  No, it's some other bank, some other

25   investor.

Proceedings                                        11

1          THE COURT:  But if all you're doing is servicing the

2     loan, how is it possible then for you to change the mortgage

3     interest and to actually foreclose and do all of these other

4     things to the loan?

5          MR. FORBES:  Sure.

6          So in terms of interest, that's -- that's guided by

7     the note, itself.

8          THE COURT:  Correct.

9          And if you don't own the note, how do you modify it?

10         MR. FORBES:  Through the authority, through the

11    owner of the -- of the loan.

12         THE COURT:  Exactly.

13         So in other words, in order for you to service --

14    and service in here seems to be pretty broad, if servicing

15    includes not just collecting and sending out default notices

16    when you don't collect, but you seem to have gone beyond that

17    and that you've actually modified the loan.

18         Didn't you, in fact, change the terms of the

19    interest rate?

20         MR. FORBES:  That -- that can happen through a loan

21    modification, sure.

22         THE COURT:  Right.

23         And so -- well, was this interest rate changed

24    through a loan modification?

25         MR. FORBES:  I think the issue here is that the

                         SAM      OCR      CRR

Proceedings                                                      12

1    borrower didn't get a loan modification.

2           THE COURT:  Right, but wasn't the interest rate

3    changed prior to that or, at least, you've sent notices with

4    regard to that?

5           MR. FORBES:  That's correct.

6           THE COURT:  Okay.

7           So what I'm saying is you seem to be saying, well,

8    you know, on the one hand we can have our cake because we can

9    actually foreclose on this loan and do all of these things;

10   and on the other hand, no, you can't sue us because we never

11   signed off on this mortgage.

12          So bear with me a little bit and just explain to me

13   how this relationship works.

14          As I understand it, you have a mortgage and a note

15   with whomever -- whichever bank or financial entity you sign

16   that mortgage and note with.

17          Ms. Harte did that here.  It's unclear who that was.

18          At some point that mortgage and note got transferred

19   to someone else.  You, as the representative of that someone

20   else, you've been servicing that mortgage and note.

21          I understand servicing to be distinct from

22   ownership, right?

23          MR. FORBES:  Correct.

24          THE COURT:  Which is what you're alleging here.

25          And you're saying since you weren't a party to that

1    assumption of the mortgage and note, assuming if it's the same

2    mortgage and note, it had to be assumed by someone, so that

3    entity -- and what you're saying is, well, we weren't party to

4    that assumption, so, really, you can't sue us.

5            So what you seem to be implying is that she's suing

6    the wrong party for actually breach of that underlying

7    mortgage --

8            MR. FORBES:  Correct.

9            THE COURT:  -- right?

10           MR. FORBES:  Right.

11           THE COURT:  But what's she's suing for is for

12   failure to obtain the notice she's required under that

13   mortgage, right?

14           MR. FORBES:  That's -- that is -- that's the

15   Count 1.

16           THE COURT:  And you're the one who gets to foreclose

17   on that mortgage, isn't that accurate, as the servicing

18   company?

19           MR. FORBES:  Actually, I think when the foreclosure

20   happens, it's the foreclosure filed -- the servicer assists in

21   that foreclosure, it's typical that the foreclosure is brought

22   in the investor's -- the owner's --

23           THE COURT:  Correct, the mortgage holder has to

24   bring the foreclosure action.

25           MR. FORBES:  Right.

1          THE COURT:  And who in this case, and maybe I should

2     ask Plaintiff's counsel this, who in this case eventually sent

3     that July Notice of Foreclosure, was it Ocwen or was it the

4     bank?

5          I understood it to be Ocwen.

6          MR. FORBES:  Again, and it would have been Ocwen

7     that would have sent the Notice of Foreclosure.

8          THE COURT:  Okay, so that's my issue here.  The loan

9     can't be foreclosed by you, it has to be foreclosed by the

10    holder.

11         But if you have the authority by the holder to

12    actually send the Notice under the mortgage and note and to

13    begin the foreclosure process, right, why isn't that enough

14    for privity here?

15         It's like saying, well, we can do all these things

16    under your mortgage and note when you default, but guess what,

17    you can't sue us?  Too bad, so sad.

18         That seems to be a little troubling, counsel.

19         MR. FORBES:  I'm not sure that's exactly our

20    argument, your Honor.

21         And, again, this relates to the breach of contract

22    claim.  There may be other claims, and as The Court has

23    already said that there are promissory estoppel claims.

