UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
DEBORAH C. HARTE *on behalf of herself and others similarly situated*,

                  Plaintiff,

v.

OCWEN FINANCIAL CORPORATION and
OCWEN LOAN SERVICING, LLC,

                  Defendants.
-----------------------------------------------------------------

**MEMORANDUM & ORDER**
13-CV-5410 (MKB) (RER)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Deborah C. Harte commenced this action in New York Supreme Court, Kings County, on behalf of herself and a nationwide class of similarly situated homeowners, alleging that Defendants Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS"), made misrepresentations to mortgage borrowers in violation of New York statutory and common law. On September 30, 2013, Defendants removed this action from state court to the United States District Court for the Eastern District of New York. (Notice of Removal, Docket Entry No. 1.) On September 19, 2014, the Court granted in part and denied in part Defendants' motions to dismiss the Complaint. *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014). On October 20, 2014, Plaintiff filed an Amended Complaint, (Am. Compl., Docket Entry No. 54), and on December 5, 2014, with leave of the Court, Plaintiff filed a Second Amended Complaint ("SAC"), (SAC, Docket Entry No. 60).

       On April 16, 2015, OFC and OLS separately moved to dismiss the SAC. (OFC Mot. to Dismiss the SAC ("OFC Mot."), Docket Entry No. 70; OLS Mot. to Dismiss the SAC ("OLS Mot."), Docket Entry No. 72.) The Court referred Defendants' motions to Magistrate Judge

Ramon E. Reyes, Jr., for a report and recommendation. (Order dated Oct. 6, 2015.) By report and recommendation dated March 11, 2016 (the "R&R"), Judge Reyes recommended that the Court grant in part and deny in part Defendants' motions to dismiss. (R&R 19, Docket Entry No. 83.) On March 25, 2016, Plaintiff and OFC each filed timely objections to the R&R. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 84; OFC Obj. to R&R ("OFC Obj."), Docket Entry No. 85.) For the reasons set forth below, the Court adopts Judge Reyes' R&R in part, and reserves decision as to Plaintiff's objections to the R&R as to her breach of contract claim.

## I. Background

### a. Plaintiff's loan modification

On September 15, 2005, Plaintiff obtained an adjustable-rate home mortgage loan in the amount of $420,000.[1] (SAC ¶ 37.) In December of 2011, Plaintiff began the process of modifying her loan through OLS, her loan servicer. (*Id.* ¶ 53.) Over the following seven months, Plaintiff worked with OLS to modify her loan. (*See id.* ¶¶ 55–98.) During that time, Plaintiff provided OLS with documentation it requested for the modification and often had to resubmit documents responsive to OLS' duplicative requests. (*Id.* ¶¶ 75–76, 78, 96.) At one point in the process, OLS told Plaintiff to stop making her mortgage payments while her modification application was pending. (*Id.* ¶ 61.) A January of 2012 letter from OLS to Plaintiff, requested additional information from Plaintiff, and stated that while OLS was considering her modification request it would neither "initiate a new foreclosure action" nor "move ahead with the foreclosure sale on an active foreclosure," so long as OLS "received all required documents" and Plaintiff "met the eligibility requirements." (*Id.* ¶ 62.)

---

[1] The Court assumes familiarity with the record, as detailed in the Court's prior decision, *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014), and the R&R, and describes only the facts necessary to address the parties' objections to the R&R.

2

On May 16, 2012, while Plaintiff's loan modification application was pending, OLS filed a foreclosure action against Plaintiff in New York Supreme Court, Kings County.[2] (*Id.* ¶ 85.) Although her mortgage note required that OLS send her a notice of acceleration or default before filing a foreclosure action, on May 16, 2012, Plaintiff had not yet received any such notices. (*Id.* ¶¶ 38, 86.) After May 16, 2012, Plaintiff continued communicating with OLS regarding the loan modification, but at no time was she notified of the pending foreclosure action against her and, at times, OLS reassured Plaintiff that a foreclosure action would not be initiated while her application was being processed. (*Id.* ¶¶ 87–92.)

