UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

DEBORAH HARTE, *on behalf of herself and all others similarly situated*,

                Plaintiff,

      v.

OCWEN FINANCIAL CORP. and OCWEN LOAN SERVICING, LLC,

                Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**

13-CV-5410 (MKB) (RER)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Deborah Harte commenced this action in New York state court on behalf of herself and a nationwide class of similarly situated homeowners, alleging that Defendants Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS") made misrepresentations to borrowers in violation of New York statutory and common law. (Compl. 1, annexed to Notice of Removal as Ex. A, Docket Entry No. 1.)[1] Currently before the Court is Plaintiff's motion for class certification and Defendants' motion for summary judgment, both of which were referred to Magistrate Judge Ramon E. Reyes, Jr. for a report and recommendation. (Order dated June 22, 2017.)

      By report and recommendation dated February 8, 2018, Judge Reyes recommended that the Court deny Defendants' motion for summary judgment as to Plaintiff's claim pursuant to

---

[1] Plaintiff subsequently twice amended the Complaint. (*See* Am. Compl., Docket Entry No. 54; Sec. Am. Compl. ("SAC"), Docket Entry No. 60.)

section 349 of New York's General Business Law ("GBL") for "dual tracking,"[2] and grant

Plaintiff's motion to certify a dual tracking class (the "R&R"). (R&R 20–23, Docket Entry No.

143.) Judge Reyes also recommended that the Court grant Defendants' motion as to Plaintiff's

GBL section 349 claim for failure to provide pre-foreclosure notice,[3] and as to Plaintiff's

promissory estoppel claim under New York state common law. (*Id.* at 14–20.) For the reasons

set forth below, the Court adopts the R&R as to Plaintiff's promissory estoppel claim, and as to

Plaintiff's section 349 claim for failure to provide pre-foreclosure notice. The Court reserves

decision on Defendants' motion for summary judgment as to Plaintiff's section 349 dual tracking

---

[2] Dual tracking refers to OLS' alleged practice of "pretending to process a solicited loan modification on one track but preparing foreclosure proceedings while the borrowers' applications for modification are pending – in order to accumulate penalty fees, back interest, and other foreclosure-related fees." (SAC ¶ 33.)

[3] The theory that Defendants are liable under section 349 for failure to provide pre-foreclosure notice has been described inconsistently as a separate section 349 "claim," (*see* Pl. Mem. in Supp. of Pl. Mot. for Class Certification ("Pl. Mem.") 10, Docket Entry No. 126; *see also* Pl. Mem. in Opp'n to Defs. Mot. for Summ. J. ("Pl. Opp'n") 2, annexed to Decl. of Daniella Quitt in Supp. of Mot. to Seal as Ex. 1, Docket Entry No. 137-2; Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 146), and as a "portion" of the currently pled section 349 claim based on OLS' "dual tracking" scheme, (Pl. Reply to Defs. Obj. ("Pl. Reply") 1, Docket Entry No. 153-2).
For purposes of simplicity and consistency with most of the parties' briefing and the R&R, and because the Court understands Plaintiff to be proceeding on the theory that Defendants' deceptiveness with regard to pre-foreclosure notice separately and independently constitutes a basis for section 349 liability, the Court will refer to this theory as a separate section 349 "claim" and address Judge Reyes' recommendation to "dismiss" this claim. (*See* Pl. Mem. 10 ("On this motion, two types of deception by Ocwen are at issue. The first is Ocwen's failure to serve the statutorily required 90-day notice prior to filing a foreclosure action. The second is Ocwen's practice of dual-tracking: purporting to aid borrowers to modify their mortgage loans, including, among other things, the repeated representation that it would not commence foreclosure proceedings during the pendency of a loan application, while simultaneously filing a foreclosure action against them." (alterations, internal citations and quotation marks omitted)); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194–95 (2d Cir. 2005) ("[W]hat is styled as one claim for violation of GBL § 349 is actually two: (1) a claim that Cablevision violated 47 U.S.C. § 543(d) and thereby violated GBL § 349, and (2) a claim that Cablevision violated PSL § 224–a(4) and thereby violated GBL § 349.").

claim, and Plaintiff's motion for class certification of this claim.

## I. Background

The Court assumes familiarity with the facts and procedural posture as discussed in its prior decisions in the case[4] and the R&R, and provides only a summary of the pertinent facts and procedural background.

### a. Factual background

The following facts are undisputed unless otherwise noted. On September 15, 2005, Plaintiff obtained a mortgage loan from the federal Mortgage & Investment Corporation in the amount of $420,000, and executed a mortgage on her Brooklyn, New York home as security for the loan. (Defs. Statement of Material Facts Pursuant to Local R. 56.1 ("Defs. 56.1") ¶¶ 32–33, Docket Entry No. 136-4; Pl. Resp. to Defs. 56.1 and Counterstatement of Material Facts ("Pl. 56.1") ¶¶ 32–33, Docket Entry No. 137-3.)

In late 2006 to early 2007, Plaintiff began experiencing difficulties making her mortgage payments. (Defs. 56.1 ¶ 35; Pl. 56.1 ¶ 35.) After taking initial steps to manage the debt,[5]

---

[4] *See Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014) ("*Harte I*"); *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 1275045 (E.D.N.Y. Mar. 31, 2016) ("*Harte II*"); *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 3647687 (E.D.N.Y. July 1, 2016) ("*Harte III*").

[5] Plaintiff entered into two separate forbearance agreements in 2006 and 2007, and executed four loan modification agreements between February 18, 2009 and January 14, 2011. (Defs. Statement of Material Facts Pursuant to Local R. 56.1 ("Defs. 56.1") ¶¶ 36, 38, Docket Entry No. 136-4.) Plaintiff asserts that OLS "did not enter [into the] forbearance agreements to 'assist' or 'help' [P]laintiff catch up on her payments," (Pl. Resp. to Defs. 56.1 and Counterstatement of Material Facts ("Pl. 56.1") ¶ 36, Docket Entry No. 137-3), because OLS "offers loan modifications for a variety of reasons, including 'the importance of loan resolution to its financial performance,'" (*id.* ¶ 71 (alterations and citation omitted)). However, Plaintiff does not dispute that she entered into these agreements with OLS.

Plaintiff received a letter from OLS[6] in October of 2011, offering to "work with [her] to identify a solution that will resolve [her] delinquent mortgage loan" and "presenting [her] with some of the ways [OLS] may be able to help."[7] (Pl. 56.1 ¶ 72; Defs. Resp. to Pl. 56.1 ("Defs. 56.1 Resp.") ¶ 72, annexed to Defs. Mot. to Seal as Ex. F, Docket Entry No. 136-6; Letter dated Oct. 21, 2011, annexed to Decl. of Robert I. Harwood in Opp'n to Defs. Mot. ("Harwood Opp'n Decl.") as Ex. 6, Docket Entry No. 137-4.)

By letter dated December 5, 2011, Plaintiff was notified by a law firm engaged by OLS that her mortgage loan had been referred for foreclosure. (Defs. 56.1 ¶ 44; Pl. 56.1 ¶ 44.) The letter states, among other things, that "[w]hile the foreclosure process has begun, you may still have foreclosure prevention alternatives available to you," and lists "forbearance, repayment, [and] modification" as options that may enable distressed borrowers to stay in their homes. (Letter dated Dec. 5, 2011, annexed to First Decl. of Brian M. Forbes ("First Forbes Decl.") as Ex. 11, Docket Entry No. 136-2.)

On December 28, 2011, Plaintiff submitted an initial application for a loan modification,

_____

[6] Several statements made in Plaintiff's Counterstatement of Material Facts do not distinguish between actions taken by OFC and OLS. (*See, e.g.*, Pl. 56.1 ¶ 72.) Accordingly, consistent with the Court's prior approach, the Court "reads all specific allegations concerning actual contact between Plaintiff and 'Ocwen,' 'Defendants' or the 'Company' to refer to OLS." *See Harte I*, 2014 WL 4677120, at *1 n.1.

