UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

DEBORAH HARTE, *on behalf of herself and all
others similarly situated*,

                             Plaintiff,

                            v.

OCWEN FINANCIAL CORP. and OCWEN LOAN
SERVICING, LLC,

                             Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
13-CV-5410 (MKB) (RER)

MARGO K. BRODIE, United States District Judge:

Plaintiff Deborah Harte commenced the above-captioned action on behalf of herself and a

nationwide class of similarly situated homeowners, alleging that Defendants Ocwen Financial

Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS") made misrepresentations to

borrowers in violation of New York statutory and common law. (Compl., annexed to Notice of

Removal as Ex. A, Docket Entry No. 1.)[1] On June 22, 2017, the Court referred Plaintiff's

motion for class certification and Defendants' motion for summary judgment to Magistrate Judge

Ramon E. Reyes, Jr. for a report and recommendation.[2] (Order dated June 22, 2017.)

---

[1] Plaintiff subsequently twice amended the Complaint. (*See* Am. Compl., Docket Entry No. 54; Sec. Am. Compl. ("SAC"), Docket Entry No. 60.)

[2] On May 23, 2017, after the close of discovery targeted toward Plaintiff's remaining individual claims and "class certification issues" Plaintiff moved for class certification. (Pl. Mot. for Class Cert. ("Pl. Mot."), Docket Entry No. 125; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 126; Decl. of Robert I. Harwood in Supp. of Pl. Mot. ("Harwood Decl."), Docket Entry No. 127.) Defendants moved for summary judgment on July 24, 2017. (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket Entry No. 133; First Decl. of Brian M. Forbes ("First Forbes Decl."), Docket Entry No. 134; Second Decl. of Brian M. Forbes ("Second Forbes

By report and recommendation dated February 8, 2018, Judge Reyes recommended that the Court deny Defendants' motion for summary judgment as to Plaintiff's claim pursuant to section 349 of New York's General Business Law ("GBL") for "dual tracking,"[3] and grant Plaintiff's motion to certify a dual tracking class (the "R&R"). (R&R 20–23, Docket Entry No. 143.) Judge Reyes also recommended that the Court grant Defendants' motion as to Plaintiff's GBL section 349 claim for failure to provide pre-foreclosure notice, and as to Plaintiff's promissory estoppel claim under New York common law. (*Id.* at 14–20.) On March 30, 2018, the Court adopted the R&R as to Plaintiff's promissory estoppel claim and section 349 claim for failure to provide pre-foreclosure notice ("March 30, 2018 Memorandum & Order"). (Mar. 30, 2018 Mem. & Order, Docket Entry No. 155.) The Court reserved decision on Defendant's motion for summary judgment as to Plaintiff's section 349 dual tracking claim, and Plaintiff's motion for class certification of this claim. (*Id.*) For the reasons set forth below, the Court grants Defendants' motion for summary judgment as to Plaintiff's section 349 dual tracking claim and denies Plaintiff's motion for class certification.

---

Decl."), Docket Entry No. 135; Defs. Statement of Material Facts Pursuant to Local R. 56.1 ("Defs. 56.1") ¶¶ 32–33, Docket Entry No. 136-4; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 136-1.)

[3] Dual tracking refers to OLS' alleged practice of "pretending to process a solicited loan modification on one track but preparing foreclosure proceedings while the borrowers' applications for modification are pending — in order to accumulate penalty fees, back interest, and other foreclosure-related fees." (SAC ¶ 33.)

## I. Background

The Court assumes familiarity with the facts and procedural history as discussed in its prior decisions in the case[4] and the R&R, and provides only a summary of the pertinent facts.