24         THE COURT:  Right, right.

25         But even as to the breach of contract, and I guess

Proceedings                              15

1    maybe -- maybe you are right, ultimately, that if you didn't

2    actually sign on and assume that contract, then there is no

3    contract that you're a party to, so ultimately maybe that is

4    the case, but yes, ultimately, though, you do bear some

5    responsibility there because of your connection, whatever it

6    is, to the mortgage holder.

7             MR. FORBES:  Sure, we are -- Ocwen Loan Servicing is

8    the servicer.

9             Your Honor, I'd also like to point out, too -- and,

10   your Honor, I think the privity argument and whether we're

11   still part of that, that is still Step 1 of the breach of

12   contract claim --

13            THE COURT:  Right.

14            MR. FORBES:  -- because the Plaintiffs also have

15   other issues in terms of --

16            THE COURT:  And the other only issue, I believe,

17   you've phrased is the fact that she hasn't shown damages.

18            MR. FORBES:  Damages is one issue, but also

19   non-performance on the Plaintiff's part, as well.

20            THE COURT:  You're saying that, but Plaintiff

21   certainly doesn't allege that in her Complaint.

22            In accepting her Complaint as true, Plaintiff says

23   she continued to pay.  And even after she sent in the

24   modification application she did continue to pay, but she was

25   told not to make her mortgage payments.  And I understand that

1   you're, one, asserting that that violates the Statute of Fraud

2   because it was done orally.  And two, that it couldn't modify

3   the Modification Agreement, itself, which says that the bank

4   can still go forward with any collection action.

5          However, didn't Plaintiff also receive a letter

6   telling her not to make those mortgage payments while they're

7   in the process of modification?

8          That certainly wouldn't be a Statute of Fraud issue.

9          MR. FORBES:  Well, I think, your Honor, that the

10   only contract that's -- that's pled in this count is the -- is

11   the mortgage, itself -- or the note and the mortgage.

12          THE COURT:  As to Count 1, but as to Count 2 that's

13   the Modification Agreement.

14          MR. FORBES:  That's the Modification Agreement.

15          THE COURT:  Right.

16          And while there's a problem because the Modification

17   Agreement, itself, isn't really a contract.

18          MR. FORBES:  Another point, yeah.

19          THE COURT:  I guess then that comes back to whether

20   Plaintiff has a claim in promissory estoppel based upon the

21   letter that was sent to her saying we won't foreclose during

22   the time that you actually attempt to modify.

23          MR. FORBES:  Right.

24          And, your Honor, on the promissory estoppel claim

25   we're not seeking dismissal of the entire promissory estoppel

1    claim.  It's just the portion of the promissory estoppel claim

2    that The Court had already previously dismissed relating to

3    the issue of Ocwen's failure to consider her loan application.

4            There are other portions of the promissory estoppel

5    claim that we are, therefore, not moving to dismiss on.

6            THE COURT:  Okay.

7            So what are the new allegations as to counsel as to

8    her -- that issue on the promissory estoppel?

9            And this is whether or not Ocwen failed to consider

10   the loan application, separate and apart from whether the

11   claim that was styled as the breach of contract of the

12   underlying mortgage, you may not -- assuming that you can't

13   prevail on the privity argument there, then that, too, could

14   be an estoppel argument, a promissory -- well, maybe.  There's

15   something there, I don't know what it is.

16           And then what was the other promissory estoppel

17   issue --

18           MR. FORBES:  I think the way --

19           THE COURT:  -- with regard -- go ahead.

20           MR. FORBES:  -- the way that they had pled it was

21   that there were three theories under promissory estoppel; the

22   failure to consider her loan application; for -- not

23   penalizing her for not making her payments while the

24   application was pending; and not to foreclose while the

25   application was pending.  It's those last two which The

1   Court's ruled on and which were we're not moving and we would

2   not move for a dismissal on.  But --

3          THE COURT:  The failure to consider the loan

4   application?

5          MR. FORBES:  That's -- that's the part that The

6   Court had dismissed previously, nothing's changed.  We think

7   that that's duplicative of the breach of contract claim.

8          THE COURT:  But then that's what I'm saying,

9   assuming there is no breach of contract claim, right, because

10  we're saying the Modification Agreement, itself, doesn't

11  create a contract based -- why isn't it that Plaintiff can

12  move forward under this theory of promissory estoppel as to

13  the failure to consider her loan application?