By letter dated July 9, 2012, OLS notified Plaintiff that it had sent her a notice of default, and OLS offered to assist Plaintiff in bringing her loan current. (*Id.* ¶ 93.) However, at the time of the letter, Plaintiff had not yet received a notice of default. (*Id.*) The July 9, 2012 letter suggested that Plaintiff seek a loan modification. (*Id.*) Thereafter, Plaintiff received a notice of default, stating that she was 345 days in default and could cure the default by paying $32,116.04 on or before October 9, 2012. (*Id.* ¶ 94.) Despite having received the notice of default from OLS, Plaintiff continued to receive communications from OLS regarding her pending loan modification. (*Id.* ¶¶ 95–96.) Ultimately, by letter dated September 20, 2012, OLS informed Plaintiff that it was unable to offer Plaintiff a loan modification because certain documentation was missing or incomplete. (*Id.* ¶ 97.) At that time, Plaintiff determined that she would be unable to obtain a modification from OLS, and, in an effort to keep her home, she subsequently filed a bankruptcy petition for relief under Chapter 13 of the U.S. Bankruptcy Code. (*Id.* ¶¶ 98–99.)

---

[2] According to Plaintiff, this practice of proceeding with foreclosure while a loan modification is pending is known as "dual tracking." (SAC ¶ 83.)

### b. Plaintiff's claims against OLS and OFC

Plaintiff brings claims against OLS for breach of contract, promissory estoppel and violation of section 349 of the New York General Business Law, arising from OLS' conduct in connection with the servicing of Plaintiff's mortgage and with Plaintiff's application for a loan modification. (*Id.* ¶¶ 123–150.) Plaintiff also seeks to hold OFC liable for all claims against its wholly-owned subsidiary, OLS. (*Id.* ¶¶ 15, 128, 133, 140, 147.) According to Plaintiff, OFC is liable for OLS' loan servicing misconduct because, at the relevant time, OLS was acting under OFC's direction and control and had actual or apparent authority to do so. (*Id.* ¶¶ 14–28; Pl. Mem. in Opp'n to OFC Mot. ("Pl. Opp'n") 23–24, Docket Entry No. 78.) In support of this theory, Plaintiff alleges facts in the SAC regarding the structure of OFC and OLS, including that OFC acted only through its subsidiaries in servicing loans, and regarding the overlap of both entities from its executive management to its physical address and use of corporate branding. (SAC ¶¶ 14–28.) In addition, Plaintiff alleges that OFC's execution of settlement agreements and its agreements with regulators, such as the New York State Department of Financial Services ("DFS"), bound OLS or necessarily required OLS, to act on OFC's behalf in carrying out the obligations imposed by these agreements. (*Id.* ¶¶ 22–28.) These allegations focus principally on two agreements between OFC and DFS: a September 1, 2011 "Mortgage Servicing Practices" agreement (the "MSP Agreement") and a December 5, 2012 Consent Order (the "Consent Order").[3] (*Id.* ¶¶ 23–24.)

---

[3] The MSP Agreement and the Consent Order are publicly available. *See* Agreement on Mortgage Servicing Practices, Sept. 1, 2011, http://www.dfs.ny.gov/about/letters/clocwen.pdf; Consent Order Under N.Y. Banking L. § 44, Dec. 5, 2012, http://www.dfs.ny.gov/about/ea/ea121205.pdf. Given the SAC's extensive reliance on both, the Court incorporates them by reference into the SAC's allegations. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is deemed to include any written instrument attached to it as an