[7] In its summary of the letters received by Plaintiff, the Court occasionally quotes language not included in the parties' respective 56.1 statements. However, as there is no dispute that Plaintiff received each of the letters summarized and quoted, the Court includes this information in its summary of the relevant facts. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 88 (S.D.N.Y. 2012) ("Where possible, the Court has relied on the undisputed facts in Defendant's 56.1 Statement; however, direct citations to the record have also been used where relevant facts were not included in either of the parties' Rule 56.1 submissions."); *see also Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374, 375–76 (S.D.N.Y. 2007) (finding that record evidence not cited in the defendants' 56.1 statement is "fairly considered part of the record on the motion and, once submitted, could be relied upon by either party or the court").

including certain supporting documentation. (Defs. 56.1 ¶ 45; Pl. 56.1 ¶ 45.) The first page of the application states that Plaintiff "must submit all the [requested] documentation," that failure to do so would result in her application not being reviewed, and that:

> [t]he review process may take up to [thirty] days after the receipt of the completed package. During this time, Ocwen will not delay or stop any collections or legal activity on your loan. Therefore, it is important to complete the package and fax/email it back to Ocwen as quickly as possible.

(Defs. 56.1 ¶ 46; Pl. 56.1 ¶ 46; *see also* Loan Modification App. at 3,[8] annexed to Forbes Decl. in Supp. of Defs. Opp'n to Pl. Mot. ("Forbes Opp'n Decl."), Docket Entry No. 121-10.) The parties dispute whether Plaintiff's application as initially submitted was complete. (*Compare* Defs. 56.1 ¶ 47 *with* Pl. 56.1 ¶ 47, 73–81.) Beginning with a letter dated January 2, 2012 and continuing through April 24, 2012, OLS sent Plaintiff multiple letters claiming that her application was incomplete and requesting additional supporting documents. (Defs. 56.1 ¶ 48.) Plaintiff does not dispute receiving such letters, but maintains that (1) she submitted all required documentation with her initial application, (Pl. 56.1 ¶ 48), (2) she nevertheless submitted the additional documents requested in OLS' subsequent letters, and (3) OLS' own records reflect that, in one instance, it "found" the documents it claims that Plaintiff failed to submit, (*id.* ¶¶ 76–81).

During this period, Plaintiff also received "at least [ten]" letters providing information about the loan modification process. (Defs. 56.1 ¶¶ 49–50, 54; Pl. 56.1 ¶¶ 49–50, 54.) In a section entitled "Frequently Asked Questions," the letters state: "[w]hile we consider your request [for a loan modification], we will not initiate a new foreclosure action and we will not move ahead with the foreclosure sale on an active foreclosure so long as we have received all

---

[8] Because the Loan Modification Application is not consecutively paginated, the Court refers to the page number assigned by the Electronic Case Filing ("ECF") System.

required documents and you have met the eligibility requirements." (Defs. 56.1 ¶ 50; Pl. 56.1 ¶ 50.) The letters further explain that "[i]f your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for HAMP.[9] However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation." (Defs. 56.1 ¶ 51; Pl. 56.1 ¶ 51.) The letters also state the following:

> **Important — Do not ignore foreclosure notices.** The HAMP evaluation and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices . . . or you may see steps being taken to proceed with a foreclosure sale on your home. While you will not lose your home during the HAMP evaluation, to protect you [sic] rights . . . you may need to respond to these foreclosure notices or take other actions.

(Defs. 56.1 ¶ 52; Pl. 56.1 ¶ 52.) Finally, the letters state:

> If you do not qualify for HAMP, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have [thirty] days to review the reason for non-approval and contact us to discuss any concerns you may have. During this [thirty]-day review period, we may continue with the pending foreclosure action, but **no foreclosure sale will be conducted and you will not lose your home**.

(Defs. 56.1 ¶ 53; Pl. 56.1 ¶ 53; *see also* Loan Modification Letters, annexed to Forbes Opp'n Decl. as Exs. 12–21, Docket Entry Nos. 121-12–21.) The parties dispute the extent to which Plaintiff reviewed these letters. (Defs. 56.1 ¶¶ 55–58; Pl. 56.1 ¶¶ 55–58, 82; Defs. 56.1 Resp. ¶ 82.)

Plaintiff received two additional letters from OLS, both dated April 24, 2012. (Pl. 56.1 ¶

---

[9] "The Home Affordable Application Program, known as HAMP, 'is a U.S. Department of the Treasury program codified within the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201–5261.'" *Harte I*, 2014 WL 4677120, at *3 (quoting *Jordan v. Chase Manhattan Bank*, No. 13-CV-9015, 2014 WL 3767010, at *7 (S.D.N.Y. July 31, 2014)). "In very general terms, HAMP is designed to lower the monthly mortgage payments of participating borrowers to an affordable level." *Id.* (quoting *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2014 WL 815244, at *1 (S.D.N.Y. Mar. 3, 2014)).

84; Defs. 56.1 Resp. ¶ 84.) The first letter states that Plaintiff was "not eligible for a modification under [HAMP]" and states:

> You have [thirty] calendar days from the date of this notice to contact Ocwen to discuss the reason for non-approval for a HAMP modification or to discuss alternative loss mitigation options that may be available to you. Your loan may be referred to foreclosure during this time, or any pending foreclosure action may continue. However, no foreclosure sale will be conducted and you will not lose your home during this [thirty]-day period . . . .

(Defs. 56.1 ¶¶ 61–62; Pl. 56.1 ¶¶ 61–62; Letter dated Apr. 24, 2012 annexed to Forbes Opp'n Decl. as Ex. 22, Docket Entry No. 121-22.) The second letter contained similar language. (Letter dated Apr. 24, 2012, annexed to Forbes Opp'n Decl. as Ex. 23, Docket Entry No. 121-23.) The second letter also repeated that Plaintiff was "not eligible" for a HAMP loan and noted that "[t]here were missing or incomplete documents in your application. Notification was sent over [thirty] days ago regarding this issue but there was no response or we did not receive all of the missing or incomplete documents." (*Id.*) Defendants contend that these letters reflect a denial of Plaintiff's loan modification application due to missing documents. (Defs. 56.1 ¶¶ 61–63.) Plaintiff disputes both the characterization of these letters as a "denial" of her pending application and the assertion the she failed to submit required documents. (Pl. 56.1 ¶¶ 61–63.) Plaintiff asserts that OLS sent her a letter dated April 30, 2012 requesting the documents it had purportedly not received, and that an OLS representative followed up with a telephone call on May 1, 2012. (Pl. 56.1 ¶¶ 85–86.) Defendant acknowledges that OLS' records reflect correspondence on those dates, but disputes "Plaintiff's characterization of the substance" of these communications. (Defs. 56.1 Resp. ¶¶ 85–86.)

On May 16, 2012, OLS filed a foreclosure action against Plaintiff. (Pl. 56.1 ¶ 87; Defs. 56.1 Resp. ¶ 87.) Plaintiff asserts that OLS did not notify her of the foreclosure action. (Pl. 56.1 ¶ 87.) Defendants acknowledge that a foreclosure action was filed against Plaintiff on this date,

but disputes "that Plaintiff's awareness of the foreclosure is material to the issues raised in Defendants' [m]otion for [s]ummary [j]udgment." (Defs. 56.1 Resp. ¶ 87.)

Plaintiff asserts that she spoke with an OLS representative on May 20, 2012, and that on May 22, 2012, she submitted documents that the representative requested in support of her loan modification application. (Pl. 56.1 ¶ 88.) Defendants again acknowledges that OLS' "log entries cited by Plaintiff" reflect that a call with an OLS representative took place on May 20, 2012, and agrees that Plaintiff submitted documents on or about May 22, 2012, but disputes "Plaintiff's characterization of the substance of the conversation" with the OLS representative, and disputes her characterization of the documents submitted. (Defs. 56.1 Resp. ¶ 88.) The parties agree that OLS sent Plaintiff additional letters dated May 24, 2012 and June 1, 2012, but dispute whether those letters reflect additional requests for purportedly missing documents to support Plaintiff's loan modification application. (*See* Pl. 56.1 ¶¶ 89, 91; Defs. 56.1 Resp. ¶¶ 89, 91.) There is no dispute that on May 24, 2012, OLS assessed Plaintiff three foreclosure fees of $600, $175 and $550, respectively. (Pl. 56.1 ¶ 90; Defs. 56.1 Resp. ¶ 90.)