### a. Factual background

On September 15, 2005, Plaintiff obtained a mortgage loan from the federal Mortgage & Investment Corporation in the amount of $420,000, and executed a mortgage on her home as security for the loan. (Defs. Statement of Material Facts Pursuant to Local R. 56.1 ("Defs. 56.1") ¶¶ 32–33, Docket Entry No. 136-4; Pl. Resp. to Defs. 56.1 and Counterstatement of Material Facts ("Pl. 56.1") ¶¶ 32–33, Docket Entry No. 137-3.) In or about late 2006 to early 2007, Plaintiff began experiencing challenges making her mortgage payments, (Defs. 56.1 ¶ 35; Pl. 56.1 ¶ 35), and Plaintiff received a letter from OLS[5] in October of 2011 offering to assist Plaintiff in "identify[ing] a solution that will resolve [her] delinquent mortgage loan" and "presenting [her] with some of the ways [OLS] may be able to help," (Pl. 56.1 ¶ 72; Defs. Resp. to Pl. 56.1 ("Defs. 56.1 Resp.") ¶ 72, annexed to Defs. Mot. to Seal as Ex. F, Docket Entry No. 136-6; Letter dated Oct. 21, 2011, annexed to Decl. of Robert I. Harwood in Opp'n to Defs. Mot. ("Harwood Opp'n Decl.") as Ex. 6, Docket Entry No. 137-4).

---

[4]  *See Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014) ("*Harte I*"); *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 1275045 (E.D.N.Y. Mar. 31, 2016) ("*Harte II*"); *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 3647687 (E.D.N.Y. July 1, 2016) ("*Harte III*"); *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2018 WL 1559766, at *1 (E.D.N.Y. Mar. 30, 2018) ("*Harte IV*").

[5]  Several statements made in Plaintiff's Counterstatement of Material Facts do not distinguish between actions taken by OFC and OLS. (*See, e.g.*, Pl. 56.1 ¶ 72.) Accordingly, consistent with the Court's prior approach, the Court "reads all specific allegations concerning actual contact between Plaintiff and 'Ocwen,' 'Defendants' or the 'Company' to refer to OLS." *See Harte IV*, 2018 WL 1559766, at *1 n.6.

Plaintiff subsequently received a letter from the Law Office of DeRose and Surico dated

December 5, 2011, notifying her that OLS had engaged the law firm and that her mortgage loan

had been referred for foreclosure (the "Referral Letter"). (Referral Letter, annexed to First Decl.

of Brian M. Forbes ("First Forbes Decl.") as Ex. 11, Docket Entry No. 136-2; Defs. 56.1 ¶ 44;

Pl. 56.1 ¶ 44.) The Referral Letter specified, among other things, that "[w]hile the foreclosure

process has begun, you may still have foreclosure prevention alternatives available to you," and

lists "forbearance, repayment, [and] modification" as options that may enable distressed

borrowers to stay in their homes. (Referral Letter.)

Following receipt of the Referral Letter, Plaintiff submitted an application for a loan

modification attaching certain supporting documentation. (Defs. 56.1 ¶ 45; Pl. 56.1 ¶ 45.) The

first page of the loan modification application states that Plaintiff "must submit all the

[requested] documentation," that failure to do so would result in her application not being

reviewed, and that:

> [t]he review process may take up to [thirty] days after the receipt of
> the completed package. During this time, Ocwen will not delay or
> stop any collections or legal activity on your loan. Therefore, it is
> important to complete the package and fax/email it back to Ocwen
> as quickly as possible.

( Loan Modification App. at 3,[6] annexed to Forbes Decl. in Supp. of Defs. Opp'n to Pl. Mot.

("Forbes Opp'n Decl."), Docket Entry No. 121-10; *see also* Defs. 56.1 ¶ 46; Pl. 56.1 ¶ 46.)

From January 2, 2012 through April 24, 2012, OLS sent Plaintiff several letters stating that her

application was incomplete and requesting that Plaintiff provide additional supporting documents

(the "Document Inquiry Letters"). (Defs. 56.1 ¶ 48.) The parties dispute whether Plaintiff's

application as submitted was complete, (Defs. 56.1 ¶ 47; Pl. 56.1 ¶ 47, 73–81), but Plaintiff does

---

[6] Because the Loan Modification Application is not consecutively paginated, the Court
refers to the page number assigned by the Electronic Case Filing ("ECF") system.

not dispute that she received the Document Inquiry Letters, (Pl. 56.1 ¶ 48).