14         MR. FORBES:  I think, first, you're right, your

15  Honor, there would still -- there would not have to be a

16  breach of contract claim that's live, but we also, as we

17  contend before, that we still don't think that there is

18  sufficiently alleged damages in connection with this claim as

19  well.

20         THE COURT:  But if damages is your only concern, I

21  mean certainly Plaintiff incurred a number of fees in trying

22  to modify the agreement and also the added interest, right?

23         Because she's -- she's relying on the bank to try to

24  modify.  The bank says to her, don't pay us.  And I understand

25  that goes to 2 and 3, but as a result of that and the fact

1    that she's arguing you really didn't consider her application,

2    i.e., look at how many times you're asking me for the same set

3    of documents.

4              Didn't Plaintiff incur all these additional costs as

5    a result of that?

6              MR. FORBES:  Your Honor, respectfully, we -- there's

7    no added interest.  The interest is the amount that she owes

8    under her note and mortgage.

9              And in terms of the added fees, we contend that

10   that -- that relates back to her nonpayment, which we believe

11   as pled occurred prior to the modification application.

12             THE COURT:  But, again, accepting Plaintiff's

13   allegations as true, counsel, hasn't she alleged enough here

14   where -- and I have to go back and look to see what damages

15   Plaintiff has alleged, but I can -- but whatever damages she's

16   alleging with regard to the penalizing part, why doesn't that

17   go to the failure to consider the loan application?

18             And is that necessary for promissory estoppel?

19             Let me just take a look at the standard for

20   promissory estoppel.

21             A clear and unambiguous promise, reasonable and

22   foreseeable reliance on that promise, and injury to the

23   relying party as a result of that reliance.

24             So those are the three prongs of what's required to

25   make a promissory estoppel claim under New York law.

Proceedings                                    20

1          And so Plaintiff is saying they failed to consider

2    her application.  Clearly, there's a clear and unambiguous

3    promise that Ocwen would attempt to modify her loan, right?

4    If it's reasonable, foreseeable that she relied on it, there's

5    no question about that?  In fact, she stopped making payments

6    based on her reliance on the fact that her loan would be

7    modified.

8          And then, I guess, the issue is what, if any, injury

9    Plaintiff suffered as a result of that reliance.

10         Counsel.

11         MR. FLYNN:  Would you like me to address the issue

12   of damages?

13         THE COURT:  Yes.

14         MR. FLYNN:  Yes, okay; or injury.

15         The injuries are alleged in the Second Amended

16   Complaint, specifically in Paragraphs 100 and 101.  But the

17   point is that she forbore numerous other alternatives while

18   she kept on sending, at their request, additional documents.

19   And it's -- I counted ten times when she sent documents.  And

20   during that exchange of documents, and we have the fax thumb

21   prints on these documents to prove them.

22         She could have done any other situations.  She could

23   have gone for bankruptcy almost right away, instead of waiting

24   until another 12 months after she initialed -- initially began

25   the process of seeking a loan modification, but they kept on

Proceedings                                        21

1   telling her, send more documents.  We need more documents to

2   consider your application.

3              THE COURT:  So what, ultimately, happened here?

4              Did Plaintiff file for bankruptcy?

5              MR. FLYNN:  Yes.

6              THE COURT:  And that was 12 months later?

7              MR. FLYNN:  The modification process began the very

8   end of December 2011.

9              THE COURT:  In '11, right.

10             MR. FLYNN:  And in mid-December of 2012 she declared

11  bankruptcy.

12             In between, there's a chronology which I think is

13  set forth, perhaps painfully, perhaps fluently, in the

14  Complaint, which talks about all of the back and forth

15  communications that Ms. Harte had with Ocwen --

16             THE COURT:  Right, I saw those.

17             MR. FLYNN:  -- leading to a default.

18             THE COURT:  So you're saying that she could have

19  sought bankruptcy earlier.

20             But how would that have been different than what,

21  ultimately, happened in December of 2012 when she did seek

22  bankruptcy?

23             MR. FLYNN:  Just -- just to frame the chronology:

24             The communications between Ocwen and Ms. Harte began

25  in December of 2011 --

Proceedings                                           22

1          THE COURT:  Right.

2          MR. FLYNN:  -- and continued up through and

3    including July of 2012.