c.  **Defendants' motions to dismiss**

OLS and OFC separately moved to dismiss the SAC. (OLS Mot. 1; OFC Mot. 1.) OLS asserted that Plaintiff failed to state claims for breach of contract, promissory estoppel or for a violation of section 349 of the New York State General Business Law. (OLS Mem. in Supp. OLS Mot. 1–3, Docket Entry No. 73.) In its motion, OFC asserted that Plaintiff failed to plausibly allege how OFC, as OLS' parent, was directly or indirectly liable for the claims asserted against OLS. (OFC Mem. in Supp. OFC Mot. ("OFC Mem.") 1–3, Docket Entry No. 71.) According to OFC, the SAC failed to include allegations regarding OFC's direct involvement in the servicing of Plaintiff's loan or the handling of her modification application. (*Id.* at 6–7.) In addition, OFC asserted that Plaintiff's theories of indirect liability — veil piercing and agency — also fail. (*Id.* at 7–23.) As to agency, OFC asserted that the SAC lacks any allegations supporting such a theory of liability. (*Id.* at 20–23.) OFC argued that the SAC fails to "raise even the slightest inference of an agency relationship between OFC and OLS," and is devoid of allegations showing that OLS took any action against Plaintiff while "under the control of OFC." (*Id.* at 21.) Regarding Plaintiff's theory arising from the regulatory agreements detailed in the SAC, OFC argued that these agreements were insufficient "to impute agency-based liability on a parent corporation." (*Id.* at 22.)

d.  **Judge Reyes' recommendations**

Judge Reyes recommended that the Court grant in part and deny in part OLS and OFC's motions to dismiss. (R&R 19.) As to the claims against OLS, Judge Reyes recommended that

---

exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (alteration omitted) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

5

the Court dismiss Plaintiff's claims for breach of contract[4] and breach of the implied covenant of good faith, and recommended that the Court deny OLS' motion to dismiss Plaintiff's claim for promissory estoppel. (*Id.*) As to the claims against OFC, Judge Reyes recommended that the Court dismiss Plaintiff's veil piercing theory of indirect liability, but deny OFC's motion as to Plaintiff's agency theory of indirect liability. (*Id.*)

**II. Discussion**

    **a. Standards of review**

        **i. Report and recommendation**

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).

        **ii. Rule 12(b)(6)**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw

---

[4] Plaintiff alleged a breach of contract claim based on (1) OLS' initiation of the acceleration provision of the mortgage without providing Plaintiff with the proper notice of default prior to such initiation and (2) OLS' failure to adhere to the contractual obligations imposed by the loan modification application. (SAC ¶¶ 123–134.)

inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Unopposed recommendations

OLS did not object to Judge Reyes' recommendation that the Court deny its motion to dismiss the promissory estoppel claim against it. Plaintiff did not object to Judge Reyes' recommendation that the Court grant OLS' motion to dismiss as to Plaintiff's claims for breach of an implied covenant of good faith or breach of the loan modification agreement, or Judge Reyes' recommendation that the Court dismiss Plaintiff's veil piercing theory of indirect liability against OFC. The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts these recommendations pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court (1) denies OLS' motion to dismiss Plaintiff's claims for promissory estoppel, (2) grants OLS' motion to dismiss Plaintiff's claims for breach of an implied covenant

of good faith (3) grants OLS' motion to dismiss Plaintiff's claims for breach of the loan modification agreement, and (4) grants OFC's motion to dismiss Plaintiff's veil piercing theory of indirect liability.

### c. The parties' objections

Plaintiff and OFC objects to certain recommendations made by Judge Reyes in the R&R. (Pl. Obj. 1; OFC Obj. 1–2.) Plaintiff objects to Judge Reyes' recommendation that the Court grant OLS' motion to dismiss Plaintiff's breach of contract claim, asserting that Judge Reyes improperly held that Plaintiff's failure to make timely mortgage payments as required under the mortgage, precluded her breach of contract claim based on the mortgage. (Pl. Obj. 4–7.)

OFC objects to Judge Reyes' recommendation that the Court deny OFC's motion to dismiss Plaintiff's agency theory of indirect liability. (OFC Obj. 1–2.) OFC asserts that, as to Plaintiff's agency theory of liability, Judge Reyes failed to apply the plausibility standard that governs motions to dismiss, and in failing to apply the proper standard, Judge Reyes improperly held that the MSP Agreement and the Consent Order executed by OFC and DFS support Plaintiff's claims on either an actual or apparent authority agency theory. (*Id.* at 6–15.) As to actual authority, according to OFC, the SAC does not plausibly allege that OFC exercised control over OLS in connection with the servicing of Plaintiff's loans or the processing of Plaintiff's loan modification application. (*Id.* at 10–12.) As to apparent authority, OFC asserts that Plaintiff does not allege any facts suggesting she was aware of any authority OFC had over OLS. (*Id.* at 13–14.)