OLS sent Plaintiff a letter dated July 8, 2012. (Letter dated July 8, 2012, annexed to Harwood Opp'n Decl. as Ex. 15, Docket Entry No. 137-10.) The header of the letter reads "Final Notice," and states that:

> It has been thirty (30) days since we sent you notification specifying outstanding conditions that have not allowed us to complete the review of your modification application. If the documents identified in **REQUIRED DOCUMENTS** are not received by **DUE DATE**, we will have no other option but to deny your application under the Making Home[] Affordable Modification Program. Please act quickly to take advantage of this opportunity to modify your mortgage loan.

(*Id.* at 2;[10] Pl. 56.1 ¶ 93; Defs. 56.1 Resp. ¶ 93.)  In the July 8, 2012 letter, OLS also requested

that Plaintiff submit certain additional documents by July 23, 2012, and that "[f]ailure to provide

these documents within the timeline will result in the denial of your modification application and

you will not be able to re-apply for the Making Home Affordable Modification."  (Letter dated

July 8, 2012 at 2.)

OLS then sent Plaintiff another letter, dated July 11, 2012.  (Letter dated July 11, 2012,

annexed to Harwood Opp'n Decl. as Ex. 16, Docket Entry No. 137-11.)  The header on the July

11, 2012 letter reads: "YOU COULD LOSE YOUR HOME.  PLEASE READ THE

FOLLOWING NOTICE CAREFULLY."  (*Id.*)  The July 11, 2012 letter further states:

> As of July 11, 2012, your home loan is 345 days in default.  Under
> New York state law, we are required to send you this notice to
> inform you that you are at risk of losing your home.  You can cure
> this default by making the payment of 32,116.04 dollars by
> 10/02/2012.

(*Id.* at 2; *see also* Defs. 56.1 Resp. ¶ 94; Pl. 56.1 ¶ 94.)

Plaintiff testified that around this time, she "realized that it appeared to [her] that there

was not going to be a resolution to the loan modification to help me save my home."  (Pl. 56.1 ¶

96.)  Plaintiff filed for Chapter 13 Bankruptcy in December of 2012.  (Pl. 56.1 ¶ 98.)  To date,

Defendants have not obtained a foreclosure judgment against Plaintiff, and Plaintiff still resides

at the property.  (Defs. 56.1 ¶ 67; Pl. 56.1 ¶ 67.)

### b.  Procedural background

Defendants removed this action from New York state court on September 30, 2013.

(Notice of Removal.)  Defendants thereafter moved to dismiss the Complaint on February 7,

2014, which the Court granted in part and denied in part.  *See Harte I*, 2014 WL 4677120 at *1.

---

[10]  Because the letter dated July 8, 2012 is not consecutively paginated, the Court refers to
the page number assigned by ECF.

Plaintiff subsequently twice amended the Complaint. (*See* Am. Compl., Docket Entry No. 54; Sec. Am. Compl. ("SAC"), Docket Entry No. 60.) In the SAC, Plaintiff asserts claims for breach of contract, promissory estoppel and violation of section 349. (SAC ¶¶ 123–50.)

By Memorandum and Order dated July 1, 2016, the Court dismissed Plaintiff's breach of contract claim. *Harte III*, 2016 WL 3647687.

Relevant to the present dispute, Plaintiff filed a letter on January 6, 2017,[11] indicating her intent to move for class certification. (Pl. Letter dated Jan. 6, 2017, Docket Entry No. 97.) The letter states, among other things, that Plaintiff planned to seek certification of the following class and subclasses:

> All New York homeowners with a residential mortgage serviced by Ocwen who, between August 14, 2007 and the present: (a) applied for a loan modification, were directed by an Ocwen representative to withhold payments while the application was pending, and then were penalized for doing so (the "Payments Subclass"); (b) against whom Ocwen commenced the foreclosure proceedings prior to service of a 90-day demand letter (the "90-day Demand Subclass"); or (c) against whom Ocwen pursued foreclosure while loan a [sic] modification application was pending (the "Dual-Tracking Subclass").

(*Id.* at 1.)

Defendants responded on January 13, 2017. (Defs. Letter dated Jan. 13, 2017, Docket Entry No. 98.) In their letter, Defendants asserted that class certification is improper as to all claims, and argued that:

> Plaintiff defines the 90-day Demand Subclass as consisting of borrowers as to whom OLS allegedly "commenced foreclosure proceedings prior to service of a 90-day demand letter." While Plaintiff had pled a breach of contract claim based on similar allegations, which claim was dismissed, a demand letter issue is not otherwise pled in her only remaining claims, [section] 349 and promissory estoppel. Absent a viable claim based on the alleged

---

[11] Plaintiff's letter is incorrectly dated January 6, 2016. (Pl. Letter dated Jan. 6, 2017, Docket Entry No. 97.)

> lack of a demand letter, Plaintiff cannot represent this class.

(*Id.* at 2 (internal citations omitted).)

Defendants reiterated their argument that Plaintiff did not plead a "[ninety]-day notice claim" in a pre-motion conference letter to the Court dated March 29, 2017, in anticipation of their motion for summary judgment. (Defs. Letter dated Mar. 29, 2017 at 1–2, Docket Entry No. 107.) Plaintiff responded by letter dated April 13, 2017, arguing principally that "[c]laims for violations of GBL [section] 349 based on Ocwen's practice of foreclosing without notice are alleged in the SAC." (Pl. Letter dated Apr. 13, 2017 at 2, Docket Entry No. 109.)

On May 23, 2017, after the close of discovery targeted toward Plaintiff's remaining individual claims and "class certification issues,"[12] Plaintiff moved for class certification. (Pl. Mot. for Class Cert. ("Pl. Mot."), Docket Entry No. 125; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 126; Decl. of Robert I. Harwood in Supp. of Pl. Mot. ("Harwood Decl."), Docket Entry No. 127.) Defendants moved for summary judgment on July 24, 2017. (Defs. Mot. for Summary J. ("Defs. Mot."), Docket Entry No. 133; First Forbes Decl., Docket Entry No. 134; Second Decl. of Brian M. Forbes ("Second Forbes Decl."), Docket Entry No. 135; Defs. 56.1; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 136-1.) While Plaintiff's pre-motion letter proposed three sub-classes of plaintiffs, her motion for class certification proposed the following two sub-classes:

> All New York homeowners with a residential mortgage serviced by Ocwen, against whom Ocwen filed a foreclosure between August 14, 2007 and the present: (a) without first serving the legally required 90-day notice or prior to expiration of the 90-day notice period; and/or (b) while purporting to consider the borrower for a loan modification.

---

[12] At a January 29, 2015 hearing before Judge Reyes, defense counsel described discovery as to "class certification issues" as "discovery related to whether a class should be certified . . . ." (Jan. 29, 2015 Hr'g Tr. 7:20–21, Docket Entry No. 80.)

(Pl. Mem. 11.)

After the Court's referral of these motions to Judge Reyes, and the issuance of the R&R, the parties filed objections and responses. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 146; Defs. Obj. to R&R ("Defs. Obj."), Docket Entry No. 148; Defs. Reply to Pl. Obj. ("Defs. Reply"), Docket Entry No. 151; Pl. Reply to Defs. Obj. ("Pl. Reply"), Docket Entry No. 153-2.)

### i.  The R&R

Judge Reyes recommended that the Court grant Defendants' motion for summary judgment as to Plaintiff's purported section 349 claim for failure to provide pre-foreclosure notice, and as to Plaintiff's promissory estoppel claim. (R&R 14–20.) Judge Reyes further recommended that the Court deny Defendants' motion as to Plaintiff's GBL section 349 dual tracking claim, and grant Plaintiff's motion to certify a dual tracking class. (*Id.* at 20–23.)