During this period, Plaintiff also received approximately ten letters that provided additional information about the loan process (the "OLS Letters"). (Defs. 56.1 ¶¶ 49–50, 54; Pl. 56.1 ¶¶ 49–50, 54.) In a section on all of the letters entitled "Frequently Asked Questions," the letters state:

> While we consider your request [for a loan modification], we will not initiate a new foreclosure action and we will not move ahead with the foreclosure sale on an active foreclosure so long as we have received all required documents and you have met the eligibility requirements.
>
> If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for HAMP.[7] However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation.
>
> **Important — Do not ignore foreclosure notices.** The HAMP evaluation and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices . . . or you may see steps being taken to proceed with a foreclosure sale on your home. While you will not lose your home during the HAMP evaluation, to protect you [sic] rights . . . you may need to respond to these foreclosure notices or take other actions.
>
> If you do not qualify for HAMP, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have [thirty] days to review the reason for non-approval and contact us to discuss any concerns you may have. During this [thirty]-day review period, we may continue with the pending foreclosure action, but **no foreclosure sale will be conducted and you will not lose your home**.

(OLS Letters, annexed to Forbes Opp'n Decl. as Exs. 12–21, Docket Entry Nos. 121-12–21;*see*

---

[7] "The Home Affordable Application Program, known as HAMP, 'is a U.S. Department of the Treasury program codified within the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201–5261.'" *Harte I*, 2014 WL 4677120, at *3 (quoting *Jordan v. Chase Manhattan Bank*, No. 13-CV-9015, 2014 WL 3767010, at *7 (S.D.N.Y. July 31, 2014)). "In very general terms, HAMP is designed to lower the monthly mortgage payments of participating borrowers to an affordable level." *Id.* (quoting *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2014 WL 815244, at *1 (S.D.N.Y. Mar. 3, 2014)).

*also* Defs. 56.1 ¶¶ 50–53; Pl. 56.1 ¶¶ 50–53.)

Plaintiff also received two letters, both dated April 24, 2012. (Pl. 56.1 ¶ 84; Defs. 56.1

Resp. ¶ 84.) The first letter informed Plaintiff that she "was not eligible for a modification under

[HAMP]" and stated:

> You have [thirty] calendar days from the date of this notice to
> contact Ocwen to discuss the reason for non-approval for a HAMP
> modification or to discuss alternative loss mitigation options that
> may be available to you. Your loan may be referred to foreclosure
> during this time, or any pending foreclosure action may continue.
> However, no foreclosure sale will be conducted and you will not
> lose your home during this [thirty]-day period . . . .

(Defs. 56.1 ¶¶ 61–62; Pl. 56.1 ¶¶ 61–62; Letter dated Apr. 24, 2012, annexed to Forbes Opp'n

Decl. as Ex. 22, Docket Entry No. 121-22.) The second letter contained similar language.

(Letter dated Apr. 24, 2012, annexed to Forbes Opp'n Decl. as Ex. 23, Docket Entry No. 121-

23.) The parties dispute whether these letters reflect a denial of Plaintiff's loan modification

letter. (Defs. 56.1 ¶¶ 61–63; Pl. 56.1 ¶¶ 61–63.)

On May 16, 2012, OLS filed a foreclosure action against Plaintiff. (Pl. 56.1 ¶ 87; Defs.

56.1 Resp. ¶ 87.) To date, Defendants have not obtained a foreclosure judgment against

Plaintiff, and Plaintiff still resides at the property. (Defs. 56.1 ¶ 67; Pl. 56.1 ¶ 67.)

### b. The R&R

Judge Reyes recommended that the Court deny Defendants' motion as to Plaintiff's GBL

section 349 dual tracking claim, and grant Plaintiff's motion to certify a dual tracking class.[8]

(R&R 20–23.)