4          THE COURT:  Right.

5          MR. FLYNN:  At which time she found out that they

6    had actually foreclosed -- commenced two months earlier a

7    foreclosure action.  And she continued to get these requests

8    for more documentations -- more documentation until, at least,

9    August.

10          THE COURT:  Right.

11          MR. FLYNN:  At that point it took her a few months,

12    and I don't know the -- all the details, and it's not alleged

13    in the Complaint, to realize that she had no opportunity of

14    modifying the loan through Ocwen.

15          THE COURT:  Okay.

16          And so I guess that is the issue, as to what, if

17    any, injury, Plaintiff can show here.  The fact that her --

18    her filing for bankruptcy was delayed several months, I don't

19    know that that's going to be enough to meet the requirement.

20    I just don't know.  So I think that becomes the issue with all

21    of her promissory estoppel claim.

22          And, counsel, you may want to consider whether you

23    want to try to continue to pursue your breach of contract

24    claim as to both the underlying mortgage and the Modification

25    Agreement or whether you want to, instead, move forward with

Proceedings                                    23

1    just your promissory estoppel claim.

2            Or you can let Defendants brief it and you can

3    oppose it, and then I'll have to decide.  So as to -- let me

4    just make sure I've discussed everything.

5            So assuming, counsel, that ultimately -- and

6    remember, again, this is just a Motion to Dismiss.  And so

7    while I can look at certain documents that are either attached

8    to the Complaint, incorporated by reference into the Complaint

9    or public documents, I can't go beyond that for purposes of

10   deciding your motion.

11           So assuming, as we've discussed this morning, the

12   allegations are sufficient to support a veil piercing theory

13   against OFC, then as to the actual claims that are currently

14   alleged in the Second Amended Complaint and where we are with

15   those -- let me make sure we're all on the same page -- we've

16   discussed the breach of contract based on the mortgage, and

17   also the breach of contract based on the Modification

18   Agreement, which I think counsel is going to have a hard time

19   showing is an actual contract.

20           So I think you're left with, on that claim, probably

21   your promissory estoppel claim based on the letter and oral

22   representation with regard to the fact that they won't

23   commence a foreclosure proceeding while they continue to

24   modify the loan.

25           And then what are the other claims?

Proceedings                                    24

1              You haven't re-pled the breach of implied contract,

2     correct?

3              MR. FLYNN:  Yes, your Honor, that's correct.

4              THE COURT:  That's been abandoned?

5              MR. FLYNN:  Yes.

6              THE COURT:  And so has the breach of covenant of

7     good faith?

8              MR. FLYNN:  Yes, as a separate claim.

9              THE COURT:  You did re-plead that?

10             MR. FLYNN:  No.

11             THE COURT:  No?

12             MR. FLYNN:  To the extent that the implied -- the

13    duty -- the implied duty of good faith and fair dealing is in

14    every contract, that is still always in play.

15             THE COURT:  But not as a separate claim?

16             MR. FLYNN:  No, your Honor.

17             THE COURT:  And you did not bring back a negligent

18    misrepresentation claim either?

19             MR. FLYNN:  That's correct, your Honor.

20             THE COURT:  Okay, so we're left with just the brief

21    of contract, both for the underlying contract and the

22    Modification Agreement, the promissory estoppel claims and

23    then New York General Business Law, Section 349 claim.

24    Correct?

25             MR. FLYNN:  Yes, your Honor.

Proceedings                                     25

1           THE COURT:  Okay.

2           So then --

3           MR. FORBES:  Your Honor, there was also a

4    Section 350 claim, which was also not re-pled?

5           THE COURT:  Right, the 350 claim was dismissed and

6    that has not been re-pled.

7           So in terms of what you're moving to dismiss now,

8    you seek to dismiss everything as to Ocwen Financial because

9    you don't believe there's any direct or indirect liability?

10          MR. FORBES:  Correct, your Honor.

11          THE COURT:  Okay.

12          And so I agree with you that, as alleged, it doesn't

13   really show a direct liability, I don't think.  Let me just

14   make sure.

15          Because you seem, and now speaking to Plaintiff's

16   counsel, you seem to base that direct liability more on this

17   idea that as the company, Ocwen Financial, that actually got

18   the regulatory permissions, that that's enough for direct

19   liability.  I don't know that the law supports that, but I

20   could be wrong.

21          The two cases you did cite do not support that.  One

22   is a CERCLA case, which was dealing with that statute; and the

23   other -- it appeared to have been dealing with whether or not

24   New York long-arm statute should apply.

25          So they don't really support your direct liability

1    theory.  I don't know that there's any additional law out

2    there that would.  And so I think, at most, you're left with

3    the veil piercing and the agency liability issue.