For the reasons discussed below, the Court rejects OFC's objections to the R&R and reserves decision as to Plaintiff's objections. The Court therefore denies OFC's motion to dismiss the SAC.

### d. Plaintiff plausibly alleges agency theory of indirect liability against OFC

"It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) (citations omitted). "However, a corporate parent may be held to account for the wrongs of its subsidiary (1) under an alter ego or veil-piercing analysis where the corporate parent has disregarded the subsidiary's corporate form, or (2) under traditional principles of agency." *Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007); *see Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 194 (2d Cir. 2010) ("[The] principle of corporate separateness may be disregarded when a subsidiary acts as an agent of its parent."), *aff'd*, --- U.S. ---, 133 S. Ct. 1659 (2013); *Rochester Gas & Elec. Corp. v. GPU, Inc.*, 355 F. App'x 547, 549 (2d Cir. 2009) ("A parent corporation can be held derivatively liable as the effective owner/operator of a subsidiary's facility where circumstances justify piercing the subsidiary's corporate veil."). "Suing a parent corporation on an agency theory is quite different from attempting to pierce the corporate veil," because, on an agency theory, "the claim against the parent is premised on the view that the subsidiary had authority to act, and was in fact acting, on the parent's behalf — that is, in the *name* of the parent." *Sahu v. Union Carbide Corp.*, No. 04-CV-8825, 2012 WL 2422757, at *16 (S.D.N.Y. June 26, 2012) (quoting *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 412 (S.D.N.Y. 1996)), *aff'd sub nom. Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96 (2d Cir. 2013). "A corporate parent's ownership interest in a subsidiary, standing alone, is insufficient to demonstrate the existence of an agency relationship." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1455, 1461–62 (2d Cir. 1995)). Instead, to establish a

parent's agency relationship with a subsidiary, traditional agency principles apply and there must be "facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent." *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) (citations omitted) (applying New York law).

Such a relationship may arise from an agent's "actual" or "apparent" authority. "Actual authority 'is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.'" *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (quoting *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996)). Such authority may be "bestowed upon an agent 'by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware.'" *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (quoting *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997)). Conversely, "[a]pparent authority arises from the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him.'" *Dinaco*, 346 F.3d at 69 (alterations in original) (quoting *Minskoff*, 98 F.3d at 708).

"Commonly, an outsider will not be privy to the details of what conversation or conduct took place between a principal and the agent." *Craig v. Sandals Resorts Int'l*, 69 F. Supp. 3d 322, 328 (E.D.N.Y. 2014) (quoting *Amusement Indus., Inc.*, 693 F. Supp. 2d at 344). As a result, "[t]o adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient

to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority." *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) (applying New York agency law), *aff'd sub nom. Skanga Energy & Marine Ltd. v. Petroleos de Venezuela S.A.*, 522 F. App'x 88 (2d Cir. 2013); *Amusement Indus., Inc.*, 693 F. Supp. 2d at 344 ("[C]ourts have recognized that to survive a motion to dismiss under 12(b)(6) on this issue, a plaintiff need only 'raise[] a sufficient inference that some sort of agency relationship existed between' the purported principal and agent." (quoting *Commercial Fin. Servs., Inc. v. Great Am. Ins. Co. of N.Y.*, 381 F. Supp. 2d 291, 302 (S.D.N.Y. 2005))).