### 1.  Section 349 notice claim

With respect to Plaintiff's section 349 notice claim, Judge Reyes concluded that Plaintiff failed to adequately plead this claim in the SAC to provide Defendants with fair notice that she was asserting it. (R&R 14.) In their motion for summary judgment, Defendants argued that Plaintiff's January 6, 2017 letter to Judge Reyes, which indicated Plaintiff's intent to seek certification of a subclass of homeowners "against whom Ocwen commenced foreclosure proceedings prior to service of a [ninety] day demand letter," (Pl. Letter dated Jan. 6, 2017), was Plaintiff's first filing that alerted Defendants that she was pursuing such a claim, (Defs. Mem. 10). Judge Reyes agreed, finding that, notwithstanding the SAC's "passing references to Ocwen's failure to provide [Plaintiff] with pre-foreclosure notice," it does not contain a "short and plain statement" notifying Defendants of Plaintiff's allegation that this failure "was a deceptive act of which [Plaintiff] complained." (R&R 14.) Judge Reyes further recommended that Plaintiff "should not be permitted to file yet another amended complaint to replead such a

claim," because "[s]he has had ample opportunity to plead her claims properly, and should not be given another bite at the apple." (*Id.* at 15 n.6.)

Assuming nevertheless that Plaintiff had adequately pled the section 349 notice claim, Judge Reyes proceeded to address additional grounds upon which Plaintiff's section 349 notice claim should be dismissed. (*Id.* at 15–16.) Judge Reyes concluded that a section 349 claim based on failure to provide pre-foreclosure notice would fail even if adequately pled, because such a claim would contravene the Second Circuit's decisions in *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005), and *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001). (R&R 15.) Judge Reyes reasoned that these decisions "stand for the proposition that a plaintiff cannot maintain a GBL [section] 349 claim where the alleged deceptive act is solely a violation of a statute that does not provide for a private right of action." (*Id.* at 16.) Judge Reyes found that the statute relevant here, section 1304 of New York's Real Property Actions and Proceedings Law ("RPAPL"), requires a borrower to provide a homeowner with ninety-day notice before foreclosing on a mortgage, and while non-compliance with this statute may be used as an affirmative defense in a foreclosure proceeding, it does not give rise to a private right of action. (*Id.* at 15–16.) Judge Reyes concluded that Plaintiff therefore cannot proceed on the theory that "the failure to provide pre-foreclosure [notice is] in and of itself a deceptive act" under section 349, as doing so would "run afoul" of Second Circuit precedent.[13] (*Id.* at 15.)

Briefly addressing the statute of limitations, Judge Reyes recommended that, should the Court conclude that Plaintiff has in fact pled a viable section 349 notice claim, it should reject Defendants' argument that the statute of limitations has expired on such a claim. (*Id.* at 16 n.7.)

---

[13] For these reasons, Judge Reyes also recommended denying Plaintiff's motion to certify a class of homeowners to whom OLS failed to provide ninety-day notice before filing a foreclosure action. (R&R 44.)

Judge Reyes noted that Defendants state that the alleged injury occurred on May 16, 2012, and the SAC was filed on December 5, 2014, within the three-year limitations period for section 349 claims.  (*Id.*)

### 2.  Promissory estoppel claim

Judge Reyes also recommended dismissal of Plaintiff's promissory estoppel claim, concluding that Plaintiff has not met any of the three elements necessary to sustain this cause of action.  (R&R 16–20.)  First, Judge Reyes concluded that the letters Plaintiff received from OLS between January and April of 2012 did not, as Plaintiff argues, contain a "clear and unambiguous promise" that "while the loan modification applications were pending there would be no penalty for withholding loan payments, homes would not be foreclosed on, and applications would be considered once the necessary documentation was received by OLS."  (*Id.* at 17 (citing SAC ¶ 136).)  Judge Reyes found that the letters Plaintiff received were "contradictory at best and provide a significant amount of ambiguity when read in their entirety."  (*Id.* at 18.)  Second, with regard to the reliance element of the promissory estoppel analysis, Judge Reyes found that, based on her deposition testimony, Plaintiff "did not read all of the information provided in the loan modification letters and therefore cannot prove she relied on [any alleged] promises made in them."  (*Id.*)  Third, Judge Reyes concluded that while Plaintiff's bankruptcy may constitute injury for purposes of a promissory estoppel claim, Plaintiff has not "sufficiently established that the injury arose out of a reliance on Ocwen's clear and unambiguous promises."  (*Id.* at 20.)

### 3.  Section 349 dual tracking claim

Judge Reyes recommended that the Court deny Defendants' motion for summary judgment as to Plaintiff's section 349 dual tracking claim.  (R&R 20–23.)  Judge Reyes rejected Defendants' argument that the disclosures in the letters Plaintiff received were sufficiently clear such that "a reasonable consumer would not have understood the letters to provide a promise not

to advance the foreclosure process under her circumstances . . . or not to file a foreclosure action after denial of the application." (*Id.* at 21 (quoting Defs. Mem. 28).) Judge Reyes also found that Plaintiff has established a material issue of fact regarding whether she did in fact submit a complete loan modification application. (*Id.* at 21–23.)

Finally, considering reports generated in connection with a review of OLS' loan servicing practices, Judge Reyes found that Plaintiff has sufficiently established the requirements under Rule 23 of the Federal Rules of Civil Procedure for certifying a class of "New York homeowners with a residential mortgage serviced by Ocwen, against whom Ocwen filed a foreclosure between August 14, 2007 and the present . . . while purporting to consider the borrower for a loan modification."[14] (*Id.* at 24–61.)

## II. Discussion

### a. Standards of review

#### i. Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the

---

[14] Judge Reyes noted that while a class based solely on OLS' commencement of foreclosure proceedings prior to service of a ninety-day demand letter would contravene Second Circuit precedent, such homeowners could nevertheless be included in a dual tracking class because Plaintiff's dual tracking theory of liability implicates deceptive conduct beyond non-compliance with RPAPL section 1304. (R&R 44 n.22.)

record.  *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1

(E.D.N.Y. Nov. 24, 2015).  The clear error standard also applies when a party makes only

conclusory or general objections.  *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016)

(holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court"

(citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written

objections to the [magistrate judge's] proposed findings and recommendations." (emphasis

added)); *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring

the court to previously filed papers or arguments does not constitute an adequate objection under

. . . Fed. R. Civ. P. 72(b) . . . .").

### ii.  Summary judgment

Summary judgment is proper only when, construing the evidence in the light most

favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v.

Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230

(2d Cir. 2015).  The role of the court "is not to resolve disputed questions of fact but only to

determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of

Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d

537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50

(1986).  A genuine issue of fact exists when there is sufficient "evidence on which the jury

could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a

scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is

to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the

nonmoving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*,

221 F.3d 394, 398 (2d Cir. 2000).

### b.  Unopposed objections

No party objected to Judge Reyes' recommendation that the Court grant Defendants' motion for summary judgment as to Plaintiff's promissory estoppel claim under New York state law.  The Court has reviewed the unopposed portion of the R&R and, finding no clear error, the Court adopts this recommendation pursuant to 28 U.S.C. § 636(b)(1).  Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's promissory estoppel claim under New York state law.

### c.  Defendants' objections

Defendants object to Judge Reyes' recommendations that the Court deny its motion for summary judgment as to Plaintiff's dual tracking claim and grant Plaintiff's motion for class certification as to that claim.  (*See generally* Defs. Obj.)  Defendants argue that Plaintiff has failed to establish all three elements of her dual tracking claim, and that Judge Reyes erred in his class certification analysis.  (*Id.*)

### d.  Plaintiff's objections

Plaintiff objects to Judge Reyes' recommendation that the Court dismiss her section 349 notice claim.  (Pl. Obj.)  Plaintiff argues that the she has adequately "allege[d] that Ocwen did not serve plaintiff a pre-foreclosure notice until after it filed a foreclosure action."  (*Id.* at 5.) Plaintiff points to, among other things, paragraph ninety-four in the SAC, alleging that the notice Plaintiff received on July 11, 2012 informed her that "she was 345 days in default," which was "the first notice that [P]laintiff received from OLS alerting her that she was in default."  (*Id.* at 6.)  Plaintiff also cites to paragraph seven, describing how "Ocwen routinely foreclosed on borrowers without issuing notice."  (*Id.*)  Plaintiff further argues that any pleading deficiency

"can easily be cured" given the posture of the litigation and the lack of prejudice to Defendants, (*id.* at 8), who, given the references to the lack of pre-foreclosure notice reflected in the SAC, have "been on notice of this claim for quite some time," and therefore cannot "claim unfair surprise," (*id.* at 13).