---

[8] As discussed above, Judge Reyes also recommended that the Court grant Defendants'
motion for summary judgment as to Plaintiff's purported section 349 claim for failure to provide
pre-foreclosure notice, and as to Plaintiff's promissory estoppel claim. (R&R 14–20.) The
Court adopted Judge Reyes' recommendation as to these claims in the March 30, 2018
Memorandum & Order. *See Harte IV*, 2018 WL 1559766, at *1.

### 1. Section 349 dual tracking claim

Addressing Plaintiff's section 349 dual tracking claim, Judge Reyes recommended that the Court deny Defendants' motion for summary judgment. (*Id*.) Judge Reyes explained that in order to satisfy GBL section 349, Plaintiff's claim "must be predicated on a deceptive act or practice that is consumer oriented," but noted that the parties did not dispute this element. (*Id*. at 20 (quoting *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 375 (E.D.N.Y. 2012).) Judge Reyes also explained that Plaintiff must establish that Defendants' "acts are misleading in a material way," and that "[P]laintiff has been injured as a result." (R&R 20.) In addressing these elements, Judge Reyes rejected Defendants' argument that Plaintiff cannot establish (1) a materially misleading act, and (2) actual harm that is tied to a promise not to foreclose. (*Id*.) Judge Reyes also rejected Defendants' argument that they had a complete defense to Plaintiff's GBL section 349 dual tracking claim under section 349(d). (*Id.*)

First, Judge Reyes rejected Defendants' argument that the disclosures in the letters Plaintiff received were sufficiently clear such that "a reasonable consumer would not have understood the letters to provide a promise not to advance the foreclosure process under her circumstances . . . or not to file a foreclosure action after denial of the application." (*Id*. at 21 (quoting Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem.") 28, Docket Entry No. 136-1).) Therefore, Judge Reyes found that a "genuine material issue of material fact prevents a finding on whether [Defendants'] acts were materially misleading." (*Id*. at 21.)

Second, Judge Reyes found that Plaintiff had established a material issue of fact regarding whether she did in fact submit a complete loan modification application. (*Id*. at 21–23.) Judge Reyes explained that "the dispute as to [Plaintiff's] application, and whether it was complete, plays a central role in the argument for whether [Defendant's] actions violated GBL section 349," and that the "outcome of this issue might affect the outcome of the case." (*Id*. at

23.)

Third, with respect to Defendants' argument that they were entitled to a defense under GBL section 349(d), Judge Reyes noted that the provision Defendants relied on became effective January 10, 2014, therefore Defendant could not use the provision as a defense under GBL section 349(d). (*Id.*)

## 2. Plaintiff's motion for class certification

In considering Plaintiff's motion for class certification, Judge Reyes found that Plaintiff sought certification of two separate but related classes including (1) a class "consisting of borrowers who did not receive a 90-day notice and were not seeking loan modifications (the "90-Day Notice" class), and (2) a class "consisting of borrowers who regardless of whether they did not receive a 90-day notice were being considered for loan modification (the "Dual Tracking" class)." (*Id.* at 25.) With respect to Plaintiff's motion for certification of a 90-day notice class, Judge Reyes denied Plaintiff's motion because Plaintiff's "claim hinges on a violation of RPAPL § 1304, for which there is no private right of action."[9] (*Id.* at 44.) Before addressing Plaintiff's motion as to the dual tracking class, Judge Reyes discussed the admissibility of certain reports generated in connection with a review of Defendants' loan servicing practices ("Monitor Reports"), and found that the Monitor Reports should be deemed admitted and should be considered in evaluating Plaintiff's motion for class certification. (*Id.* at 27–40.) In considering the Monitor Reports, Judge Reyes found that Plaintiff has sufficiently established the requirements under Rule 23 of the Federal Rules of Civil Procedure for certifying a class of

---

[9] As a preliminary matter, Judge Reyes also noted that he would not consider Plaintiff's motion to certify a class for Plaintiff's promissory estoppel claim because of his recommendation that the Court grant summary judgment as to this claim. (R&R 42.)