4              And so you're seeking to dismiss that?

5              MR. FORBES:  Correct, your Honor.

6              THE COURT:  Okay.

7              And then as to Ocwen Loan Servicing, are you still

8    seeking to dismiss the promissory estoppel one we discussed?

9              MR. FORBES:  Just the portion that we think has been

10   re-pled that was already dismissed.  And maybe that goes to,

11   again, your Honor, what the Plaintiffs decide to do on the --

12   whether they're going to move forward with the breach of

13   contract or with --

14             THE COURT:  Because your basis for moving to dismiss

15   is that it's duplicative, isn't that -- wasn't that -- and

16   that was the basis for me dismissing that?

17             MR. FORBES:  Correct.

18             THE COURT:  But if -- at this point if Plaintiff,

19   ultimately, cannot make out a claim of breach of contract for

20   that Modification Agreement, which it doesn't appear that they

21   can, because I don't know, I couldn't find any case law that

22   supports the fact that the modification application is a

23   contract, that by submitting that application Plaintiff --

24   there was a binding contract between Plaintiff and Ocwen.  So

25   that's the trouble I have with that theory.  Maybe there's

1    case law out there that I just haven't found to support your

2    argument that somehow applying for that Modification Agreement

3    created a contract with Ocwen that could support liability.

4    But assuming that there is no breach of contract, then that

5    becomes a promissory estoppel claim.

6              MR. FORBES:  I think, your Honor, as we were

7    discussing earlier there's still issues of injury and damages

8    on that one --

9              THE COURT:  Right.

10             MR. FORBES:  -- under the promissory estoppel

11   context.

12             THE COURT:  Right.

13             So you would be moving to dismiss that portion of

14   the promissory estoppel claim?

15             MR. FORBES:  Correct.

16             THE COURT:  And really your basis would be

17   insufficient allegations as to injury?

18             MR. FORBES:  Correct.

19             THE COURT:  Okay.

20             And so to the extent that you do, because it sounded

21   like even the explanation you were giving me, counselor, for

22   what her injuries are, that some or most of that isn't alleged

23   in the Complaint?

24             MR. FLYNN:  There are allegations about additional

25   penalties that are a result of the process being dragged out

Proceedings                                              28

1    unnecessarily.

2              THE COURT:  Okay.

3              MR. FLYNN:  And I think those satisfy, but that's an

4    issue for The Court.

5              THE COURT:  Okay, so that's what you should address,

6    whether or not the allegations as set forth in the Complaint

7    as to injuries are enough for that.

8              And so then that leaves -- so that's really it in

9    terms of the motion, because that only leaves the promissory

10   estoppel claims that --

11             MR. FORBES:  Yeah, so the Motion to Dismiss for

12   Ocwen Loan Servicing would be on the breach of contract and

13   that portion of the promissory estoppel claim.

14             THE COURT:  Right.

15             MR. FORBES:  We're not seeking to challenge at this

16   point -- again, we challenge the merits, but The Court's

17   already ruled from a pleading aspect on the Section 349 claim

18   already, so we're --

19             THE COURT:  Okay.  So the breach of contract for the

20   underlying mortgage, breach of contract for the modification,

21   and then the promissory estoppel as to the failure to consider

22   the loan application.

23             MR. FORBES:  That's right, your Honor.

24             THE COURT:  Those are the three parts, okay.

25             Now, that we've cleared all of that up and I have a

1   better understanding of this case, so why don't we do this:

2           Why don't I have Plaintiff's counsel -- I'll give

3   you a week, two weeks if you need it, to look at the law and

4   decide whether you want to move forward with your breach of

5   contract claims, both of them, and notify The Court and

6   opposing counsel in writing.

7           It doesn't matter, I mean if you need more than a

8   week, I'll give you more than a week, but I assume this is

9   something you can do in a week.

10          I'm going to set up the motion schedule, but what

11  that does is if you're deciding not to move forward on your

12  breach of contract claims and only to rely on your estoppel

13  claims, then that's all counsel will have to respond to.

14          If you decide you want to move forward with the

15  breach of contract claims because there's law that supports or

16  there might be enough to support a claim somehow, then counsel

17  will reply -- will be dealing with everything.

18          MR. FORBES:  Okay.

19          THE COURT:  Okay, because the issue is the same for

20  both Ocwen Financial and Ocwen Loan, in terms of the contract.