Circumstantial evidence relevant to the establishing an agency relationship can take many forms. *Skanga Energy*, 522 F. App'x 88, 90 (considering the entities' shared use of a logo as a factor in assessing the existence of an agency relationship); *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 226 (S.D.N.Y. 2013) (alleging a parent's control of a subsidiary through the parent's intervention and direction of the subsidiary's response to a compliance issue); *STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 539–40 (E.D.N.Y. 2011) (considering the entities' use of a shared brand logo and email suffix in determining the existence of an agency relationship on a motion to dismiss); *Cromer Fin. Ltd. v. Berger*, No. 00-CV-2284, 2002 WL 826847, at *5 (S.D.N.Y. May 2, 2002) (considering marketing materials making representations to third parties as relevant to the allegations of actual authority); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95–96 (2d Cir. 2000) (affirming the finding of an agency relationship where, among other things, the subsidiaries "devoted one hundred percent of their time to the [parents'] business" and had the "sole business function" of "perform[ing] investor relations services on the [parents'] behalf" while the parents

11

"fully funded the [subsidiaries'] expenses"); *In re S. African Apartheid Litig.*, 633 F. Supp. 2d 117, 121 (S.D.N.Y. 2009) ("Circumstantial evidence of a principal-agent relationship includes the exclusive dedication of a subsidiary to assisting the parent company, payment of the subsidiary's expenses by the parent company, and requests for approval of the parent company for important decisions by the subsidiary.").

Here, like most outsiders who are not privy to arrangements between a parent corporation and its subsidiary, Plaintiff relies on circumstantial evidence in her attempt to allege the existence of an agency relationship between OFC and OLS. The Court finds that, crediting Plaintiff's allegations concerning the corporate structure of OFC and OLS, the commonalities between both entities, and the inferences that can be drawn from the MSP Agreement and the Consent Order, Plaintiff has pled facts that "raise[] a sufficient inference that some sort of agency relationship existed between" OFC and OLS that covered the conduct at issue in the SAC. *Amusement Indus., Inc.*, 693 F. Supp. 2d at 344.

In contrast to the original Complaint, the SAC alleges facts relevant to the structure of OFC and OLS and the commonalities between each entity. (SAC ¶¶ 17–21.) Specifically, the SAC alleges general facts about the connection between the parent, OFC, and its wholly owned subsidiary, OLS, including the entities' overlapping structure, revenue flow, and interaction with regulators. (*Id.* ¶¶ 15, 17–21.) As alleged in the SAC, 99% of OFC's revenues in 2012 were from loan servicing, and "OLS was OFC's only licensed mortgage servicer." (*Id.* ¶ 17.) The entities also overlapped in terms of their operation and management. (*Id.* ¶¶ 17–21.) Throughout the relevant time period, OFC and OLS shared senior executives, physical office space, an address and a telephone number. (*Id.* ¶¶ 18–21.) In addition, each entity's public-facing websites displayed the same logos and slogans, which were copyrighted by OFC, and

OFC's website included its own section welcoming visitors to "Ocwen Loan Servicing." (*Id.* ¶ 19.)

The MSP Agreement and the Consent Order buttress these indicia of control and are additional circumstantial evidence of the agency relationship between OFC and OLS, and the connection between that agency relationship and Plaintiff's claims. (*Id.* ¶¶ 23–24.) Pursuant to the MSP Agreement, which covers the relevant time period of the SAC, "Ocwen" — defined as OFC and OLS collectively — was required to undertake a wide array of measures related to the servicing of loans, communications with borrowers, the accuracy of loan documentation and the treatment of borrowers who were pursuing loan modifications. (MSP Agreement 1, 4, 14, 18.) Many of these subjects are directly relevant to the conduct underlying Plaintiff's claims. For example, the MSP Agreement mandated the implementation of "policies and procedures to ensure that borrowers' account information is accurate and complete." (*Id.* at 2.) In addition, "Ocwen" was prohibited from engaging in "dual tracking," the very conduct Plaintiff alleges she experienced when seeking to modify the terms of her mortgage. (*Id.* at 14.) Under the MSP Agreement, "Ocwen" had to "ensure that borrowers who [were] engaged in pursuing loan modifications or other loss mitigation [were] not referred to foreclosure," conduct that Plaintiff also complains of in the SAC. (*See* SAC ¶¶ 33–34, 83–94.) OFC, through its CEO Tom Faris, "as the parent company of [OLS]," was the sole signatory to the MSP Agreement and, "in the case of any portfolio serviced by a different Ocwen subsidiary or affiliate," committed OFC "to cause [the subsidiary or affiliate] to adhere to [the MSP Agreement]." (MSP Agreement 1.)