Addressing the merits of her section 349 notice claim, Plaintiff asserts that the failure to provide notice was deceptive because "Ocwen repeatedly told borrowers that there would be pre-foreclosure notice, that pre-foreclosure notice was important, and that failure to act after receipt of pre-foreclosure notice could affect a borrower's rights." (*Id.* at 8.) Plaintiff argues that a "reasonable consumer would have reasonably believed that having failed to receive the notice that . . . no foreclosure was imminent and their home was safe for the moment." (*Id.*)

Addressing Judge Reyes' conclusion that a section 349 notice claim would be precluded by RPAPL section 1304, Plaintiff argues that her claim rests not solely on Defendants' failure to provide pre-foreclosure notice as required by New York state law, but also on OLS' "actions and communications with its borrowers," (*id.* at 10), namely, repeated representations that "it would provide notice," instructions for homeowners to "look for the notice because the notice was important," and advising them that they "may need to respond to these foreclosure notices or take other actions," (*id.* at 12).

### i.   Plaintiff has not adequately pled a section 349 notice claim

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "statement should be plain because the principal function of pleadings under the Federal Rules of Civil Procedure is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*,

861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).

The Court finds the allegations in the SAC inadequate to have alerted Defendants that Plaintiff sought to assert section 349 liability based on a failure to provide pre-foreclosure notice. While the SAC contains a section 349 claim based on Plaintiff's dual tracking theory, to which the general issue of notice is incidental,[15] the SAC contains no allegation indicating that OLS' failure to provide pre-foreclosure notice constitutes a deceptive practice under section 349. *See Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, 422 F. App'x 61, 62–63 (2d Cir. 2011) ("Rule 8(a)(2) provides that a complaint must include 'a short and plain statement of the claim showing that the pleader is entitled to relief.' The statement must be sufficient to give the defendants 'fair notice of what the plaintiff's claim is *and the grounds upon which it rests*.'" (emphasis added) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002))). As Judge Reyes observed, in the recital paragraph discussing the conduct forming the basis of Plaintiff's section 349 claim, OLS' failure to provide pre-foreclosure notice is conspicuously absent:

> OLS'[] conduct complained of herein consisted of deceptive acts and practices in the form of misrepresentations and omissions during conduct of [sic] business in New York in violation of N.Y. Gen. Bus. Law [section] 349(a), including: (a) soliciting borrowers to apply for loan modifications in order to avoid foreclosure; (b) representing that plaintiff and the members of the Class should

---

[15] The Court does not dispute that the lack of notice is *relevant* to Plaintiff's overall section 349 dual tracking theory, insofar as OLS' alleged scheme to string modification applicants along while collecting fees was aided by its failure to inform them that it was moving the foreclosure process forward. Similarly, a lack of notice is also relevant to Plaintiff's now-dismissed contract claim for breach of homeowners' mortgage notes "by foreclosing on plaintiff and the Class Members when they were not in default and/or had not received a notice of default." (SAC ¶ 127.) However, as noted *supra* n.3, the Court understands Plaintiff to now be arguing that the SAC adequately alleges that this lack of pre-foreclosure notice, coupled with affirmative representations to homeowners, constitutes a deceptive practice sufficient to establish a section 349 violation on its own, regardless of whether a homeowner was subject to OLS' alleged dual tracking scheme.

> withhold loan payments until their modification applications were
> decided; (c) stating that OLS would not foreclose on plaintiff and
> the members of the Class while their modification applications were
> being considered; and (d) stating that documents in support of
> modification applications had not been received when it reality OLS
> had received the documents.

(SAC ¶ 145.)  The allegations reflected in this recital paragraph all implicate OLS' alleged dual

tracking scheme; there is no mention of any failure to provide pre-foreclosure notice.  Plaintiff

objects that this recital was intended as a "non-exhaustive list of wrongdoing" as suggested by

her use of the word "including," which, she asserts "does not by definition exclude other types of

deceptive conduct" in the SAC.  (*Id.* at 7 & n.3.)  Plaintiff also contends that these "other types

of deceptive conduct" — and specifically, OLS' failure to provide pre-foreclosure notice — are

encompassed within the section 349 count by virtue of paragraph 142, which states that Plaintiff

"incorporates by reference and realleges each and every allegation" in the SAC.  (*Id.*)   But the

term "including" cannot stand as a placeholder for any conduct Plaintiff later wishes to rest her

claim on.  Moreover, while a statement that a particular count incorporates prior allegations may

assist a defendant in ascertaining the nature of the claim asserted, it does not in every case

provide a defendant with fair notice.  *See Bradley v. Wells Fargo Bank, N.A.*, 663 F. App'x 4, 6

(1st Cir. 2016) (rejecting the argument that the defendant had fair notice that conduct in the

complaint supported an intentional infliction of emotional distress claim because it was

"reiterate[d] and incorporate[d] by reference" within that count, because "one cannot read the

count . . . and say that the defendants (or the judge) should have been on notice that [the plaintiff]

meant that — in addition to the *specific* allegations in the count — *everything* he talked about in

the complaint intentionally inflicted emotional distress on him" (citing *United States* v. *Dunkel*,

927 F.2d 955, 956 (7th Cir. 1991))); *Judd Burstein, P.C. v. Long*, No. 15-CV-5295, 2017 WL

3535004, at *8 (S.D.N.Y. Aug. 16, 2017) (finding that the defendant did not have "fair notice of

what the claim is" notwithstanding the plaintiff's inclusion of this phrase in the relevant count);

*Corrado v. New York State Unified Court Sys.*, No. CV 2012-1748, 2014 WL 4626234, at *5

(E.D.N.Y. Sept. 15, 2014) (discussing a complaint that fails to "correlate specific factual

allegations to each of the various 'causes of action' or violations of a particular statute" such that

"the reader cannot distinguish which factual allegations correspond to the violation of which

statute . . .").

Plaintiff's objections also cite to several disparate references in the SAC to OLS' alleged

failure to provide pre-foreclosure notice. (Pl. Obj. 5–7.) These allegations were considered and

properly rejected by Judge Reyes, (R&R 14), as they, too, suffer from the same fatal defect: they

contain no indication that they form the basis of section 349 liability, *see Mohammad*, 422 F.

App'x at 62–63; *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (affirming

district court's refusal to consider at summary judgment phase an additional, inadequately pled

negligence claim based on different conduct, because, notwithstanding the reference to such

conduct in the plaintiff's interrogatory responses, he did not clearly indicate that it constituted

negligence).

While the SAC cannot fairly be read to include a lack of pre-foreclosure notice as a

"deceptive act" forming the basis of a section 349 violation, Plaintiff nevertheless advances this

theory in her motion for class certification. Plaintiff asserts that:

> *two* types of deception by Ocwen are at issue. The first is Ocwen's
> failure to serve the statutorily required [ninety]-day notice prior to
> filing a foreclosure action. The second is Ocwen's practice of dual-
> tracking: purporting to aid borrowers to modify their mortgage
> loans, including, among other things, the repeated representation
> that it would not commence foreclosure proceedings during the
> pendency of a loan application, while simultaneously filing a
> foreclosure action against them.

(Pl. Mem. 10) (emphasis added) (alteration, internal citation, and internal quotation marks

omitted).)  Having framed the lack of notice as a deceptive practice on its own, Plaintiff proceeds to propose not only a sub-class of homeowners against whom Defendants filed a foreclosure action "while purporting to consider the borrower for a loan modification," a class definition falling squarely within her dual tracking theory, but a separate sub-class of homeowners defined by the commencement of a foreclosure action against them "without first serving the legally required [ninety]-day notice or prior to expiration of the [ninety]-day notice period."  (*Id.* at 11.)  However, as noted above, the SAC does not reflect a standalone theory of liability for the failure to provide pre-foreclosure notice, and Plaintiff may not, in effect, amend her pleadings without requesting leave from the Court.  *See Feng v. Soy Sauce LLC*, No. 15-CV-3058, 2016 WL 1070813, at *3 (E.D.N.Y. Mar. 14, 2016) ("Plaintiff cannot raise a new claim through a motion [for conditional certification]"); *see also Bernadotte v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-965, 2016 WL 792399, at *6 (E.D.N.Y. Feb. 26, 2016) ("[B]ecause Plaintiff did not assert a failure to accommodate claim in the SAC, she may not raise this new claim in opposing summary judgment." (citing *McCoy v. Morningside at Home*, 601 F. App'x 57, 58 (2d Cir. 2015))).