"New York homeowners with a residential mortgage serviced by Ocwen, against whom Ocwen filed a foreclosure between August 14, 2007 and the present . . . while purporting to consider the borrower for a loan modification."[10] (*Id.* at 24–61.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain de novo review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758, (2d Cir. 2018) ("Merely

---

[10] Judge Reyes noted that while a class based solely on OLS' commencement of foreclosure proceedings prior to service of a ninety-day demand letter would contravene Second Circuit precedent, such homeowners could nevertheless be included in a dual tracking class because Plaintiff's dual tracking theory of liability implicates deceptive conduct beyond non-compliance with RPAPL section 1304. (R&R 44 n.22.)

referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

**b.** **Defendants' objections**[11]

Defendants object to Judge Reyes' recommendations that the Court deny its motion for summary judgment as to Plaintiff's dual tracking claim and grant Plaintiff's motion for class certification as to that claim. (*See generally* Defs. Obj. to R&R ("Defs. Obj."), Docket Entry No. 148.) Defendants argue that Plaintiff has failed to establish two of the three elements of her dual tracking claim, and that Judge Reyes erred in his class certification analysis. (*Id.*) Specifically, Defendants argue that the Court should grant their summary judgment motion as to Plaintiff's section 349 dual track claim because their alleged acts were not materially misleading, and Plaintiff cannot establish actual injury. (Defs. Obj. 5–10.)

**c.** **Plaintiff has not established a section 349 dual tracking claim**

Plaintiff argues that Defendants' motion for summary judgment as to her dual-tracking claim should be denied because it raises questions of material fact. (Pl. Resp. to Defs. Obj. ("Pl. Resp.") 4, Docket Entry No. 154.)

GBL section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. To assert a claim under section 349, "a plaintiff must [prove] that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012)). Section 349 does not contain a reliance requirement, and a proper claim under section

---

[11] Plaintiff objected to Judge Reyes' recommendation that the Court dismiss her section 349 notice claim. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 146.) The Court previously addressed this issue in the March 30, 2018 Memorandum & Order and granted Defendants' motion for summary judgment as to Plaintiff's section 349 claim based on a failure to provide pre-foreclosure notice. *See Harte IV*, 2018 WL 1559766, at *1.

349 does not require proof that a consumer actually relied on the misrepresentation. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("Section 349 [does not] require proof of reliance."); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim." (citations omitted)).

The parties appear to concede that Defendants engaged in "consumer-oriented conduct," as Defendants only challenge two elements of Plaintiff's section 349 dual tracking claim. Defendants argue that (1) their representations were not materially misleading, and (2) Plaintiff did not suffer any legally cognizable actual injuries. (Def. Obj. 5–10.) The Court evaluates these contested elements below to determine whether Defendants violated section 349 of the GBL.

### i. Materially misleading

In support of their motion, Defendants argue that Plaintiff cannot demonstrate that the letters are materially misleading because "OLS's conduct was consistent with the statements, information, and representation in the letters." (Def. Obj. 5, 7.) Defendants argue that Plaintiff relies on a single phrase "from the OLS Letters, which she reads in isolation and out of context," stating that OLS will not "initiate a new foreclosure action." (*Id*. at 7.) Although Defendants concede that the OLS Letters state that they would not "initiate a new foreclosure action," Defendants argue that Plaintiff omits the context of the statement, as the sentence specifically provides that they would not do so if "all required documents," are submitted and Plaintiff meets "the eligibility requirements." (*Id*. at 8.) In addition, Defendants argue that "no reasonable consumer could construe the OLS Letters to support a promise by [OLS] not to advance the foreclosure process where it had already referred the loan to foreclosure before the consumer submitted a loan modification application." (*Id*.)