21          Okay, so how much time do you need, counsel?

22          Do you need more than a week to come back to write a

23  letter as to that?

24          MR. FLYNN:  I think we can do it in a week.

25          THE COURT:  Okay.

Proceedings                                        30

1              MR. FLYNN:  If that assists The Court.

2              And we have already, among ourselves, discussed a

3    briefing schedule --

4              THE COURT:  Okay.

5              MR. FLYNN:  -- for the Motion to Dismiss.

6              THE COURT:  That's fine.  Then why don't you build

7    that week in?

8              MR. FORBES:  Yes.  So we were thinking three weeks

9    for Ocwen Loan Service -- I'm sorry, for Ocwen Financial and

10   Ocwen Loan Servicing to serve their motion papers.

11             THE COURT:  Okay.

12             So one week from today is the 5th; and three weeks

13   from that will be the 26th.  So that will be February 26th for

14   serving moving papers.

15             And how much time, counsel, for the response?

16             MR. FLYNN:  We had discussed four weeks, your Honor.

17             THE COURT:  Okay.

18             MR. FLYNN:  And that would put us as the 26th of

19   March.

20             THE COURT:  End of March, yes, respond March 26th.

21             And how much time for the reply, counsel?

22             MR. FORBES:  We were talking three, three weeks for

23   the replies.

24             THE COURT:  Okay.

25             MR. FLYNN:  That would make it April 16th, I

Proceedings                                            31

1  believe.

2              THE COURT:  Okay, April 16th for the reply.

3              Okay.  Is there anything else we need to discuss

4  today?

5              MR. FLYNN:  One issue.

6              We've had some discovery in this case.  Judge Wexler

7  and Magistrate have limited it to Plaintiff only discovery.

8              THE COURT:  Have you seen the Magistrate Judge on

9  this case?

10             MR. FLYNN:  No, your Honor.

11             THE COURT:  Okay, so that's what you need to do.

12             Since there's no question that, at least, the

13 promissory estoppel and the 349 claims are going forward, you

14 should definitely go ahead and see the Magistrate Judge on

15 this.  Let` me try to figure out who that is.

16             MR. FORBES:  I believe it's Magistrate Judge Reyes.

17             THE COURT:  Okay.

18             So you should definitely make an appointment for a

19 conference with him to move forward on discovery while we deal

20 with the motion practice?  And he'll -- you can discuss any

21 discovery issue with him.

22             I allow the Magistrate Judges to deal with all

23 discovery issues.  If there's a decision they make that you

24 want to appeal, you can appeal it to me.

25             Okay?

1          MR. FORBES:  Thank you, your Honor.

2          THE COURT:  There was one other thing in one of your

3    letters that I did want to ask about, counsel.  Give me one

4    minute, let me find it.

5          So in your letter dealing with Ocwen Loan Servicing

6    on the second page, you mentioned this PSA claim.  I didn't

7    understand Plaintiff to be making this claim.

8          MR. FORBES:  Your Honor, we weren't sure what --

9    there were allegations about the pooling and servicing -- PSA

10   stands for Pooling and Servicing Agreement.  They were added

11   to the Complaint.  We didn't initially understand exactly what

12   it was.  We haven't seen it being used for as a defense to

13   foreclosure, so we just weren't sure why the Plaintiffs were

14   bringing it into play.

15         THE COURT:  I read it as just another way where

16   Plaintiff -- another fact that Plaintiff was using to allege

17   ownership and control and domination by Ocwen Financial.

18         Did I misread that, counsel?

19         MR. FLYNN:  No, that's the primary reason we put

20   that in there.  It also -- it also provides background to the

21   entire case, I think.

22         THE COURT:  Right, I didn't read it as Plaintiff

23   asserting a separate claim.

24         Okay, I just wanted to clarify that.

25         All right, well, have a great day everyone.

Proceedings                          33

1            MR. FLYNN:  Thank you, your Honor.

2            MR. FORBES:  Thank you for your time your Honor.

3            THE COURT:  Okay.

4            (Pause.)

5            THE COURT:  Since you're here, you can also try to

6    reach Judge Reyes and see if he's available.  If he is, he'll

7    accommodate you.

8            MR. FORBES:  Thank you, your Honor.

9            MR. FLYNN:  Okay.

10           THE COURT:  Have a good day.

11           MR. FLYNN:  Thank you.

12           (Matter adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25

SAM        OCR        CRR
I certify the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
       /s/  Stacy A. Mace    January 29, 2015