Although, on its face, the MSP Agreement does not expressly create or relate to an agency relationship between OFC and OLS, when read in light of Plaintiff's other allegations, an inference of such an agency relationship can be drawn. The SAC alleges, and OFC concedes,

13

that as a financial services holding company, OFC acted only "through its subsidiaries" in servicing loans. (SAC ¶¶ 14–15; *see also* OFC Mem. 1 ("Plaintiff acknowledges that OFC 'is a financial services holding company' that '*through its subsidiaries*, engages in the servicing and origination of mortgage loans . . . .'" (quoting SAC ¶ 14)).) As alleged in the SAC, the only OFC subsidiary engaged in loan servicing was OLS. (SAC ¶¶ 14–17.) Given OFC's inability to service loans on its own, it is plausible to infer from these facts that OFC necessarily conferred authority to its loan servicing subsidiary, OLS, to act as its agent in carrying out the obligations of the MSP Agreement and, further, that OFC controlled OLS to ensure its loan servicing activities complied with those obligations. While plausible standing alone, that inference becomes even more so when considered in light of the additional evidence alleged by Plaintiff.

As Judge Reyes found, Plaintiff correctly asserts that the Consent Order also provides support for her allegations of an agency relationship between OFC and OLS. (R&R 17–19.) By its terms, the Consent Order relates to the prior MSP Agreement and OFC's loan servicing obligations. (Consent Order 1–3; SAC ¶ 23.) The Consent Order addresses the "non-compliance with the [MSP] Agreement by Ocwen" — referring to OFC and OLS — in the servicing of borrowers' loans. (Consent Order 3.) This misconduct was observed by DFS at some point prior to the execution of the order. (*Id.*) Among other things, the Consent Order recounts "Ocwen's" continued practice of "dual tracking" borrowers by "pursuing foreclosure actions against certain borrowers who [were] seeking a loan modification," which, as the Consent Order notes, violated the MSP Agreement. (*Id.*) The Consent Order also recounts "Ocwen's" servicing of loans in a manner that violated state law, including the "fail[ure] to send borrowers a 90-day notice prior to commencing a foreclosure action as required [under New York law]." (*Id.* at 2.) Notably, these failures are similar to those Plaintiff alleged in the SAC,

and, given the timing of the Consent Order, can be construed as having occurred during the time period relevant to the claims in the SAC. (SAC ¶¶ 85–86, 93–94.)

In objecting to the R&R, OFC asserts that because execution of the Consent Order post-dates the conduct underlying the SAC, obligations imposed on OFC or carried out by OLS under the Consent Order provide no support for Plaintiff's agency arguments. (OFC Obj. 11.) However, this view misunderstands the relevance of the Consent Order. The Consent Order is *further* support for the inference that OFC exercised authority over OLS' loan servicing activities. Given OFC's alleged inability to service loans, its subsidiary, OLS, appears to be responsible for the ongoing loan servicing issues documented in the Consent Order, including the continued "dual tracking" of borrowers. That DFS was holding OFC, not OLS, accountable for those post-MSP Agreement loan servicing issues supports the inference that OFC exercised some authority over OLS' loan servicing activities sufficient to remediate the problems identified by DFS.

As Judge Reyes found, the circumstantial evidence presented by the MSP Agreement and Consent Order, on their own, supports an inference of an agency relationship between OFC and OLS. (R&R 18–19.) That inference is even stronger when the Court considers the MSP Agreement and Consent Order alongside the indicia of control alleged in the SAC, such as OFC and OLS' shared physical address, executive managers, telephone numbers, branding and internet presence. These allegations present precisely the type of circumstantial evidence available to an outsider like Plaintiff, who is not privy to the parent-subsidiary relationship between OFC and OLS. Taken together, the Court finds that the SAC's allegations "support a reasonable inference of actual authority." *Skanga Energy*, 875 F. Supp. 2d at 269.