In her opposition to Defendants' motion for summary judgment and her objections to the R&R, Plaintiff attempts to further recast the allegations in the SAC as asserting a section 349 claim based on pre-foreclosure notice.  Responding to Defendants' argument in their motion for summary judgment that Plaintiff's section 349 notice claim — as framed in her pre-motion class certification letter — is precluded under Second Circuit law, Plaintiff argues that:

> [i]t is not simply that Ocwen did not follow the applicable regulations, but that Ocwen itself referred to notice.  Each of these letters told [P]laintiff that if a foreclosure action was filed against her she would receive notices, warned her, "**Do not ignore any foreclosure notices,**" and told her that "to protect your rights under applicable foreclosure law, *you may need to respond to these*

*foreclosure notices or take other actions*.

(Pl. Mem. in Opp'n to Defs. Mot. ("Pl. Opp'n") 12, annexed to Decl. of Daniella Quitt in Supp.

of Mot. to Seal as Ex. 1, Docket Entry No. 137-2).[16]  Plaintiff also argues that "[a] reasonable

borrower in New York would expect Ocwen to follow the applicable law and provide notice, and

would reasonably believe that no foreclosure was imminent in the absence of that notice."[17]  (*Id.*)

---

[16]  Notwithstanding Plaintiff's new theory, her briefing is inconsistent in describing whether her claim is based solely on OLS' failure to provide pre-foreclosure notice, or also on other conduct she claims made such failure deceptive.  (*Compare* Pl. Mem. 2 ("Filing an action before issuing a foreclosure notice precludes borrowers from pursuing possible loss mitigation options, and *is itself* deceptive conduct." (emphasis added)) *with id.* at 2–3 (arguing that OLS' conduct was deceptive because its "own letters repeatedly warned plaintiff (in bold font) to be on the lookout for foreclosure notices, and that to protect her legal rights she would need to respond to any such notices" and that "[t]he failure to provide notice *in this situation* would deceive a reasonable consumer, just as it deceived plaintiff." (emphasis added)).)

[17]  The Court does not understand Defendants to argue that Plaintiff's section 349 theory of liability based on pre-foreclosure notice, as articulated in her opposition brief and objections to the R&R, would be precluded under Second Circuit law.  (*Compare* Defs. Reply in Supp. of Defs. Mot. ("Defs. Reply Mem.") 7–11, Docket Entry No. 136-5 (arguing that "Plaintiff's claim . . . based on OLS'[] purported failure to send her a [ninety]-day pre-foreclosure notice as required by RPAPL § 1304," is precluded)); *with id.* at 11–18 (arguing against the *merits* of Plaintiff's current theory and arguing that amendment of the SAC to plead this theory should not be permitted).)  However, given the vigor with which the parties disputed in their briefing before Judge Reyes both the scope of the Second Circuit's section 349 preclusion cases and their applicability to Plaintiff's section 349 notice claim, the Court will briefly address it here.
Summarizing its jurisprudence on this issue, the Second Circuit has recently explained:
> a GBL claim is viable where the plaintiff makes a free-standing claim of deceptiveness under GBL [section] 349 that happens to overlap with a possible claim under another statute that is not independently actionable, but fails where the violation of the other statute by conduct that is not inherently deceptive is claimed to constitute a deceptive practice that serves as the basis for the GBL [section] 349 claim.

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (first citing *Broder*, 418 F.3d at 200; and then citing *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 173 (2012)).  Plaintiff argues that she asserts a freestanding claim of deceptiveness that is not barred, because "[i]t is not merely the failure to provide the statutory notice that gives rise to the GBL violation but Ocwen's actions and communications with its borrowers."  (Pl. Obj. 10.)  This argument stands in contrast to Plaintiff's request to certify a subclass defined solely by OLS' non-compliance with the ninety-day demand requirement.  (Pl. Mem. 11.)  Moreover, while the

Plaintiff repeats this argument in her objections to the R&R, arguing that it is OLS' "actions and communications with its borrowers," (Pl. Obj. 10), that give rise to section 349 liability for failure to provide pre-foreclosure notice:

> [t]he failure to provide notice was a deceptive act under GBL [section] 349, regardless of the [RPAPL] statutory requirement. Ocwen repeatedly told borrowers that there would be pre-foreclosure notice, that pre-foreclosure notice was important, and that failure to act after receipt of pre-foreclosure notice could affect a borrower's rights. As evidenced by the notices themselves, there were actions that the borrowers had to take in response to the notice or risk losing their home. A reasonable consumer would have reasonably believed that having failed to receive the notice that that [sic] no foreclosure was imminent and their home was safe for the moment.

(*Id.* at 8.)

However, the notice-related "actions and communications" that Plaintiff now argues form the basis of Defendants' section 349 liability are not included in the SAC. First, the telephone conversations referenced in the SAC focus on statements OLS representatives made to Plaintiff that she should not make loan payments during the application period; these allegations do not refer to any representations about pre-foreclosure notice that allegedly gave Plaintiff a false impression. (*See, e.g.,* SAC ¶¶ 61, 68, 70.) Only one allegation describing a telephone conversation with an OLS representative makes reference to pre-foreclosure notice, but this allegation — that the representative "did not mention to [P]laintiff that a foreclosure proceeding had been commenced or that [P]laintiff was in default," (*id.* ¶ 87) — does not support Plaintiff's theory that it was OLS' *repeated references to and affirmative representations regarding* pre-foreclosure notice that deceived her into a false sense of assurance. Second, Plaintiff discusses

---

Court agrees that the theory Plaintiff asserts in her opposition to Defendants' motion and in her objections articulates a freestanding section 349 claim, as explained *infra*, Plaintiff did not plead this claim in the SAC.

in the SAC each of the letters she received from OLS throughout the loan modification application process, but tellingly, none of these allegations make any mention of the purportedly deceptive language now quoted in Plaintiff's objections and opposition to Defendants' motion. Nor does Plaintiff generally allege in the SAC that these communications contained references to notices of foreclosure that — coupled with the *lack* of notice she received — gave her a false sense of security that "no foreclosure was imminent and their home was safe for the moment." (Pl. Obj. 8.)

Because Plaintiff has not adequately pled that Defendants' lack of pre-foreclosure notice is a deceptive act upon which her section 349 claim rests, the Court adopts Judge Reyes' recommendation and grants Defendants' motion for summary judgment as to this claim.

### ii. Leave to amend

The Court considers whether granting Plaintiff leave to amend the SAC to assert the section 349 notice claim is warranted. Judge Reyes recommended that Plaintiff "should not be permitted to file yet another amended complaint" to replead her section 349 notice claim, because "[s]he has had ample opportunity to plead her claims properly, and should not be given another bite at the apple." (R&R at 15 n.6.) Defendants urge the Court to adopt this view. (Defs. Reply in Supp. of Defs. Mot. ("Defs. Reply Mem.") 18, Docket Entry No. 136-5.) For the reasons set forth below, the Court concludes that Plaintiff's section 349 notice claim would be time-barred, and therefore denies leave to amend on this basis.

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)

(citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman*, 371 U.S. 178, 182 (1962)).

If a proposed claim would be time-barred under the applicable limitations period, amendment of the complaint is futile. *See Bryant v. Am. Fed'n of Musicians of the U.S. & Canada*, 666 F. App'x 14, 17 (2d Cir. 2016); *see also Escoffier v. City of New York*, No. 13-CV-3918, 2017 WL 65322, at *3 (S.D.N.Y. Jan. 4, 2017) ("An amendment may also be futile if 'the claims the plaintiff [seeks] to add would be barred by the applicable statute of limitations.'" (quoting *Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041, 2015 WL 5052551, at *3 (S.D.N.Y. Aug. 27, 2015))).

Section 349 claims are governed by a three-year statute of limitations. *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 789 (2012); *see also Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012). This claim accrues when a plaintiff "has been injured by a deceptive act or practice violating section 349." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001) (citing cases); *see also Escano v. Freemont Inv. & Loan*, No. 13-CV-1575, 2013 WL 6388448, at *4 (S.D.N.Y. Dec. 6, 2013) (quoting *Morson v. Kreindler & Kreindler, LLP*, 814 F. Supp. 2d 220, 228 (E.D.N.Y. 2011)).