Plaintiff argues that the OLS Letters are materially misleading. (Pl. Resp. 5.) In support, Plaintiff contends that the two sentences "[i]f your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for HAMP" and "no foreclosure sale will be conducted, and you will not lose your home during the HAMP evaluation" are materially misleading. (*Id*.) Plaintiff argues that "a reasonable consumer could reasonably find [these two] sentence[s] to be unclear or inconsistent with the [OLS Letters] as a whole," because they repeatedly promise not to initiate a new foreclosure action. (*Id*.) In addition, Plaintiff argues that the OLS Letters "did not explain to borrowers what it means to be 'referred to foreclosure,'" or how to reconcile the phrase in the context of the letters. (*Id*.) Plaintiff states that it "is unclear to whom such referral would be made, for what purpose and how it differs from a foreclosure sale." (*Id*.) Lastly, Plaintiff argues that "there is at least a question of fact as to whether [OLS] . . . received the required documents," for Plaintiff's loan modification application, and "[f]or that reason alone, [Judge Reyes] correctly recommend[ed] that the motion for summary judgment be denied." (*Id*.)

In addition to proving that a defendant engaged in consumer-oriented conduct, a Plaintiff must also prove that this conduct was materially misleading. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) ("[T]o state a claim for a [section] 349 violation, a plaintiff must allege that a defendant has engaged in . . . consumer-oriented conduct that is . . . materially misleading." (citations and internal quotation marks omitted)). "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)); *see also Kommer v. Bayer*

*Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (stating that a defendant engaging in conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances," is a required element under GBL section 349); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) ("'Deceptive acts' are defined objectively . . . as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." (alteration in original) (quoting *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003))).

Viewing each allegedly misleading statement in the full context of the entire letter, the Court finds that the OLS Letters were not materially misleading and Defendants' actions were not deceptive. *See Ackerman v. Coca-Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"); *see also Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.").

The "Frequently Asked Questions" section in the OLS Letters that Plaintiff received states:

> While we consider your request [for a loan modification], we will not initiate a new foreclosure action and we will not move ahead with the foreclosure sale on an active foreclosure so long as we have received all required documents and you have met the eligibility requirements.
>
> If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for HAMP. However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation.
>
> **Important — Do not ignore foreclosure notices.** The HAMP evaluation and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices . . . or you may

see steps being taken to proceed with a foreclosure sale on your home. While you will not lose your home during the HAMP evaluation, to protect you [sic] rights . . . you may need to respond to these foreclosure notices or take other actions.

If you do not qualify for HAMP, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have [thirty] days to review the reason for non-approval and contact us to discuss any concerns you may have. During this [thirty]-day review period, we may continue with the pending foreclosure action, but **no foreclosure sale will be conducted and you will not lose your home**.

(OLS Letters; *see also* Defs. 56.1 ¶¶ 50–53; Pl. 56.1 ¶¶ 50–53.) In Plaintiff's opposition to Defendants' motion for summary judgment and response to Defendants' objections to the R&R, Plaintiff argues that a reasonable consumer could interpret the phrase "we will not initiate a new foreclosure action" as a promise not to file a new foreclosure action, thus whether or not the OLS Letters were materially misleading is an issue of fact. (Pl. Opp'n 16; Pl. Resp. 5.)

### 1. The OLS Letters' reference to initiating a new foreclosure action is not materially misleading[12]

Standing alone, a reasonable consumer could interpret the phrase "we will not initiate a new foreclosure action" as "a promise not to file a foreclosure action," however, when read with the entire sentence and in the context of the entire letter, the Court finds that a reasonable

---

[12] Although Plaintiff appears to have abandoned this argument, even assuming Plaintiff understood initiating a "foreclosure action" as a separate act from the "foreclosure process," Plaintiff acknowledges that Defendants "foreclosure process manual demonstrates that the filing of a new 'foreclosure action' and 'referral to foreclosure' are only two of the numerous steps in the foreclosure process." (Pl. Opp'n 17.) When reading the letter in its entirety, the letter makes clear that if a borrower's loan "has been previously referred to foreclosure," Defendants "will continue the foreclosure process." (Defs. 56.1 ¶¶ 50–53; Pl. 56.1 ¶¶ 50–53.) Thus, taking into account the fact that Defendants' foreclosure process manual indicates that a 'foreclosure action' is part of the foreclosure process, a reasonable consumer would not expect the foreclosure process to include all steps of the foreclosure process, with the exception of the filing of a foreclosure action. This is further supported by language in the OLS Letters which suggests that borrowers with referred loans would only be protected from a foreclosure sale.