The cases relied upon by OFC in its objections to the R&R are distinguishable. (OFC

Obj. 8–9 (first citing *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014); and then citing *Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010)).) In *Dumont*, the plaintiffs attempted to hold OFC liable for OLS' misconduct on indirect theories of liability including agency. *Dumont*, 2014 WL 815244, at *18–25. In a four sentence analysis, the district court found that the plaintiffs alleged no facts supporting an agency theory of liability and declined to find an agency relationship, stating that the Court could not "infer agency merely from the existence of a parent-subsidiary relationship." *Id.* at *23. Unlike *Dumont*, however, as discussed above, Plaintiff has alleged more than merely a "parent-subsidiary relationship" by pointing to facts that circumstantially support an inference that OLS acted as OFC's agent in the servicing of borrowers' loans.

As OFC highlights in its objections, the *Dumont* court considered and rejected the MSP Agreement and Consent Order in connection with the plaintiffs' veil-piercing theory of liability. *Id.* at *22. The Court agrees that those documents, on their own, would fail to establish "the inference of complete domination" required for piercing the corporate veil. However, as noted above, "[s]uing a parent corporation on an agency theory is quite different from attempting to pierce the corporate veil," *Sahu*, 2012 WL 2422757, at *16, and "[t]o adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority," *Skanga Energy*, 875 F. Supp. 2d at 269. Accordingly, for purposes of Plaintiff's agency theory — unlike *Dumont* where the court considered these documents in determining whether the plaintiff had alleged a veil piercing theory of liability — the Court has considered these agreements in detail in the context of Plaintiff's agency theory and the facts alleged in the SAC and finds them to be relevant circumstantial evidence of OFC's authority

16

over OLS.[5]

The Court finds that Plaintiff has sufficiently alleged the existence of an agency relationship between OFC and OLS, and a connection between that relationship and the conduct underlying the SAC to survive a motion to dismiss. Discovery may clarify the relationship between OFC and OLS, but at this stage, Plaintiff has satisfied her burden. *STMicroelectronics*, 775 F. Supp. 2d at 540 ("Although [the plaintiff's] agency theory may prove unfounded, questions as to the existence and scope of the agency are issues of fact and are not properly the basis of a motion to dismiss. The bones are enough for now; discovery may provide the meat." (internal quotation marks and citations omitted)).

### III. Conclusion

Having reviewed the unopposed portions of the R&R, and finding no clear error, the Court adopts Judge Reyes' unopposed recommendations. The Court (1) denies OLS' motion to dismiss Plaintiff's claims for promissory estoppel, (2) grants OLS' motion to dismiss Plaintiff's claims for breach of an implied covenant of good faith, (3) grants OLS' motion to dismiss Plaintiff's claims for breach of the loan modification agreement, and (4) grants OFC's motion to dismiss Plaintiff's veil piercing theory indirect liability. For the reasons set forth above, the

---

[5] OFC's reliance on *Spagnola v. Chubb*, 264 F.R.D. 76 (S.D.N.Y. 2010), is also unavailing. (OFC Obj. 8–9.) There, the district court rejected the plaintiffs' agency theory, where the plaintiffs relied on the corporate parent's signing of an agreement with regulators, which purportedly bound the parent's subsidiaries. *Spagnola*, 264 F.R.D. at 89–90. The plaintiffs in *Spagnola* argued that this agreement demonstrated the parent's "complete domination and control" of the subsidiaries. *Id.* at 90. However, the district court found the agreement insufficient to plead agency liability "in itself," because the plaintiffs failed to allege any facts as to the parent's manifestation of intent to grant authority to the subsidiaries as its agents. *Id.* Here, unlike *Spagnola*, Plaintiff's allegations regarding the MSP Agreement and OFC's inability to service loans, plausibly supports the inference that OFC conferred authority to OLS, its only loan servicing subsidiary, to carry out the loan servicing obligations imposed by the MSP Agreement.

17

Court rejects OFC's objections to the R&R and denies OFC's motion to dismiss Plaintiff's agency theory of indirect liability. The Court reserves decision as to Plaintiff's objection to Judge Reyes' recommendation that the Court dismiss Plaintiff's breach of contract claims that are based on the mortgage.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2016
 Brooklyn, New York