Here, Plaintiff's section 349 notice claim is time-barred. Plaintiff's cause of action accrued in May of 2012, at the point of commencement of the foreclosure action, when she was injured by the alleged deceptive representations that led her to believe that, having received no notice, no foreclosure was imminent. *See Gaidon*, 96 N.Y.2d at 210. The SAC was filed on December 5, 2014, within the three-year limitations period. However, as discussed above, Plaintiff did not plead in the SAC a section 349 claim based on this theory so as to give Defendants notice she was asserting it. The filing of the SAC therefore cannot toll the limitations period for Plaintiff's section 349 claim based on a failure to provide pre-foreclosure notice.[18] *See Muwakkil v. Hoke*, 107 F.3d 3, 1997 WL 76871, at *3 (2d Cir. Feb. 21, 1997) (unpublished table decision) (holding that a *pro se* plaintiff's letter that contained "no claim sufficient to satisfy Rule 8(a)" did not "constitute[] a pleading sufficient to toll the statute of limitations"); *cf. Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 69 (E.D.N.Y. 2015) ("In general, 'the date of the filing of the motion to amend is the date the action was commenced for statute of limitations purposes *since the defendant is on notice of the new claims* as of the filing of the motion.'" (alteration omitted) (emphasis added) (quoting *Lekic v. 222 E. 8th St. LLC*, No. 11-CV-1242, 2012 WL 4447625, at *4 (E.D.N.Y. Sept. 25, 2012))). Defendants were not on notice of the new claim until Plaintiff filed the pre-motion letter dated January 6, 2017, more than three years after Plaintiff's claim accrued. Plaintiff's new section 349 claim is therefore barred unless

---

[18] The Court therefore respectfully disagrees with Judge Reyes' conclusion that Plaintiff's notice claim was tolled by the filing of the SAC. *See Reza v. Khatun*, No. 09-CV-233, 2013 WL 596600, at *4 (E.D.N.Y. Feb. 15, 2013); *see also United States v. Gengo*, 808 F.2d 1, 3 (2d Cir. 1986) ("[N]otice to defendants is at the core of the limitations doctrine.") Moreover, Plaintiff appears to concede that her claim is barred on its face, arguing that "[i]f the Court were to hold that the claim is not pled in the SAC, [P]laintiff would move to amend to provide more specific allegations; as all relevant facts are alleged in the SAC, the amendment would *relate back* to the filing of this action." (emphasis added) (Pl. Opp'n 4.)

it relates back to a timely filing. Accordingly, the Court considers whether Plaintiff's section 349 claim for failure to provide pre-foreclosure notice relates back to the filing of the SAC.[19] Because the statute of limitations for section 349 claims arises under state law, pursuant to the Federal Rules and Second Circuit precedent, the Court will "examine the 'controlling body of limitations law,' and apply state law if it provides 'a more forgiving principle of relation back than the one provided' by Rule 15(c)." *Strada v. City of New York*, No. 11-CV-5735, 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) (quoting *Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013)); *see also Desir v. Austin*, No. 13-CV-912, 2016 WL 1700386, at *3 (E.D.N.Y. Apr. 27, 2016) ("Under Fed. R. Civ. P. 15(c)(1)(A), if the applicable statute of limitations is determined by state law . . . courts should assess both the state and federal relation-back doctrines and apply whichever law is more generous." (alteration and internal quotation marks omitted) (collecting cases)).

---

[19] Defendants argue in their reply brief in support of their motion for summary judgment that Plaintiff "waived any challenge to the statute-of-limitations argument by failing to address it in her opposition," because "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (Defs. Reply Mem. 16 (citing *Dunkin' Donuts Franchised Rests. LLC v. Tim & Tab Donuts, Inc.*, No. 07-CV-3662, 2009 WL 2997382, at *2 (E.D.N.Y. Sept. 15, 2009).) However, this would not preclude the Court from addressing the issue, because determinations of waiver and abandonment are within the Court's discretion. *See Dunkin' Donuts Franchised Rests. LLC*, 2009 WL 2997382, at *2 ("Federal courts *may* deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (emphasis added)). Moreover, Plaintiff has in fact preserved this issue — albeit barely — by arguing in a footnote in her opposition to Defendants' motion that her claim relates back to the filing of this action. (*See supra* n.18); *see also Marsh-Godreau v. Suny Coll. at Potsdam*, No. 15-CV-0437, 2016 WL 1049004, at *4 (N.D.N.Y. Mar. 11, 2016) ("Defendant argues that the Court should not *sua sponte* analyze whether the relation-back doctrine applies when Plaintiff has not briefed the issue. However, because Plaintiff has otherwise argued that her claims are timely under the doctrine, the Court will exercise its discretion and consider whether the doctrine applies . . . ." (internal citations omitted)).

### 1. Relation back under federal law

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Rule 15(c)(1)(B) states that "[a]n amendment to a pleading relates back to the date of the original pleading when: the amendment asserts a claim or defense that arose out of the conduct[,] transactions, or occurrence set out — or attempted to be set out — in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 23 (2d Cir. 2016) (quoting *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006), *as amended* (Oct. 3, 2006)). "Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" *Slayton*, 460 F.3d at 228 (quoting *Stevelman*, 174 F.3d at 86 (internal quotations and citation omitted).

Here, Plaintiff's section 349 notice claim does not relate back to a timely-filed pleading. As discussed above, while the SAC contains references to OLS' failure to provide pre-foreclosure notice, Plaintiff's theory "is not simply that Ocwen did not follow the applicable regulations" that require pre-foreclosure notice, "but that Ocwen itself referred to notice" in its representations to homeowners, making this failure deceptive. (Pl. Opp'n 12; *see also* Pl. Obj. 1–2 ("Ocwen's failure to provide pre-foreclosure notice *after telling borrowers to expect it* was deceptive." (emphasis added).) However, despite detailed allegations regarding contact with OLS by letter and telephone, no indication of any such representation appears in the SAC.

Plaintiff's section 349 claim, as now articulated, therefore relies on new operative facts that cannot fairly be traced back to her pleadings.[20] *See Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *4 (S.D.N.Y. Oct. 19, 2017) ("An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged." (quoting *Jewell v. Capital Cities/ABC, Inc.*, No. 97-CV-5617, 1998 WL 702286, at *2 (S.D.N.Y. Oct. 7, 1998)); *Naughright v. Robbins*, No. 10-CV-8451, 2014 WL 5315007, at *6 (S.D.N.Y. Oct. 17, 2014) (finding that new claims did not relate back because "the conduct giving rise" to such claims "was not mentioned in the FAC or the initial complaint" and the claims "require[d] a distinct set of new factual allegations").

In concluding that Plaintiff's section 349 notice claim does not relate back and is thus barred, the Court does not suggest that new facts or legal theories may never relate back to a timely pleading. As the Second Circuit has made clear, "[p]rovided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 116 (2d Cir. 1997) (first citing *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 125 (2d Cir. 1994); and then citing *Villante v. Dep't of Corrections of the City of New York*, 786 F.2d 516, 520 (2d Cir. 1986)). Moreover, while — if framed at a higher level of generality — Plaintiff's section 349 notice claim appears to involve the same "conduct,

---

[20] Relatedly, Plaintiff's allegations are not subsumed in any of her claims pled in the SAC, unlike in *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006), where the Second Circuit noted that "an allegation of accounts receivable manipulation" will relate back to "an initial complaint [that] alleges a 'basic scheme' of defrauding investors by misrepresenting earnings and profitability," because the new allegation is a "natural offshoot" of that scheme. *Slayton*, 460 F.3d at 228 (citation omitted).

transaction or occurrence" as her section 349 dual tracking claim (i.e., Defendants' alleged

misrepresentations to homeowners), the "central inquiry" of the Rule 15 analysis is whether

Defendants had adequate notice of the "general fact situation" forming the basis of Plaintiff's

newly asserted claim. *Slayton v. Am. Exp. Co.*, 460 F.3d at 228. On the facts of this case, where

the SAC does not generally allege deception of the kind Plaintiff now complains of, such that the

new allegations could be said to "amplif[y]" the facts alleged in the original pleading, or make

them "more definite and precise," *Slayton*, 460 F.3d at 228, and where the SAC otherwise

contains no hint of a key factual ingredient at the heart of Plaintiff's new theory, the Court

cannot conclude that Defendants were on notice of the facts giving rise to a separate cause of

action under section 349, *see Hirsch v. Suffolk Cty.*, No. 08-CV-2660, 2015 WL 1275461, at *8