consumer would not interpret it as such.  *See Delgado v. Ocwen Loan Servicing, LLC*, No. 13-

CV-4427, 2014 WL 4773991, at \*8 (E.D.N.Y. Sept. 24, 2014) (noting that to determine if a

practice is misleading or deceptive, a court must "view each allegedly misleading statement in

light of its context . . . as a whole" (citation and internal quotations omitted)); *see also Avola v.*

*Louisiana–Pac. Corp.*, 991 F. Supp. 2d 381, 393 (E.D.N.Y. 2013) (noting that courts "consider

the advertisement in its entirety" — "the entire mosaic should be viewed rather than each tile

separately").

    As Defendants assert in their objections, the plain language of this sentence provides that

Defendants "will not initiate a new foreclosure action," as long as Plaintiff submits "all required

documents" and meets "the eligibility requirements."  (Defs. Obj. 8.)  The latter part of the

sentence, which states "so long as we have received all required documents and you have met the

eligibility requirements," modifies the portion of the sentence Plaintiff alleges is misleading.

When read in its entirety, the sentence makes clear that Defendants will not initiate a new

foreclosure action *as long as* Plaintiff complies with the terms specified.

    The sentence stating that Defendants "will not move ahead with the foreclosure sale on

an active foreclosure so long as we have received all required documents and you have met the

eligibility requirements,"  (Defs. 56.1 ¶ 50; Pl. 56.1 ¶ 50), is immediately followed by a section

explaining to the reader that "[i]f  [their] loan has been previously referred to foreclosure, we

will continue the foreclosure process while we evaluate your loan for HAMP."  (Defs. 56.1 ¶ 51;

Pl. 56.1 ¶ 51.)  By including this section immediately following mention of "an active

foreclosure," the OLS Letters make clear that those who have had their loan referred have an

"active foreclosure" on their loan and Defendants will continue the foreclosure process on their

referred loan, but will not execute a foreclosure sale.  Read in its entirety, a reasonable consumer

16

would understand that the OLS Letters distinguish between those with active foreclosures, which

includes referred loans, and those who have not had a foreclosure action initiated against them.[13]

### 2. The OLS Letters' reference to individuals referred to foreclosure is not materially misleading

Plaintiff also argues that Defendant's letters "did not explain to borrowers what it means

to be 'referred to foreclosure.'" (Pl. Resp. 5.) The Court finds this argument unavailing. The

reference to borrowers who have been "referred to foreclosure" identifies a subset of individuals

who have defaulted on their loans and Defendants have begun the foreclosure process as to the

loan in question by referring the loan to an attorney. This is supported by the Referral Letter that

OLS issued to Plaintiff.

Both parties concede that Plaintiff had previously received the Referral Letter from the

Law Office of DeRose and Surico indicating that Plaintiff's loan had been referred for

---

[13]  In Defendants' memorandum in support of their motion for summary judgment, Defendants also argue that "the alleged treatment of Plaintiff's loan is also consistent with authority addressing . . . 'dual tracking.'" (Defs. Mem. 21.) In support, Defendants state that the Consumer Financial Protection Bureau ("CFPB") "instructs that where the borrower submits 'a complete loan modification' after the 'service has made the first notice or filing required by applicable law,' the service is only restricted from 'mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale.'" (Def. Mem. 22 (quoting 12 C.F.R. § 1024.41 (g)).)