(E.D.N.Y. Mar. 18, 2015) ("[W]here the new claims arise from conduct that is separate from yet

related to the conduct alleged in the earlier pleading, the new claims will not relate back." (citing

cases)), *aff'd sub nom.* 684 F. App'x 53 (2d Cir. 2017); *In re Noah Educ. Holdings, Ltd. Sec.*

*Litig.*, No. 08-CV-9203, 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010) (rejecting in the

securities law context the argument that "allegations are sufficiently related for purposes of Rule

15(c) because both complain of statements made or omitted in the same Registration Statement

and Prospectus," because the new allegations concerned different materially misleading

statements that did not "relate to the same or similar conduct"); *cf. Emilio v. Sprint Spectrum*

*L.P.*, No. 11-CV-3041, 2015 WL 5052551, at *3 (S.D.N.Y. Aug. 27, 2015) (finding that new

allegations that "fleshed out" prior allegations related back); *S.A.R.L. Galerie Enrico Navarra v.*

*Marlborough Gallery, Inc.*, No. 10-CV-7547, 2013 WL 1234937, at *4 (S.D.N.Y. Mar. 26,

2013) (finding that tortious interference of contract claim related back where prior pleading

"discussed the alleged acts of interference that form the basis for the amended claims" and

therefore "only amplifie[d] the general fact situation asserted in the original complaint" (citations and internal quotation marks omitted)).

## 2. Relation back under state law

Under New York law, a claim asserted in an amended pleading relates back "unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.Y.C.P.L.R. § 203. "The 'linchpin' of the relation back doctrine is notice to the defendant within the applicable limitations period." *Strada*, 2014 WL 3490306, at *6 (first quoting *Kirk ex rel. Kirk v. Univ. OB–GYN Assocs., Inc.*, 960 N.Y.S.2d 793, 795 (2013); and then citing *Stevens v. Winthrop S. Nassau Univ. Health Sys., Inc.*, 932 N.Y.S.2d 514, 516 (App. Div. 2011)); *see also Pendleton v. City of New York*, 843 N.Y.S.2d 648, 652 (App. Div. 2007) ("The sine qua non of the relation-back doctrine is notice. Where the allegations of the original complaint gave the defendants notice of the facts and occurrences giving rise to the new cause of action, the new cause of action may be asserted. However, where the original allegations did not provide the defendants notice of the need to defend against the allegations of the amended complaint, the doctrine is unavailable." (citations omitted)).

The Court finds that, given New York state courts' emphasis on notice and whether the new allegations are a "mere expansion" of the original allegations, *see, e.g., Alharezi v. Sharma*, 758 N.Y.S.2d 48, 49 (App. Div. 2003); *Aug. Bohl Contracting Co. v. L.A. Swyer Co.*, 903 N.Y.S.2d 793, 795 (App. Div. 2010), state law does not provide a basis to find that Plaintiff's new claim relates back to the SAC.[21] *See Lang-Salgado v. Mount Sinai Med. Ctr., Inc.*, 69

---

[21] Federal courts of appeal and district courts have held that plaintiffs may relate new claims back to previously-filed complaints that have since been superseded by amendment.

N.Y.S.3d 292, 293 (N.Y. App. Div. 2018) ("[T]he relation back doctrine is inapplicable because

the facts alleged in the original complaint failed to give notice of the facts necessary to support

---

*F.D.I.C. v. Jackson*, 133 F.3d 694, 702 (9th Cir. 1998) ("[T]his Circuit has held that the filing date of an original complaint remains operative for relation-back purposes even where otherwise superseded by amendments." (citing cases)); *Lee v. Mission Chevrolet, Ltd.*, No. 16-CV-00034, 2017 WL 4784368, at *5 (W.D. Tex. Oct. 23, 2017). The Second Circuit, while not expressly addressing the question, has similarly permitted plaintiffs to do so, as have district courts within this circuit. *See W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 70 (2d Cir. 2013) (holding that defendant has notice of claim asserted in second amended complaint and that "the claim thus relates back to the filing of the *original complaint*" (emphasis added)); *see also Leber v. Citigroup 401(K) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 19 (S.D.N.Y. 2015) ("Whether this Court compares the current allegations to the operative pleading — which contains no reference to the SVF — or the original complaint — which contains at most a peripheral reference to the SVF — it is clear that proposed Count Five alleges a new claim "based on an 'entirely distinct set' of factual allegations." (quoting *Slayton,* 460 F.3d at 228)); *cf. J.S. v. Killian*, No. 11-CV-103, 2015 WL 4475358, at *12 (S.D.N.Y. July 22, 2015) (finding that allegations in a "third amended complaint" relate back to those in a "first amended complaint"), *on reconsideration, sub nom. J.S. v. Swaha*, No. 11-CV-103, 2015 WL 10786859 (S.D.N.Y. Sept. 11, 2015).

Nevertheless, considering the allegations in the Complaint and Amended Complaint, the Court finds that this would not alter its analysis, because Plaintiff's new allegations do not relate back to those pleadings. First, like the Second Amended Complaint, the Complaint and Amended Complaint contain specific, and quoted, representations made to Plaintiff during the course of the loan modification application period. However, like the Second Amended Complaint, these allegations concern OLS' dual tracking scheme, namely, its repeated requests for documents from applicants, (Compl. ¶¶ 26, 27, 29, 34, 35, 37, 38, 45, 48, 51, 52; *see also* Am. Compl. ¶¶ 55, 57. 59, 60, 65, 66, 68, 69, 81, 85, 89), as well as its representations that homeowners should not make payments on their mortgage, would not be penalized for this, and that OLS would not initiate a foreclosure action while a loan modification application is pending, (Compl. ¶¶ 25, 30, 32, 33; Am. Compl. ¶¶ 54, 61, 63, 64). The pleadings makes no reference to the representations that Plaintiff now claims made the failure to provide pre-foreclosure notice deceptive. Nor does Plaintiff make any general allegations about OLS' representations to her regarding notice.

Second, the Complaint and Amended Complaint contain allegations similar to the Second Amended Complaint regarding OLS' failure to provide pre-foreclosure notice, including the allegation that OLS "commenced foreclosure proceedings without sufficient notice against borrowers with pending modification applications, even though it represented in writing that it would not do so." (*See* Compl. ¶ 4; Am. Compl. ¶ 14.) However, like the allegations noted above, these allegations more fairly implicate Plaintiff's dual tracking theory. Moreover, Plaintiff's section 349 notice theory, as the Court understands it, does not allege that OLS categorically represented that it would not initiate foreclosure proceedings, but that OLS' constant warnings about notice led her to believe that "if a foreclosure action was filed against her[,] she would receive notice[]." (Pl. Opp'n 12.)

the amended pleading." (citing cases)); *cf. Best v. Bell*, No. 13-CV-0163, 2014 WL 1316773, at *10 (S.D.N.Y. Mar. 28, 2014) (finding that for both Rule 15 and section 203, "[t]he driving principle behind both of these rules is that a defendant should not be able to invoke the statute of limitations if he was already on notice of the events giving rise to the plaintiff's claim during the limitations period" (citing *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983))); *Pendleton*, 843 N.Y.S.2d at 652–53 (App. Div. 2007) (finding that allegations that "the plaintiff's rights were violated by numerous specific policies or customs of the municipal defendants" were a "mere expansion of" and thus related back to allegations "that the municipal defendants failed to properly train police on 'appropriate rules applicable to the duties, activities and behaviors' of police employees" (citing *Krioutchkova v. Gaad Realty Corp.*, 814 N.Y.S.2d 171 (App. Div. 2006))).

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's promissory estoppel claim, as well as Plaintiff's section 349 claim based on a failure to provide pre-foreclosure notice. The Court reserves decision as to Defendants' motion for summary judgment as to Plaintiff's section 349 dual tracking claim, and Plaintiff's motion for class certification of this claim.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 30, 2018
      Brooklyn, New York