Section 349(d) of the GBL provides a complete defense where a defendant's act or practice "complies with the rules and regulations of, and the statutes administered by, the [F]ederal [T]rade [C]omission or any official department, division, commission or agency of the United States." *See* N.Y. Gen. Bus. Law § 349(d). However, as Plaintiff argues in her opposition, this regulation was not in effect until 2012, and therefore, does not provide "exculpation for [Defendants'] actions at the time." (Pl. Opp'n 20.) Nevertheless, although the CFPB's guidance became effective January 10, 2014, and the OLS Letters were issued in 2012, the Court finds the CFPB's instruction to be persuasive. The authority Defendants cite to provides an explanation as to permissible "dual tracking," which is consistent with the process outlined in the OLS Letters and Defendants' conduct in this case. The CFPB's instruction further supports that a reasonable consumer, in this case a borrower, should understand that if a servicer has begun the foreclosure process and put a borrower on notice, a servicer is only restricted from moving for a foreclosure sale where the borrower submits a complete loan modification. The CFPB's guidance also supports Defendants' argument that their conduct was not deceptive.

foreclosure. (Defs. 56.1 ¶ 44; Pl. 56.1 ¶ 44.) Having received the Referral Letter, a reasonable

consumer acting under these circumstances would understand that the OLS Letters are expressly

referring to Plaintiff when referring to borrowers who have been "referred to foreclosure" as

Plaintiff's loan had "been previously referred to foreclosure." (OLS Letters.) In addition, the

Referral Letter and OLS Letters explain that loans that have been referred to foreclosure connote

a subset of loans where the foreclosure process has begun, but no foreclosure sale had been

executed. (OLS Letters.)

### 3. Whether Plaintiff submitted a completed loan modification form is not dispositive

Plaintiff suggests that summary judgment must also be denied because there is a factual

dispute as to whether she submitted a completed loan modification form to Defendants. As

discussed *supra*, Plaintiff's loan was referred to foreclosure, thus as Defendants state in the OLS

Letters, Defendants would continue the foreclosure process as to her loan, but would not conduct

a foreclosure sale so long they received all required documents and Plaintiff met the eligibility

requirements. Although the parties dispute whether Plaintiff submitted a completed form, the

Court finds that this issue is not dispositive. According to the language used in the OLS Letters,

Defendants promised that provided Plaintiff submitted the appropriate documents and met the

eligibility requirements it would (1) not initiate a new foreclosure action; and (2) not commence

a foreclosure sale on an active foreclosure. (OLS Letters; Def. 56.1 ¶ 50; Pl. 56.1 ¶ 50.) Further,

the OLS Letters make clear that Defendants would not proceed with a foreclosure sale, but might

proceed with the foreclosure process for those borrowers whose loans had been referred. (OLS

Letters; Def. 56.1 ¶ 51; Pl. 56.1 ¶ 51.) Because Plaintiff received the Referral Letter dated

December 5, 2011 which indicated that her loan had been referred to foreclosure, and Defendants

did not proceed with a foreclosure sale, whether or not Plaintiff's application was complete has

no bearing on this issue.

Because Plaintiff has not shown that the OLS Letters are materially misleading, the Court

grants Defendants' motion for summary judgment as to this claim.[14]

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment

and dismisses Plaintiff's claims.  The Clerk of Court is directed to close this case.

Dated: August 22, 2019
      Brooklyn, New York

SO ORDERED:

                                            _____s/ MKB_____
                                            MARGO K. BRODIE
                                            United States District Judge

---

[14]  Because the Court grants Defendants' motion for summary judgment as to Plaintiff's section 349 dual tracking claim, the Court does not reach Plaintiff's motion for class certification.  *See Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) (affirming the district court's dismissal of the plaintiff's motion for certification as moot where the district court granted summary judgment on all of plaintiff's claims); *see also Boykin v. 1 Prospect Park ALF, LLC*, 993 F. Supp. 2d 264, 283 (E.D.N.Y. 2014) ("Because summary judgment is granted on each of the named plaintiffs' claims, it is unnecessary to reach plaintiffs' motion for class certification.").